**FILED**

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

JUL 2 6 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| CIB BANK<br>    An Illinois Banking Corporation | ) )<br>)<br>) |
|          Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| Romel Esmail, a/k/a Romel Kopteh,<br>    An Illinois resident, | )<br>)<br>) |
| Bassam Haj Yousif<br>    An Illinois resident, | )<br>)<br>) |
| Global Real Estate Investors, LLC<br>    An Illinois limited liability company, | )<br>)<br>) |
| Construction Services International, Inc.<br>    An Illinois corporation, | )<br>)<br>) |
| Millennium Investment Enterprises, Inc.<br>    An Illinois corporation, | )<br>)<br>) |
| Universal Land Company<br>    An Illinois corporation, | )<br>)<br>) |
| IMG Enterprises, Inc.<br>    An Illinois corporation, | )<br>)<br>) |
| Real Estate Consultants, Inc.<br>    An Illinois corporation, | )<br>)<br>) |
| Woosh – Woosh, Inc.<br>    An Illinois corporation, | )<br>)<br>) |
| Credit Suisse of Chicago, LLC<br>    An Illinois limited liability company | )<br>)<br>) |
| Land Acquisitions LLC<br>    A Nevada limited liability company, | )<br>)<br>) |
| North Star Trust Company, as Trustee u/t/a<br>Dated 2 December 1999, a/k/a Trust No.:<br>99-2200<br>    An Illinois land trust, | )<br>)<br>)<br>)<br>) |
|          Defendants. | )<br>) |

No 04C 4870 DOCKETED
JUL 2 7 2004

<u>Jury Trial Demanded</u>

JUDGE ASPEN

MAGISTRATE JUDGE ASHMAN



## COMPLAINT

For its complaint against defendants Romel Esmail, a/k/a Romel Koptek, Bassam Haj Yousif, Global Real Estate Investors, LLC, Construction Services International, Inc., Millennium Investment Enterprises, Inc., Universal Land Company, Real Estate Consultants, Inc., IMG Enterprises, Inc., Real Estate Consultants, Inc., Woosh-Woosh, Inc., Credit Suisse of Chicago, LLC, Land Acquisitions, LLC, and North Star Trust Company as Trustee (hereinafter referred to individually by name or collectively as "defendants"), plaintiff CIB Bank ("CIB"), through its attorneys, Cisar & Mrofka, Ltd., states as follows:

### NATURE OF THE CASE

1.     This case involves a series of fraudulent schemes engineered and executed by the defendants through which defendants wrongfully obtained property and used that property for their own financial gain.  Defendants, using their accomplices, other companies and individuals, schemed to obtain, for their own purposes, over $15,000,000[1] from CIB and its participant banks under false pretenses by submitting multiple fraudulent sworn statements requesting draws on a $48,300,000 construction loan credit facility to renovate and convert the real property commonly known as 6 North Michigan Avenue, Chicago, Illinois to 121 luxury condominiums.  Beginning in December of 1999 and continuing through the present, defendants through a series of fraudulent schemes and acts wrongfully obtained over $15,000,000 of the $48,300,000 purchase and construction loan credit facility to traffic in delinquent real estate tax certificates, distressed real properties and other personal properties.  As a result, CIB and its participant banks suffered tens of millions of dollars of damages.

---

[1] All pecuniary amounts are state in United States Dollars.

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, 18 U.S.C. §1964(a) and pursuant to the court's pendent jurisdiction.

3. Venue is proper in the Northern District of Illinois, Eastern Division, under 28 U.S.C. §1391(b) and 18 U.S.C. §1965.

## PARTIES

### PLAINTIFF

4. Plaintiff CIB is a banking corporation organized under the laws of the State of Illinois, with its principal place of business located in Mt. Prospect, Illinois, and is a "person" under 18 U.S.C. §1961(3), and a "financial institution" under 18 U.S.C. §20.

### DEFENDANTS

5. Defendant Romel Esmail, on information and belief a/k/a Romel Kopteh ("Esmail"), is a resident of Chicago, Illinois, and a real estate developer of residential and commercial properties.

6. Defendant Bassam Haj Yousif ("Yousif") is a resident of Chicago, Illinois, and a real estate developer of residential and commercial properties.

7. Defendant Global Real Estate Investors, LLC ("GREI"), is a limited liability company organized under the laws of the State of Illinois with its principal place of business located in Chicago, Illinois, and is a member of the "enterprise" as defined in 18 U.S.C. §1961(4) and as set forth herein. GREI is an entity that Esmail and Yousif own and control as managing members. Further, Esmail and Yousif as managing members of GREI authorized and directed GREI to borrow from CIB a total of Forty-Eight Million Three Hundred Thousand and No/100 Dollars ($48,300,000.00) to purchase, renovate and convert the real property commonly

3

known as 6 North Michigan Ave., Chicago, Illinois ("6 North Michigan Ave."), to 121 luxury condominiums.

8.    Defendant Construction Services International, Inc. ("CSI"), is a corporation organized under the laws of the State of Illinois with its principal place of business located in Chicago, Illinois, and is a member of the "enterprise" as defined in 18 U.S.C. §1961(4) and as set forth herein.  CSI is an entity that Esmail and Yousif control as officers and owners, and CSI is the general contractor for GREI to convert 6 North Michigan Ave. to condominiums.

9.    Defendant Millennium Investment Enterprises, Inc. ("Millennium"), is a corporation organized under the laws of the State of Illinois with its principal place of business located in Chicago, Illinois, and is a member of the "enterprise" as defined in 18 U.S.C. §1961(4) and as set forth herein.  On information and belief Millennium is an entity that Esmail and/or Yousif control as officers and owners, and Millennium is in the business of purchasing, selling, and trading delinquent real estate property tax certificates and distressed properties in Cook County, Illinois, and other counties located in the States of Illinois, California, Nevada, and other unknown states located in the United States of America.

10.    Defendant Universal Land Company ("Universal") is a corporation organized under the laws of the State of Illinois with its principal place of business located in Chicago, Illinois, and is a member of the "enterprise" as defined in 18 U.S.C. §1961(4) and as set forth herein.  On information and belief Universal is an entity that Esmail and/or Yousif control as officers and owners, and Universal is in the business of purchasing, selling, and trading delinquent real estate property tax certificates and distressed properties in Cook County, Illinois, and other counties located in the States of Illinois, California, Nevada, and other unknown states located in the United States of America.

11.    Defendant IMG Enterprises, Inc. ("IMG"), is a corporation organized under the laws of the State of Illinois with its principal place of business located in Chicago, Illinois, and is a member of the "enterprise" as defined in 18 U.S.C. §1961(4) and as set forth herein. On information and belief IMG is an entity that Esmail and/or Yousif control as officers and owners, and IMG is in the business of purchasing, selling, and trading delinquent real estate property tax certificates and distressed properties in Cook County, Illinois, and other counties located in the States of Illinois, California, Nevada, and other unknown states located in the United States of America.

12.    Defendant Real Estate Consultants, Inc. ("RECI"), is a corporation organized under the laws of the State of Illinois with its principal place of business located in Chicago, Illinois, and is a member of the "enterprise" as defined in 18 U.S.C. §1961(4) and as set forth herein. On information and belief RECI is an entity that Esmail and/or Yousif control as officers and owners, and RECI is in the business of purchasing, selling, and trading delinquent real estate property tax certificates and distressed properties in Cook County, Illinois, and other counties located in the States of Illinois, California, Nevada, and other unknown states located in the United States of America.

13.    Defendant Woosh – Woosh, Inc. ("Woosh"), is a corporation organized under the laws of the State of Illinois with its principal place of business located in Chicago, Illinois, and is a member of the "enterprise" as defined in 18 U.S.C. §1961(4) and as set forth herein. On information and belief Woosh is an entity that Esmail and/or Yousif control as officers and owners, and Woosh is in the business of purchasing, selling, and trading delinquent real estate property tax certificates and distressed properties in Cook County, Illinois, and other counties

located in the States of Illinois, California, Nevada, and other unknown states located in the United States of America.

14.    Defendant Credit Suisse of Chicago, LLC ("Credit Suisse"), is a limited liability company organized under the laws of the State of Illinois with its principal place of business located in Chicago, Illinois, and is a member of the "enterprise" as defined in 18 U.S.C. §1961(4) and as set forth herein.  On information and belief Credit Suisse is an entity that Esmail and/or Yousif control as members and owners.

15.    Defendant Land Acquisitions LLC ("Land Acquisitions"), is an limited liability company organized under the laws of the State of Nevada with its principal place of business located in Chicago, Illinois, and is a member of the "enterprise" as defined in 18 U.S.C. §1961(4) and as set forth herein.  On information and belief Land Acquisition is an entity that Esmail and/or Yousif control as members and owners, and Land Acquisition is in the business of purchasing, selling, and trading delinquent real estate property tax certificates and distressed properties in Cook County, Illinois, and other counties located in the States of Illinois, California, Nevada, and other unknown states located in the United States of America.

16.    Defendant North Star Trust Company, as Trustee, u/t/a Dated 2 December 1999, a/k/a Trust No.: 99-2200 ("Trust No.: 99-2200") is a land trust established and existing under the laws of the state of Illinois.  Trust No.: 99-2200 is the legal titleholder of the real property commonly known as 6 North Michigan Ave.  GREI is the sole beneficiary of Trust No.: 99-2200.

## ALLEGATIONS COMMON TO ALL COUNTS

17.    CIB Bank since 1994 has been and continues to serve the Chicago area as a commercial lender.  CIB as a financial institution combines and participates with affiliate and

non-affiliate banks located in and out of the State of Illinois to lend Unites States currency for commercial transactions including but not limited to commercial real estate transactions.

18.     On or before 29 December 1999, Esmail and Yousif approached, requested, and negotiated with CIB for a loan to purchase 6 North Michigan Ave. Based on Esmail and Yousif's negotiations with and representations to CIB, on or about 29 December 1999 CIB loaned to GREI and Trust No.: 99-2200 and GREI and Trust No.: 99-2200 borrowed from CIB the sum of $13,420,000 to purchase 6 North Michigan Ave. Esmail and Yousif personally guaranteed payment of $13,420,000 to CIB. GREI and Trust No.: 99-2200 on or about 29 December 1999 used the $13,420,000 to purchase 6 North Michigan Ave.

19.     During and after the GREI and Trust No.: 99-2200 purchase of 6 North Michigan Ave., Esmail and Yousif approached, requested and negotiated with CIB to be the primary construction lender to renovate and convert 6 North Michigan Ave. to luxury condominiums. Esmail and Yousif represented to CIB that the purchase and projected construction budget to convert 6 North Michigan Ave. to luxury condominiums was approximately $49,701,400, that Esmail and Yousif either individually or through entities that they owned and/or controlled would contribute cash equity of $4,901,400, and that GREI and Trust No.: 99-2200 would borrow from CIB and CIB would lend to GREI and Trust No.: 99-2200 the total sum of $44,800,000 to pay for the purchase, renovation and conversion of 6 North Michigan Ave. to luxury condominiums.

20.     CIB in June of 2000 approved GREI's request for an additional loan of $31,380,000 (total credit facility of $44,800,000) to finance the construction costs to convert 6 North Michigan Ave. to luxury condominiums, subject to CIB's affiliate and non-affiliate banks' loan participation commitments.

7

21.    In July of 2000, while CIB was negotiating with prospective affiliate and non-affiliate bank participants for the $31,380,000 additional construction financing, Esmail and Yousif as managing members of GREI approached, requested, and negotiated with CIB for a $4,000,000 loan. Esmail, Yousif and GREI represented to CIB that said loan was to finance demolition costs and pre-pay for specially ordered windows for 6 North Michigan Ave. On 26 July 2000 GREI and Trust No.: 99-2200 borrowed from CIB and CIB loaned to GREI and Trust No.: 99-2200 $4,000,000 to finance the demolition costs and windows for 6 North Michigan Ave. Esmail, Yousif, GREI, and CSI, without CIB's approval or knowledge, converted and diverted a part of said $4,000,000 loan from the 6 North Michigan Ave. project to other purposes not directly or indirectly related to or connected with the 6 North Michigan Ave. project.

22.    In November of 2000, while CIB was still negotiating with prospective affiliate and non-affiliate bank participants for the $31,380,000 additional construction financing, Esmail and Yousif as managing members of GREI approached, requested, and negotiated with CIB for a $4,500,000 loan. Esmail, Yousif and GREI represented to CIB that said loan was to be used for construction costs to convert 6 North Michigan Ave. to luxury condominiums. On 14 December 2000 GREI and Trust No.: 99-2200 borrowed from CIB and CIB loaned to GREI and Trust No.: 99-2200 $4,500,000 to finance construction costs to convert 6 North Michigan Ave. to luxury condominiums. Esmail, Yousif, GREI, and CSI, without CIB's approval or knowledge, converted and diverted a part of said $4,500,000 loan from the 6 North Michigan Ave. project to other purposes not directly or indirectly related to or connected with the 6 North Michigan Ave. project.

23.    On or about 14 December 2000 CIB combined its 29 December 1999 loan for $13,640,000, its 26 July 2000 loan for $4,000,000 and its 26 July 2000 loan for $4,500,000 from

separate promissory notes to GREI and Trust No.: 99-2200 into one promissory note payable by GREI and Trust No.: 99-2200 to CBI in the amount of $22,140,000. Esmail and Yousif personally guaranteed payment of $22,140,000 to CIB.

24.     On or about 20 June 2001 CIB and GREI executed a "Gap" style Construction Loan Escrow and Disbursing Agreement with Ticor Title Insurance Company ("Ticor Escrow No.: 468778").

25.     On or before 25 June 2001 CIB contracted with the following affiliate and non-affiliate banks: Premier Bank located in Illinois; Advance Bank located in Illinois; Winfield Community Bank located in Illinois, America United Bank located in Illinois; CIB Bank Indianapolis located in Indiana; Central Illinois Bank located in Illinois; Marine Bank located in Wisconsin; and Marine Bank Omaha located in Nebraska (hereinafter referred to singularly as "Participant" or collectively as "Participants"), to participate with CIB in lending GREI and Trust No.: 99-2200 $44,800,000 in total to purchase, renovate and convert 6 North Michigan Ave. to luxury condominiums.

26.     On 25 June 2001 GREI and Trust No.: 99-2200 borrowed from CIB and its Participants and CIB and its Participants loaned to GREI and Trust No.: 99-2200 an additional $22,660,000, thereby increasing the total credit facility to $44,800,000, to purchase, renovate and convert 6 North Michigan Ave., to condominiums. On or about 25 June 2001 and thereafter CIB disbursed the additional $22,660,000 construction loan to GREI and CSI through Ticor Escrow No.: 468778.

27.     On 25 June 2001 Esmail and Yousif personally guarantied payment of CIB's loan for 44,800,000 to GREI and Trust No.: 99-2200.

9

28.     On or before 17 December 2002 Esmail, Yousif, GREI and CSI represented to CIB that because of construction cost overruns GREI and Trust No.: 99-2200 would need to borrow an additional $3,500,000 to complete the renovation and conversion of 6 North Michigan Ave. to luxury condominiums. Esmail and Yousif approached, requested, and negotiated with CIB for an addition $3,500,000 construction loan from CIB. Esmail and Yousif represented to CIB that said additional construction loan was to be used for construction cost overruns to convert 6 North Michigan Ave. to luxury condominiums. On 17 December 2002 GREI and Trust No.: 99-2200 borrowed from CIB and its Participants and CIB and its Participants loaned to GREI and Trust No.: 99-2200 $3,500,000, thereby increasing the total credit facility to $48,300,000, to finance construction cost overruns to convert 6 North Michigan Ave. to luxury condominiums.

29.     As of about 13 December 2002 Yousif, Esmail, GREI and CSI had completed less than sixty percent (60%) of the conversion of 6 North Michigan Ave. to luxury condominiums.

30.     Between 20 June 2001 and 13 December 2002 Yousif and Esmail on behalf of GREI submitted to CIB and Ticor ten (10) separate and distinct Sworn Statements for Owner draw requests totaling $24,043,348. During the same period, Yousif and Esmail on behalf of CSI submitted to CIB and Ticor ten (10) separate and distinct Sworn Statements for Contractor and Subcontractor to Owner draw requests totaling $19,432,539. CSI's draw requests, though submitted separately to CIB and Ticor, are included in totaling GREI's draw requests to CIB and Ticor.

31.     On all ten (10) of GREI's Sworn Statements for Owner draw requests, GREI requested payment to itself and CSI from CIB through Ticor Escrow No.: 468778 for materials and labor on 6 North Michigan Ave., although GREI and CSI did not in fact provide to or

perform on the job site to convert 6 North Michigan Ave to luxury condominiums. GREI submitted its ten (10) draw requests, which included CSI's ten (10) Sworn Statements for Contractor and Subcontractor to Owner draw requests, to CIB for payment through Ticor Escrow No.: 468778 to itself and CSI on behalf of and/or agent for listed and non – listed persons and entities that in fact provided the materials and performed the labor to covert 6 North Michigan Ave to luxury condominiums. GREI and CSI, upon receiving CIB's funds from Ticor Escrow No.: 468778 pursuant to its draw requests, did not pay in part or in full the amounts due to listed and non-listed persons and entities that in fact provided the materials or performed the labor to covert 6 North Michigan Ave to luxury condominiums.

32.    Yousif and Esmail on behalf of GREI and CSI deposited CIB's funds received from Ticor Escrow No.: 468778 into its checking accounts at Fifth Third Bank located in Chicago, Illinois.

33.    On information and belief Esmail and/or Yousif caused over $15,000,000 of CIB's funds received from Ticor Escrow No.: 468778 to be withdrawn from GREI and CSI's checking accounts and deposited, either directly or indirectly through other accounts, into the checking accounts of Esmail, Yousif, Millennium, Universal, IMG, RECI, Woosh, Credit Suisse, Land Acquisition, ABC Entities 1-5 and John Does 1-5 for purposes other than the conversion of 6 North Michigan Ave into luxury condominiums. Esmail, Yousif, GREI, CSI, Millennium, Universal, IMG, RECI, Woosh, Credit Suisse, Land Acquisition, ABC Entities 1-5 and John Does 1-5 used CIB's funds received from Ticor Escrow No.: 468778 to purchase separate and distinct delinquent real estate tax certificates for over $10,000,000 in Cook County, Illinois, and other counties located in the States of Illinois, California, Nevada, and other unknown states located in the United States of America, used over $5,000,000 to purchase separate and distinct

distressed real properties in the States of Illinois, California, Nevada, and other unknown states located in the United States of America, and over $1,500,000 to purchase 100,333 shares of the common stock of CIB Marine Bancshares, Inc.

34.     As a result of the failure of Yousif, Esmail, GREI and CSI to pay the listed and non-listed persons and entities that in fact provided the materials or performed the labor to covert 6 North Michigan Ave to luxury condominiums, on information and belief these listed and non-listed persons and entities filed with the recorder of deeds in the County of Cook, State of Illinois, over $10,000,000 in mechanic liens for materials and labor not paid for but supplied to and performed on the conversion of 6 North Michigan Ave. to luxury condominiums.

35.     Upon CIB's demand for payment of its 17 December 2002 promissory note and/or guaranties, GREI, Esmail, and Yousif failed to pay CIB in full all principal, interests, fees and costs due in the amount of $40,738,273, plus reasonable attorneys' fees.

36.     At no time did CIB consent to or approve of: Esmail, Yousif, GREI or CSI using CIB's and its Participants' construction loan funds for any purpose other than the purchase, renovation, and conversion of 6 North Michigan Ave. to luxury condominiums; Esmail and/or Yousif making over 131 separate bank transfers totaling approximately $12,895,100 from CSI's construction checking account to Esmail's checking account; and Esmail and/or Yousif making over 26 separate bank transfers totaling approximately $6,627,900 from CSI's construction checking account to ABC Entities 1-5 and/or John Does 1-5's bank accounts.

37.     Upon information and belief, Esmail and/or Yousif knowingly and intentionally submitted ten (10) fraudulent Sworn Statements for Owner draw requests and ten (10) fraudulent Sworn Statements for Contractor and Subcontractor to Owner draw requests to CIB for the purpose of using the construction loan funds in interstate commerce to purchase through various

entities, persons, and accomplices delinquent real estate tax certificates, distressed properties and other personal properties.

38.   Upon information and belief, Esmail and/or Yousif knowingly and intentionally withdrew construction loan funds from GREI and CSI's checking accounts for the purpose of using the construction loan funds in interstate commerce to purchase through various entities, persons, and accomplices delinquent real estate tax certificates, distressed properties and other personal properties.

39.   Upon information and belief, Esmail and/or Yousif knowingly and intentionally purchased through various entities, persons and accomplices delinquent real estate tax certificates, distressed properties and other personal properties with CIB and its Participants' construction loan funds.

COUNT I – RACKETEERING
(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT)

40.   Plaintiff CIB repeats and incorporates by reference paragraphs 1 through 39, inclusive, as though fully set forth herein.

41.   The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., is directed at "racketeering activity" and prohibits any "person" from "investing in," "acquiring," or "conducting the affairs of" an "enterprise" engaged in or affecting interstate or foreign commerce through a "pattern of racketeering activities."

42.   "Racketeering activities," as defined in § 1961(1), include those acts "chargeable" under several generically described state criminal laws, any act "indictable" under numerous specific federal criminal provisions, including bank fraud, mail and wire fraud, and any "offense" involving bankruptcy or drug related activities that is/are "punishable" under federal law, 18 U.S.C. § 1961(1).

43. CIB in Count I seeks treble damages and other relief for injuries caused by Esmail, Yousif, GREI, CSI, Millennium, Universal, IMG, RECI, Woosh, Credit Suisse, Land Acquisition's violation of the RICO provisions of the Organized Crime Control Act of 1970, as amended, 18 U.S.C. §§ 1961-68.

44. At all relevant times, Esmail and Yousif were managing members, partners, officers and owners of certain entities that purchased, renovated, and converted 6 North Michigan Ave. to luxury condominiums. In that capacity, Esmail and Yousif contracted with CIB and its Participants to borrow $48,300,000, and contracted with professionals, contractors, subcontractors, tradesmen, suppliers, municipalities, and other government agencies for services, products, licenses and permits to convert 6 North Michigan Ave to Condominiums. Beginning in December of 1999 and continuing through the present, Esmail and Yousif began in a pattern of racketeering through the abuse of their position and authority as managing members, partners, officers and/or owners of GREI and CSI and other entities, and their association with accomplices.

THE ENTERPRISE

45. At all relevant times, Esmail participated in an association in fact, including but not limited to Yousif, GREI, CSI, Millennium, Universal, IMG, RECI, Woosh, Credit Suisse, Land Acquisition, Trust No.: 99-2200, as well as other entities whose identities and addresses are unknown, thus identified herein as ABC Entities 1-5, and other individuals whose identities and addresses are unknown, thus identified herein as John Does 1-5. This association in fact formed an "enterprise," as that term is defined in 18 U.S.C. §1961(4), the activities of which affected interstate commerce. The effects on interstate commerce include but are not limited to: reducing CIB's funds to lend to out of state borrowers in interstate commerce; reducing CIB's

Participants' funds to lend to out of state borrowers in interstate commerce; reducing CIB's ability to borrow funds from the United States Federal Reserve in interstate commerce; and reducing CIB's Participants' ability to borrow funds from the United States Federal Reserve in interstate commerce.

46. At all relevant times, Yousif participated in an association in fact, including but not limited to Esmail, GREI, CSI, Millennium, Universal, IMG, RECI, Woosh, Credit Suisse, Land Acquisition, Trust No.: 99-2200, as well as other entities whose identities and addresses are unknown, thus identified herein as ABC Entities 1-5, and other individuals whose identities and addresses are unknown, thus identified herein as John Does 1-5. This association in fact formed an "enterprise," as that term is defined in 18 U.S.C. §1961(4), the activities of which affected interstate commerce. The effects on interstate commerce include, but are not limited to: reducing CIB's funds to lend to out of state borrowers in interstate commerce; reducing CIB's Participants' funds to lend to out of state borrowers in interstate commerce; reducing CIB's ability to borrow funds from the United States Federal Reserve in interstate commerce; and reducing CIB's Participants' ability to borrow funds from the United States Federal Reserve in interstate commerce.

## HOW THE ENTERPRISE FUNCTIONED

47. This association in fact consisted of an ongoing organization functioning as a continuing unit whereby, through multiple schemes and/or artifices to commit bank fraud and the illegal use of the telephonic wire transmissions, at the direction of either or both Esmail and Yousif, GREI would send a fraudulent Sworn Statement for Owner to CIB requesting payment of construction loan funds through Ticor Escrow No.: 468778 for materials provided and labor performed that GREI did not provide to or perform on the condominium conversion of 6 North

Michigan Ave. even though GREI claimed on the Sworn Statement for Owner to CIB and Ticor that it did provide the materials and perform the labor.

48.    At all relevant times, Esmail, Yousif and GREI knew that Yousif as managing member of GREI executed the fraudulent Sworn Statement for Owner under oath and failed to list on said sworn statement all "persons and no others [that] have been contracted with or have furnished, or will furnish services, labor, or materials for the said improvements [to 6 North Michigan Ave.]."

49.    At all relevant times, Esmail, Yousif and GREI had knowledge that Yousif as managing member of GREI executed the Sworn Statement for Owner under oath with the specific intent and purpose to convert the construction loan funds from CIB and its Participants and to divert the payment of those construction loan funds from the materialmen and laborers that in fact supplied to and worked on the renovation and conversion of 6 North Michigan Ave. to luxury condominiums to entities and persons which trafficked in delinquent real estate tax certificates, distressed properties and other personal property.

50.    This association in fact consisted of an ongoing organization functioning as a continuing unit whereby, through multiple schemes and/or artifices to commit bank fraud and the illegal use of the telephonic wire transmissions, at the direction of either or both Esmail and Yousif, CSI would send or cause to be sent a fraudulent Sworn Statement for Contractor and Subcontractor to Owner to CIB requesting payment of construction loan funds through Ticor Escrow No.: 468778 for materials provided and labor performed that CSI did not provide to or perform on the condominium conversion of 6 North Michigan Ave. even though CSI claimed on the Sworn Statement for Contractor and Subcontractor to Owner to CIB and Ticor that it did provide the materials and perform the labor.

51.     At all relevant times, Esmail, Yousif and CSI had knowledge that Yousif as an officer and/or owner of CSI executed the fraudulent Sworn Statement for Contractor and Subcontractor to Owner under oath and failed to list on said sworn statement "the following persons [that] have been contracted with, and have furnished the amounts set opposite their names for materials or labor as stated [to 6 North Michigan Ave.]."

52.     At all relevant times, Esmail, Yousif and CSI had knowledge that Yousif as an agent, officer and/or owner of CSI executed the Sworn Statement for Contractor and Subcontractor to Owner under oath with the specific intent and purpose to convert the construction loan funds from CIB and its Participants and to divert the payment of those construction loan funds from the materialmen and laborers that in fact supplied to and worked on the renovation and conversion of 6 North Michigan Ave. to luxury condominiums to entities and persons that trafficked in delinquent real estate tax certificates, distressed properties and other personal property.

53.     The multiple schemes to defraud and steal from CIB and its Participants began in December of 1999 and continues through the present, in that Esmail, Yousif, GREI and CSI made material false representations to CIB and continued to send CIB and Ticor fraudulent sworn statements for payment of the construction loan funds through Ticor Escrow No.: 468778 to the enterprise to traffic in delinquent real estate tax certificates, distressed real properties and other personal property.

54.     The proceeds of this enterprises' illegal activity were divided among the members of the enterprise, including among others Esmail and Yousif.

55.     Esmail, Yousif, GREI and CSI have committed or engaged in multiple (two or more) indictable acts under 18 U.S.C. § 1343 (Wire Fraud) and/or 18 U.S.C. § 1344 (Bank

Fraud) within a ten-year period, at least one of which was committed in June of 2001 and at least a second of which was committed within ten years of the commission of the prior act. The pattern of racketeering consisted of the following racketeering acts:

## RACKETEERING ACT ONE – BANK FRAUD

56.     On or about 20 June 2001, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to CIB in Frankfort, Illinois, a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("20 June 2001 Draw Request #1") requesting payment of $3,055,340 from CIB and its Participants through Ticor Escrow No.: 468778, all in violation of 18 U.S.C. § 1344. On or about 26 June 2001, in Frankfort, Illinois, CIB in reliance on said telephonically transmitted 20 June 2001 Draw Request #1 did wire transfer through the U.S. Federal Reserve Bank $3,055,340 to Ticor Escrow No.: 468778 to be disbursed to GREI and SCI in Chicago, Illinois. On or about 26 June 2001 Ticor through Ticor Escrow No.: 468778 disbursed $3,055,340 to GREI and SCI.

## RACKETEERING ACT TWO – WIRE FRAUD

57.     On or about 20 June 2001, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to Ticor a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("20 June 2001 Draw Request #1") requesting payment of $3,055,340 from Ticor

Escrow No.: 468778, all in violation of 18 U.S.C. § 1343. On or about 26 June 2001, in reliance on said 20 June 2001 Draw Request #1, Ticor through Ticor Escrow No.: 468778 disbursed $3,055,340 to GREI and SCI.

## RACKETEERING ACT THREE – BANK FRAUD

58.     On or about 7 September 2001, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to CIB in Frankfort, Illinois, a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("7 September 2001 Draw Request #2") requesting payment of $2,628,905 from CIB and its Participants through Ticor Escrow No.: 468778, all in violation of 18 U.S.C. § 1344. On or about 17 September 2001, in Frankfort, Illinois, CIB in reliance on said telephonically transmitted 7 September 2001 Draw Request #2 did wire transfer through the U.S. Federal Reserve Bank $2,628,905 to Ticor Escrow No.: 468778 to be disbursed to GREI and SCI in Chicago, Illinois. On or about 17 September 2001 Ticor Escrow No.: 468778 disbursed $2,628,905 to GREI and SCI.

## RACKETEERING ACT FOUR – WIRE FRAUD

59.     On or about 7 September 2001, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to Ticor a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("7 September 2001 Draw Request #2") requesting payment of $2,628,905 from

Ticor Escrow No.: 468778, all in violation of 18 U.S.C. § 1343. On or about 17 September 2001, in reliance on said 7 September 2001 Draw Request #2, Ticor through Ticor Escrow No.: 468778 disbursed $2,628,905 to GREI and SCI.

## RACKETEERING ACT FIVE – BANK FRAUD

60. On or about 18 December 2001, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to CIB in Frankfort, Illinois, a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("18 December 2001 Draw Request #3") requesting payment of $2,483,040 from CIB and its Participants through Ticor Escrow No.: 468778, all in violation of 18 U.S.C. § 1344. On or about 19 December 2001, in Frankfort, Illinois, CIB in reliance on said telephonically transmitted 18 December 2001 Draw Request #3 did wire transfer through the U.S. Federal Reserve Bank $2,483,040 to Ticor Escrow No.: 468778 to be disbursed to GREI and SCI in Chicago, Illinois. On or about 19 September 2001 Ticor through Ticor Escrow No.: 468778 disbursed $2,483,040 to GREI and SCI.

## RACKETEERING ACT SIX – WIRE FRAUD

61. On or about 18 December 2001, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to Ticor a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("18 December 2001 Draw Request #3") requesting payment of $2,483,040 from

Ticor Escrow No.: 468778, all in violation of 18 U.S.C. § 1343. On or about 19 September

2001, in reliance on said 18 December 2001 Draw Request #3, Ticor through Ticor Escrow No.:

468778 disbursed $2,483,040 to GREI and SCI.

RACKETEERING ACT SEVEN – BANK FRAUD

62.     On or about 25 March 2002, in Chicago, Illinois, having devised a scheme to

defraud, and to obtain money or property by means of false and fraudulent pretenses and

representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in

interstate signals, signs and sounds, namely, a facsimile from itself to CIB in Frankfort, Illinois, a

fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to

Owner from GREI and CSI ("25 March 2002 Draw Request #4") requesting payment of

$2,547,634 from CIB and its Participants through Ticor Escrow No.: 468778, all in violation of

18 U.S.C. § 1344. On or about 2 April 2002, in Frankfort, Illinois, CIB in reliance on said

telephonically transmitted 25 March 2002 Draw Request #4 did wire transfer through the U.S.

Federal Reserve Bank $2,547,634 to Ticor Escrow No.: 468778 to be disbursed to GREI and SCI

in Chicago, Illinois. On or about 2 April 2002 Ticor through Ticor Escrow No.: 468778

disbursed $2,547,634 to GREI and SCI.

RACKETEERING ACT EIGHT – WIRE FRAUD

63.     On or about 25 March 2002, in Chicago, Illinois, having devised a scheme to

defraud, and to obtain money or property by means of false and fraudulent pretenses and

representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in

interstate signals, signs and sounds, namely, a facsimile from itself to Ticor a fraudulent Sworn

Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from

GREI and CSI ("25 March 2002 Draw Request #4") requesting payment of $2,547,634 from

Ticor Escrow No.: 468778, all in violation of 18 U.S.C. § 1343. On or about 2 April 2002, in reliance on said 25 March 2002 Draw Request #4, Ticor through Ticor Escrow No.: 468778 disbursed $2,547,634 to GREI and SCI.

## RACKETEERING ACT NINE – BANK FRAUD

64. On or about 11 May 2002, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to CIB in Frankfort, Illinois, a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("11 May 2002 Draw Request #5") requesting payment of $2,055,615 from CIB and its Participants through Ticor Escrow No.: 468778, all in violation of 18 U.S.C. § 1344. On or about 21 May 2002, in Frankfort, Illinois, CIB in reliance on said telephonically transmitted 11 May 2002 Draw Request #5 did wire transfer through the U.S. Federal Reserve Bank $2,055,615 to Ticor Escrow No.: 468778 to be disbursed to GREI and SCI in Chicago, Illinois. On or about 21 May 2002 Ticor through Ticor Escrow No.: 468778 disbursed $2,055,615 to GREI and SCI.

## RACKETEERING ACT TEN – WIRE FRAUD

65. On or about 11 May 2002, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to Ticor a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("11 May 2002 Draw Request #5") requesting payment of $2,055,615 from Ticor

Escrow No.: 468778, all in violation of 18 U.S.C. § 1343. On or about 21 May 2002, in reliance on said 11 May 2002 Draw Request #5, Ticor through Ticor Escrow No.: 468778 disbursed $2,055,615 to GREI and SCI.

## RACKETEERING ACT ELEVEN – BANK FRAUD

66.     On or about 25 June 2002, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to CIB in Frankfort, Illinois, a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("25 June 2002 Draw Request #6") requesting payment of $2,872,878 from CIB and its Participants through Ticor Escrow No.: 468778, all in violation of 18 U.S.C. § 1344. On or about 2 July 2002, in Frankfort, Illinois, CIB in reliance on said telephonically transmitted 25 June 2002 Draw Request #6 did wire transfer through the U.S. Federal Reserve Bank $2,872,878 to Ticor Escrow No.: 468778 to be disbursed to GREI and SCI in Chicago, Illinois. On or about 2 July 2002 Ticor through Ticor Escrow No.: 468778 disbursed $2,872,878 to GREI and SCI.

## RACKETEERING ACT TWELVE – WIRE FRAUD

67.     On or about 25 June 2002, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to Ticor a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("25 June 2002 Draw Request #6") requesting payment of $2,872,878 from Ticor

Escrow No.: 468778, all in violation of 18 U.S.C. § 1343. On or about 2 July 2002, in reliance on said 25 June 2002 Draw Request #6, Ticor through Ticor Escrow No.: 468778 disbursed $2,872,878 to GREI and SCI.

## RACKETEERING ACT THIRTEEN – BANK FRAUD

68.     On or about 8 August 2002, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to CIB in Frankfort, Illinois, a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("8 August 2002 Draw Request #7") requesting payment of $2,042,524 from CIB and its Participants through Ticor Escrow No.: 468778, all in violation of 18 U.S.C. § 1344. On or about 15 August 2002, in Frankfort, Illinois, CIB in reliance on said telephonically transmitted 8 August 2002 Draw Request #7 did wire transfer through the U.S. Federal Reserve Bank $2,042,524 to Ticor Escrow No.: 468778 to be disbursed to GREI and SCI in Chicago, Illinois. On or about 15 August 2002 Ticor through Ticor Escrow No.: 468778 disbursed $2,042,524 to GREI and SCI.

## RACKETEERING ACT FOURTEEN – WIRE FRAUD

69.     On or about 8 August 2002, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to Ticor a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("8 August 2002 Draw Request #7") requesting payment of $2,042,524 from

Ticor Escrow No.: 468778, all in violation of 18 U.S.C. § 1343. On or about 15 August 2002, in reliance on said 8 August 2002 Draw Request #7, Ticor through Ticor Escrow No.: 468778 disbursed $2,042,524 to GREI and SCI.

## RACKETEERING ACT FIFTEEN – BANK FRAUD

70.     On or about 30 September 2002, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to CIB in Frankfort, Illinois, a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("30 September 2002 Draw Request #8") requesting payment of $2,390,442 from CIB and its Participants through Ticor Escrow No.: 468778, all in violation of 18 U.S.C. § 1344. On or about 4 October 2002, in Frankfort, Illinois, CIB in reliance on said telephonically transmitted 30 September 2002 Draw Request #8 did wire transfer through the U.S. Federal Reserve Bank $2,390,442 to Ticor Escrow No.: 468778 to be disbursed to GREI and SCI in Chicago, Illinois. On or about 4 October 2002 Ticor through Ticor Escrow No.: 468778 disbursed $2,390,442 to GREI and SCI.

## RACKETEERING ACT SIXTEEN – WIRE FRAUD

71.     On or about 30 September 2002, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to Ticor a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("30 September 2002 Draw Request #8") requesting payment of $2,390,442 from

Ticor Escrow No.: 468778, all in violation of 18 U.S.C. § 1343. On or about 4 October 2002, in reliance on said 30 September 2002 Draw Request #8, Ticor through Ticor Escrow No.: 468778 disbursed $2,390,442 to GREI and SCI.

## RACKETEERING ACT SEVENTEEN – BANK FRAUD

72.     On or about 24 October 2002, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to CIB in Frankfort, Illinois, a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("24 October 2002 Draw Request #9") requesting payment of $575,570 from CIB and its Participants through Ticor Escrow No.: 468778, all in violation of 18 U.S.C. § 1344. On or about 30 October 2002, in Frankfort, Illinois, CIB in reliance on said telephonically transmitted 24 October 2002 Draw Request #9 did wire transfer through the U.S. Federal Reserve Bank $575,570 to Ticor Escrow No.: 468778 to be disbursed to GREI and SCI in Chicago, Illinois. On or about 30 October 2002 Ticor through Ticor Escrow No.: 468778 disbursed $575,570 to GREI and SCI.

## RACKETEERING ACT EIGHTEEN – WIRE FRAUD

73.     On or about 24 October 2002, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to Ticor a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("24 October 2002 Draw Request #9") requesting payment of $575,570 from

Ticor Escrow No.: 468778, all in violation of 18 U.S.C. § 1343. On or about 30 October 2002, in reliance on said 24 October 2002 Draw Request #9, Ticor through Ticor Escrow No.: 468778 disbursed $575,570 to GREI and SCI.

RACKETEERING ACT NINETEEN – BANK FRAUD

74.    On or about 13 December 2002, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to CIB in Frankfort, Illinois, a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("13 December 2002 Draw Request #10") requesting payment of $3,500,000 from CIB and its Participants through Ticor Escrow No.: 468778, all in violation of 18 U.S.C. § 1344. On or about 18 December 2002, in Frankfort, Illinois, CIB in reliance on said telephonically transmitted 13 December 2002 Draw Request #10 did wire transfer through the U.S. Federal Reserve Bank $3,500,000 to Ticor Escrow No.: 468778 to be disbursed to GREI and SCI in Chicago, Illinois. On or about 18 December 2002 Ticor through Ticor Escrow No.: 468778 disbursed $3,500,000 to GREI and SCI.

RACKETEERING ACT TWENTY – WIRE FRAUD

75.    On or about 13 December 2002, in Chicago, Illinois, having devised a scheme to defraud, and to obtain money or property by means of false and fraudulent pretenses and representations, Esmail and/or Yousif knowingly caused to be transmitted via means of wire in interstate signals, signs and sounds, namely, a facsimile from itself to Ticor a fraudulent Sworn Statement for Owner and Sworn Statement for Contractor and Subcontractor to Owner from GREI and CSI ("13 December 2002 Draw Request #10") requesting payment of $3,500,000

from Ticor Escrow No.: 468778, all in violation of 18 U.S.C. § 1343. On or about 18 December

2002, in reliance on said 13 December 2002 Draw Request #10, Ticor through Ticor Escrow

No.: 468778 disbursed $3,500,000 to GREI and SCI.

76.     Upon receipt of the payments from CIB or Ticor Escrow No.: 468778 as a direct

result of the enterprise's multiple schemes to defraud CIB and its Participants through a pattern

of racketeering, GREI and CSI did deposit the funds into separate accounts with Fifth Third

Bank, N.A., in Chicago, Illinois. After depositing the funds in the accounts at Fifth Third Bank,

N.A., on information and belief Esmail and/or Yousif, via U.S. mail and electronic wire transfer,

made the following transfers:

| Date | Amount | Transferred To |
|------|--------|----------------|
| 07/28/00 | $10,000 | FSD, LLC |
| 07/31/00 | 50,000 | Millennium |
| 08/03/00 | 50,000 | Esmail |
| 08/22/00 | 50,000 | Millennium |
| 09/12/00 | 250,000 | Esmail |
| 09/27/00 | 31,500 | Esmail |
| 09/30/00 | 186,000 | Esmail |
| 10/20/00 | 100,000 | Esmail |
| 10/31/00 | 125,328 | Esmail |
| 11/01/00 | 240,000 | Esmail |
| 11/20/00 | 100,000 | Esmail |
| 11/21/00 | 50,000 | Esmail |
| 12/15/00 | 150,000 | Esmail |

| | | |
|---|---|---|
| 12/18/00 | 150,000 | Esmail |
| 12/28/00 | 100,000 | Esmail |
| 12/28/00 | 50,000 | Esmail |
| 01/03/01 | 100,000 | Esmail |
| 01/04/01 | 2,497,500 | ABC Entities 1-5 and/or John Doe 1-5 |
| 04/09/01 | 40,000 | Esmail |
| 04/10/01 | 20,000 | Esmail |
| 04/18/01 | 50,000 | Esmail |
| 04/25/01 | 75,000 | Esmail |
| 05/11/01 | 20,000 | Esmail |
| 05/29/01 | 42,000 | Esmail |
| 07/10/01 | 62,000 | Esmail |
| 07/10/01 | 50,000 | Esmail |
| 08/03/01 | 480,000 | ABC Entities 1-5 and/or John Doe 1-5 |
| 08/10/01 | 155,000 | ABC Entities 1-5 and/or John Doe 1-5 |
| 08/13/01 | 128,625 | ABC Entities 1-5 and/or John Doe 1-5 |
| 08/17/01 | 75,000 | ABC Entities 1-5 and/or John Doe 1-5 |
| 08/23/01 | 50,000 | ABC Entities 1-5 and/or John Doe 1-5 |
| 08/23/01 | 75,000 | ABC Entities 1-5 and/or John Doe 1-5 |
| 08/27/01 | 25,000 | ABC Entities 1-5 and/or John Doe 1-5 |
| 08/31/01 | 85,000 | ABC Entities 1-5 and/or John Doe 1-5 |
| 08/31/01 | 13,000 | Esmail |
| 09/20/01 | 16,000 | Esmail |

| | | |
|---|---|---|
| 09/20/01 | 80,000 | Esmail |
| 09/21/01 | 20,000 | ABC Entities 1-5 and/or John Doe 1-5 |
| 09/25/01 | 31,000 | Esmail |
| 09/25/01 | 31,000 | Esmail |
| 09/30/01 | 46,050 | ABC Entities 1-5 and/or John Doe 1-5 |
| 10/03/01 | 50,000 | Esmail |
| 10/03/01 | 100,000 | Esmail |
| 10/17/01 | 90,000 | Esmail |
| 10/18/01 | 144,500 | Esmail |
| 10/22/01 | 31,790 | Esmail |
| 11/01/01 | 25,000 | Esmail |
| 11/05/01 | 65,000 | Esmail |
| 11/16/01 | 20,000 | Esmail |
| 11/19/01 | 53,000 | Esmail |
| 11/20/01 | 40,000 | Esmail |
| 11/30/01 | 269,000 | Esmail |
| 12/07/01 | 59,000 | Esmail |
| 12/18/01 | 10,000 | Esmail |
| 12/19/01 | 75,000 | Esmail |
| 12/20/01 | 50,000 | Esmail |
| 12/20/01 | 44,700 | ABC Entities 1-5 and/or John Doe 1-5 |
| 12/24/01 | 15,000 | Esmail |
| 12/26/01 | 300,000 | Esmail |

| | | |
|---|---|---|
| 12/28/01 | 53,700 | ABC Entities 1-5 and/or John Doe 1-5 |
| 12/28/01 | 160,000 | Esmail |
| 02/06/02 | 25,000 | Esmail |
| 02/08/02 | 25,000 | Esmail |
| 02/20/02 | 15,000 | Esmail |
| 02/25/02 | 10,000 | Esmail |
| 03/21/02 | 40,000 | Millennium |
| 04/03/02 | 11,000 | Esmail |
| 04/03/02 | 500,000 | Esmail |
| 04/04/02 | 700,000 | Esmail |
| 04/05/02 | 130,000 | Esmail |
| 04/09/02 | 15,000 | Esmail |
| 04/09/02 | 35,000 | Esmail |
| 04/10/02 | 10,000 | Esmail |
| 04/12/02 | 33,758 | Esmail |
| 04/15/02 | 40,000 | Esmail |
| 04/16/02 | 10,000 | Esmail |
| 04/16/02 | 30,000 | Esmail |
| 04/18/02 | 300,822 | Esmail |
| 04/18/02 | 10,000 | Esmail |
| 04/18/02 | 116,000 | Esmail |
| 04/18/02 | 40,000 | Esmail |
| 04/18/02 | 44,887 | Esmail |

| | | |
|---|---|---|
| 04/19/02 | 10,000 | Esmail |
| 04/22/02 | 130,817 | Esmail |
| 05/03/02 | 12,000 | Esmail |
| 05/08/02 | 255,000 | Esmail |
| 05/13/02 | 15,000 | ABC Entities 1-5 and/or John Doe 1-5 |
| 05/21/02 | 80,000 | Esmail |
| 05/22/02 | 50,000 | Esmail |
| 05/24/02 | 16,000 | Esmail |
| 05/28/02 | 25,000 | Esmail |
| 05/30/02 | 158,361 | ABC Entities 1-5 and/or John Doe 1-5 |
| 05/31/02 | 508,625 | ABC Entities 1-5 and/or John Doe 1-5 |
| 05/31/02 | 150,000 | Esmail |
| 06/04/02 | 30,000 | Esmail |
| 06/04/02 | 260,800 | Esmail |
| 06/07/02 | 10,000 | Esmail |
| 06/10/02 | 11,500 | Esmail |
| 06/10/02 | 20,000 | Esmail |
| 06/13/02 | 75,000 | Esmail |
| 06/17/02 | 10,000 | Esmail |
| 06/18/02 | 128,000 | Esmail |
| 06/24/02 | 24,000 | Esmail |
| 06/25/02 | 59,733 | ABC Entities 1-5 and/or John Doe 1-5 |
| 07/01/02 | 60,000 | Esmail |

| | | |
|---|---|---|
| 07/02/02 | 20,000 | Esmail |
| 07/02/02 | 10,000 | Esmail |
| 07/08/02 | 30,000 | Esmail |
| 07/09/02 | 65,431 | ABC Entities 1-5 and/or John Doe 1-5 |
| 07/16/02 | 1,200,000 | Esmail |
| 07/18/02 | 70,000 | Esmail |
| 07/22/02 | 155,000 | Esmail |
| 08/16/02 | 25,000 | Esmail |
| 08/20/02 | 1,787,486 | ABC Entities 1-5 and/or John Doe 1-5 |
| 08/23/02 | 51,700 | Esmail |
| 09/03/02 | 100,000 | Esmail |
| 09/10/02 | 275,000 | Esmail |
| 09/25/02 | 59,492 | ABC Entities 1-5 and/or John Doe 1-5 |
| 09/26/02 | 30,000 | Esmail |
| 09/26/02 | 150,000 | Esmail |
| 09/30/02 | 200,000 | Esmail |
| 10/01/02 | 55,000 | Esmail |
| 10/04/02 | 300,000 | Esmail |
| 10/10/02 | 200,000 | Esmail |
| 10/11/02 | 90,000 | Esmail |
| 10/16/02 | 20,000 | Esmail |
| 10/17/02 | 110,000 | Esmail |
| 10/24/02 | 225,000 | Esmail |

| | | |
|---|---|---|
| 10/30/02 | 70,000 | Esmail |
| 10/31/02 | 60,000 | Esmail |
| 10/31/02 | 150,000 | Esmail |
| 11/01/02 | 110,000 | Esmail |
| 11/01/02 | 63,000 | Esmail |
| 11/06/02 | 10,000 | Esmail |
| 11/08/02 | 50,000 | Esmail |
| 11/12/02 | 55,000 | Esmail |
| 11/15/02 | 22,000 | ABC Entities 1-5 and/or John Doe 1-5 |
| 12/17/02 | 30,000 | Esmail |
| 12/19/02 | 10,000 | Esmail |
| 12/19/02 | 30,000 | Esmail |
| 12/26/02 | 230,000 | Esmail |
| 12/26/02 | 575,000 | Esmail |
| 12/30/02 | 65,000 | Esmail |
| 01/03/03 | 89,000 | Esmail |
| 01/06/03 | 14,000 | Esmail |
| 01/08/03 | 54,000 | Esmail |
| 01/10/03 | 30,000 | ABC Entities 1-5 and/or John Doe 1-5 |
| 01/10/03 | 70,500 | Esmail |
| 01/21/03 | 11,000 | Esmail |
| 01/22/03 | 35,000 | Esmail |
| 01/28/03 | 50,000 | ABC Entities 1-5 and/or John Doe 1-5 |

| | | |
|---|---|---|
| 01/28/03 | 25,000 | ABC Entities 1-5 and/or John Doe 1-5 |
| 01/31/03 | 45,990 | ABC Entities 1-5 and/or John Doe 1-5 |
| 02/03/03 | 304,500 | Esmail |
| 02/07/03 | 45,000 | Esmail |
| 02/13/03 | 50,000 | Esmail |
| 02/13/03 | 50,000 | Esmail |
| 02/13/03 | 25,000 | Esmail |
| 02/13/03 | 83,000 | Esmail |
| 02/18/03 | 10,000 | Esmail |
| 02/20/03 | 65,780 | ABC Entities 1-5 and/or John Doe 1-5 |

all in furtherance of the enterprise's engagement in activities through a pattern of racketeering which affects interstate commerce, all in violation of 18 U.S.C. § 1962(c).

77.    Upon Esmail and/or Yousif's receipt of the funds as stated above in paragraph 76, Esmail and/or Yousif on behalf and in control of the enterprise made intentional and knowing transfers, via U.S. mail and electronic wire transfer, to entities and persons in interstate commerce for purposes other than the renovation and conversion of 6 North Michigan Ave. to luxury condominiums in furtherance of the enterprise's engagement in activities through a pattern of racketeering which affects interstate commerce, all in violation of 18 U.S.C. § 1962(c). Esmail and/or Yousif on behalf and in control of the enterprise made the following transfers:

78.    On or about 20 June 2001 Esmail and/or Yousif transferred from Esmail's Fifth Third Bank account the sum of $600,000 to or for the benefit of Credit Suisse for Credit Suisse to purchase and hold title to 28,639 shares of the common stock of CIB Marine Bancshares, Inc.,

a Wisconsin Banking corporation. On or about the same date Credit Suisse for the sum of $599,987 purchased from CIB Marine Bancshares, Inc., 28,639 shares of the common stock of CIB Marine Bancshares, Inc., certificate no.: C0000011304.

79.     On or about 25 June 2001 Esmail and/or Yousif transferred from Esmail's Fifth Third Bank account the sum of $400,000 to or for the benefit of Credit Suisse for Credit Suisse to purchase and hold title to 19,093 shares of the common stock of CIB Marine Bancshares, Inc., a Wisconsin Banking corporation. On or about the same date Credit Suisse for the sum of $419,091 purchased from CIB Marine Bancshares, Inc. 19,093 shares of the common stock of CIB Marine Bancshares, Inc., certificate no.: C0000011304.

80.     On or about 28 March 2002 Esmail and/or Yousif transferred from his Fifth Third Bank account the sum of $500,000 to or for the benefit of Credit Suisse for Credit Suisse to purchase and hold title to 21,533 shares of the common stock of CIB Marine Bancshares, Inc., a Wisconsin Banking corporation. On or about the same date Credit Suisse for the sum of $499,996 purchased from CIB Marine Bancshares, Inc., 21,533 shares of the common stock of CIB Marine Bancshares, Inc., certificate no.: C0000018589.

81.     From 2 January 2002 to 31 October 2002 Esmail and/or Yousif made a series of transfers from Esmail's Fifth Third Bank account totaling the sum of $3,186,364 to or for the benefit of Universal for Universal to purchase and hold title to delinquent Cook County, Illinois, real estate tax certificates. In 2002, Universal purchased from Cook County at its annual and scavenger tax sale delinquent Cook County, Illinois, real estate tax certificates for the sum of $3,047,609. During 2002 Universal paid the Cook County Collector the sum of $3,186,364.

82.     On or about 4 April 2002 Esmail and/or Yousif transferred from Esmail's Fifth Third Bank account the sum of $700,000 to or for the benefit of ABC Entities 1-5 and/or John

Doe 1-5 for it to purchase and hold title to distressed real property located in or about the vicinity of Chicago, Illinois. On or about the same date ABC Entities 1-5 and/or John Doe 1-5 transferred the sum of $700,000 to Sheldon Good & Company, escrowee, to purchase from an unknown seller distressed real property located in or about the vicinity of Chicago, Illinois.

83. On or about 25 October 2002 Esmail and/or Yousif transferred from Esmail's Fifth Third Bank account the sum of $200,000 to or for the benefit of ABC Entities 1-5 and/or John Doe 1-5 for it to purchase and hold title to distressed real property located in or about the vicinity of Chicago, Illinois. On or about the same date ABC Entities 1-5 and/or John Doe 1-5 transferred the sum of $200,000 to Republic Title Company to purchase from an unknown seller distressed real property located in or about the vicinity of Chicago, Illinois.

84. On or about 25 April 2003 Esmail and/or Yousif transferred from Esmail's Fifth Third Bank account the sum of $950,000 to or for the benefit of IMG for it to purchase and hold title to distressed real property located in or about the vicinity of Chicago, Illinois. On or about the same date IMG for $950,000 purchased from an unknown seller distressed real property located in or about the vicinity of Chicago, Illinois.

85. During 2000, 2001, 2002, and 2003, Esmail and/or Yousif transferred from Esmail's Fifth Third Bank account an amount in excess of $250,000 to or for the benefit of Land Acquisition and John Does 1-5 for it to purchase and hold title to real properties located in Las Vegas, Nevada. During 2000, 2001, 2002, and 2003, on information and belief, Land Acquisition and John Does 1-5 purchased for approximately $250,000 from unknown sellers the following real properties located in Las Vegas, Nevada, commonly known as 528 Shimering Sand; 2937 Harewood Ave; 1732 Farrell Street; 830 Hastle; and 3208 Glendale Ave.

86.     During 2000, 2001, 2002, and 2003, Esmail and/or Yousif transferred from Esmail's Fifth Third Bank account an amount in excess of $10,000,000 to or for the benefit of Millennium, Universal, IMG, RECI, Woosh, Land Acquisition, ABC Entities 1-5 and John Does 1-5 for it to purchase and hold title to delinquent real estate tax certificates, distressed real property, and other personal property located in the states of Illinois, Nevada, and California.

87.     Upon ABC Entities 1-5 and John Does 1-5's receipt of the funds as stated above in paragraph 76, on information and belief ABC Entities 1-5 and John Does 1-5 made intentional and knowing transfers of said funds, via U.S. mail and electronic wire transfer, to entities and persons in interstate commerce for purposes other than the renovation and conversion of 6 North Michigan Ave. to luxury condominiums in furtherance of the enterprise's engagement in activities through a pattern of racketeering which affects interstate commerce, all in violation of 18 U.S.C. § 1962(c).

88.     Esmail, Yousif, and/or GREI and/or CSI have thereby conducted and participated in, directly and indirectly, the affairs of an enterprise through a pattern of racketeering activity in violation 18 U.S.C. § 1962(c).

89.     As a direct and proximate result of this pattern of racketeering activity, CIB has suffered injuries to its business and/or property, the full amount of which is yet undetermined, but is known to include fraudulently stolen funds of not less than $15,000,000, appropriate interest thereon, and the expenses incurred in uncovering the scheme to defraud and steal perpetrated by Esmail, Yousif, GREI and CSI.

Wherefore, plaintiff CIB prays for judgment in its favor and jointly and severally against defendants Romel Esmail, Bassam Haj Yousif, Global Real Estate Investors, LLC, and Construction Services International, Inc., as follows:

(1)    An award of treble plaintiff's damages;

(2)    An award of costs of investigation and prosecution of this suit, with interest, including reasonable attorneys' fees;

(3)    The creation of a constructive trust for the benefit of plaintiff, to include, among other items, all monies held or controlled by Romel Esmail, a/k/a Romel Kopteh, in depository institutions and/or brokerage accounts, the residence at 33 E. Cedar, Unit #17F, Chicago, Illinois, and any other personal and real property held or controlled by Romel Esmail;

(4)    The creation of a constructive trust for the benefit of plaintiff, to include, among other items, all monies held or controlled by Bassam Haj Yousif in depository institutions and/or brokerage accounts, the residence at 1752 N. Sayre, Chicago, Illinois, and any other personal and real property held or controlled by Bassam Haj Yousif;

(5)    The creation of a constructive trust for the benefit of plaintiff, to include, among other items, all monies held or controlled by Global Real Estate Investors, LLC, in depository institutions and/or brokerage accounts and any other personal and real property held or controlled by Global Real Estate Investors, LLC;

(6)    The creation of a constructive trust for the benefit of plaintiff, to include, among other items, all monies held or controlled by Construction Services International, Inc. in depository institutions and/or brokerage accounts and any other personal and real property held or controlled by Construction Services International, Inc.;

(7)    The creation of a constructive trust for the benefit of plaintiff, to include, among other items, all monies held or controlled by Credit Suisse of Chicago, LLC, in

depository institutions and/or brokerage accounts, 100,333 shares of common stock of CIB Marine Bancshares, Inc., a Wisconsin Banking Corporation, and any other personal and real property held or controlled by Credit Suisse of Chicago, LLC;

(8)     The creation of a constructive trust for the benefit of plaintiff, to include, among other items, all monies held or controlled by Land Acquisitions, LLC, in depository institutions and/or brokerage accounts, real properties located in Las Vegas, Nevada, and its surrounding vicinity, commonly known as: 528 Shimering Sand; 2937 Harewood Ave; 1732 Farrell Street; 830 Hastle; and 3208 Glendale Ave, and any other personal and real property held or controlled by Land Acquisitions, LLC;

(9)     The creation of a constructive trust for the benefit of plaintiff, to include, among other items, all monies held or controlled by Millennium; Universal; IMG; RECI; Woosh; North Star Trust Company, as Trustee, u/t/a Dated 2 December 1999, a/k/a Trust No.: 99-2200, an Illinois land trust; ABC Entities 1-5; and John Does 1-5 in depository institutions and/or brokerage accounts and any other personal and real property held or controlled by Millennium; Universal; IMG; RECI; Woosh; North Star Trust Company, as Trustee, u/t/a Dated 2 December 1999, a/k/a Trust No.: 99-2200, an Illinois land trust; ABC Entities 1-5; and John Does 1-5; and

(10)    Such other relief as the Court deems just and proper.

## COUNT II – RACKETEERING CONSPIRACY
(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT)

90.     Plaintiff CIB repeats and incorporates by reference paragraphs 1 through 89, inclusive, as though fully set forth herein.

91.     Beginning in or about December of 1999 and continuing until the present, in the Northern District of Illinois and elsewhere, Esmail, Yousif, GREI and CSI, along with other members of the enterprise (which were engaged in, and the activities of which affected, interstate commerce), knowingly conspired to conduct and to participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d). This pattern of racketeering activity consisted of multiple acts of bank fraud, in violation of 18 U.S.C. § 1344, and wire fraud, in violation of 18 U.S.C. § 1343. It was part of the conspiracy that Esmail, Yousif, GREI and CSI agreed that two or more acts of racketeering would be committed in the conduct of the affairs of the enterprise.

92.     In furtherance of the conspiracy, Esmail, Yousif, GREI and CSI, together with the other members of the enterprise, committed or attempted to commit the racketeering acts described in Count I of this Complaint.

93.     It was further the object of the conspiracy that Esmail, Yousif, GREI and CSI, and the other members of the enterprise concealed from CIB and its agents the conspiracy and the acts in furtherance of the conspiracy.

Wherefore, plaintiff CIB prays for judgment in its favor and jointly and severally against defendants Romel Esmail, Bassam Haj Yousif, Global Real Estate Investors, LLC, and Construction Services International, Inc. as follows:

(1)     An award of treble plaintiff's damages;

(2)    An award of costs of investigation and prosecution of this suit, with interest, including reasonable attorneys' fees;

(3)    The creation of a constructive trust for the benefit of plaintiff, to include, among other items, all monies held or controlled by Romel Esmail, a/k/a Romel Kopteh, in depository institutions and/or brokerage accounts, the residence at 33 E. Cedar, Unit #17F, Chicago, Illinois, and any other personal and real property held or controlled by Romel Esmail;

(4)    The creation of a constructive trust for the benefit of plaintiff, to include, among other items, all monies held or controlled by Bassam Haj Yousif in depository institutions and/or brokerage accounts, the residence at 1752 N. Sayre, Chicago, Illinois, and any other personal and real property held or controlled by Bassam Haj Yousif;

(5)    The creation of a constructive trust for the benefit of plaintiff, to include, among other items, all monies held or controlled by Global Real Estate Investors, LLC, in depository institutions and/or brokerage accounts and any other personal and real property held or controlled by Global Real Estate Investors, LLC;

(6)    The creation of a constructive trust for the benefit of plaintiff, to include, among other items, all monies held or controlled by Construction Services International, Inc. in depository institutions and/or brokerage accounts and any other personal and real property held or controlled by Construction Services International, Inc.;

(7)    The creation of a constructive trust for the benefit of plaintiff, to include, among other items, all monies held or controlled by Credit Suisse of Chicago, LLC, in depository institutions and/or brokerage accounts, 100,333 shares of common

stock of CIB Marine Bancshares, Inc., a Wisconsin Banking Corporation, and any other personal and real property held or controlled by Credit Suisse of Chicago, LLC;

(8)     The creation of a constructive trust for the benefit of plaintiff, to include, among other items, all monies held or controlled by Land Acquisitions, LLC, in depository institutions and/or brokerage accounts, real properties located in Las Vegas, Nevada, and its surrounding vicinity, commonly known as: 528 Shimering Sand; 2937 Harewood Ave.; 1732 Farrell Street; 830 Hastle; and 3208 Glendale Ave, and any other personal and real property held or controlled by Land Acquisitions, LLC;

(9)     The creation of a constructive trust for the benefit of plaintiff, to include, among other items, all monies held or controlled by Millennium; Universal; IMG; RECI; Woosh; North Star Trust Company, as Trustee, u/t/a Dated 2 December 1999, a/k/a Trust No.: 99-2200, an Illinois land trust; ABC Entities 1-5; and John Does 1-5 in depository institutions and/or brokerage accounts and any other personal and real property held or controlled by Millennium; Universal; IMG; RECI; Woosh; North Star Trust Company, as Trustee, u/t/a Dated 2 December 1999, a/k/a Trust No.: 99-2200, an Illinois land trust; ABC Entities 1-5; and John Does 1-5; and

(10)    Such other relief as the Court deems just and proper.

## COUNT III
### (FRAUD)

94.     Plaintiff repeats and alleges the allegations of paragraphs 1 through 93, inclusive, as though fully set forth herein.

95. In each of the instances set forth above where Esmail and/or Yousif caused a fraudulent Sworn Statement For Owner or Sworn Statement of Contractor and Subcontractor for Owner to be sent to CIB with the specific intent that CIB should rely on said sworn statements and pay said sworn statements, Esmail and/or Yousif fully intended to covert CIB and its Participants' funds to their personal use (a true and authentic copy of GREI's ten (10) Sworn Statements for Owner draw requests and CSI's ten (10) Sworn Statements for Contractor and Subcontractor to Owner draw requests are attached hereto and incorporated herein as Exhibits "1" through "20").

96. In each of the instances set forth above where Esmail and/or Yousif caused a fraudulent Sworn Statement For Owner or Sworn Statement of Contractor and Subcontractor for Owner to be sent to CIB with the specific intent that CIB should rely on said draw requests and pay said draw requests, Esmail and/or Yousif made representations, or caused them to be made on their behalf, knowing and intending that CIB would rely on them and that such misrepresentations would enable the fraudulent draw requests to be paid.

97. The misrepresentations took place between July 2000 to December 2002, and include misrepresentations to CIB as to the veracity of the materials supplied and work performed as stated on the draw requests, the work and materials to be paid for as stated on the draw requests, and that the funds requested on the draw requests were to be used only for the conversion of 6 North Michigan Ave. to luxury condominiums.

98. Esmail and/or Yousif knew or should have known that CIB would rely on their misrepresentations in determining whether the draw requests should be paid, the amount that should be paid and the status of the completion of the work to convert 6 North Michigan Ave. to luxury condominiums.

44

99. In each instance set forth above, CIB relied upon Esmail, Yousif, GREI and CSI's fraudulent draw requests. As a result of the fraudulent conduct of Esmail; Yousif; GREI; CSI; ABC Entities 1-5 and John Does 1-5, CIB has been injured in an amount yet to be determined, but is known to include those payments on fraudulent draw requests of not less than $15,000,000, appropriate interest thereon, and the expenses incurred in uncovering the scheme to defraud perpetrated by Esmail; Yousif; GREI; CSI; ABC Entities 1-5 and John Does 1-5.

100. Esmail and Yousif's fraudulent conduct has been intentional, willful and wanton, continuing over the course of two years.

Wherefore, plaintiff CIB prays for judgment in its favor and against defendants Romel Esmail, Bassam Haj Yousif, Global Real Estate Investors, LLC, and Construction Services International, Inc., as follows:

(1) An award of damages yet to be undetermined, but not less than $15,000,000;

(2) An award of punitive damages;

(3) An award of costs of investigation and prosecution of this suit, with interest, including reasonable attorneys' fees; and

(4) Such other relief as this Court deems proper.

## COUNT IV
## (CONVERSION)

101. Plaintiff repeats and alleges the allegations of paragraphs 1 through 100, inclusive, as though fully set forth herein.

102. During 2000, 2001, 2002, and 2003, Esmail, Yousif, GREI, and CSI did knowingly and wrongfully deprive CIB of its property, including, but not limited to approximately $15,000,000, and did in fact take possession of said property.

103. Esmail, Yousif, GREI, and CSI have failed and/or refused to return said property, and therefore have converted said property to their own use.

Wherefore, plaintiff CIB prays for judgment in its favor and against defendants Romel Esmail, Bassam Haj Yousif, Global Real Estate Investors, LLC, and Construction Services International, Inc., as follows:

(1)    An award of damages yet to be undetermined, but not less than $15,000,000;

(2)    An award of costs of investigation and prosecution of this suit, with interest, including reasonable attorneys' fees; and

(3)    Such other relief as this Court deems proper.

COUNT V
(ESMAIL'S GUARANTY)

104. Plaintiff repeats and alleges the allegations of paragraphs 1 through 59, inclusive, as though fully set forth herein.

105. Esmail for value received, signed and delivered to CIB a Guaranty, by which Esmail undertook to absolutely and unconditionally guarantee to pay to CIB any current or future indebtedness of GREI and Trust No.: 99-2200 to CIB (a true and authentic copy of said Esmail's guaranty is attached hereto and incorporated herein as Exhibit "21").

106. GREI and Trust No.: 99-2200 is indebted to CIB in the sum of $48,300,000 pursuant to its Amended and Restated Mortgage Note to CIB.

107. GREI and Trust No.: 99-2200 defaulted under the terms of the Amended and Restated Mortgage Note.

108. There is due to CIB the sum of $40,738,273 under the Amended and Restated Mortgage Note, plus reasonable attorneys' fees and costs.

109. Esmail has not paid the indebtedness owing to CIB.

Wherefore, plaintiff CIB prays for judgment to be entered against defendant Romel Esmail in the sum of $40,738,273, plus reasonable attorneys fees and costs.

COUNT VI<br>(YOUSIF'S GUARANTY)

110. Plaintiff repeats and alleges the allegations of paragraphs 1 through 59, inclusive, as though fully set forth herein.

111. Yousif for value received, signed and delivered to CIB a Guaranty, by which Yousif undertook to absolutely and unconditionally guarantee to pay to CIB any current or future indebtedness of GREI and Trust No.: 99-2200 to CIB. (a true and authentic copy of said Yousif's guaranty is attached hereto and incorporated herein as Exhibit "22").

112. GREI and Trust No.: 99-2200 is indebted to CIB in the sum of $48,300,000 pursuant to its Amended and Restated Mortgage Note to CIB.

113. GREI and Trust No.: 99-2200 defaulted under the terms of the Amended and Restated Mortgage Note.

114. There is due to CIB the sum of $40,738,273 under the Amended and Restated Mortgage Note, plus reasonable attorneys' fees and costs.

115. Yousif has not paid the indebtedness owing to CIB.

Wherefore, plaintiff CIB prays for judgment to be entered against defendant Bassam Haj Yousif in the sum of $40,738,273, plus reasonable attorneys fees and costs.

## JURY DEMAND

116.    Plaintiff CIB Bank hereby requests a jury for all factual issues raised by this Complaint.

CIB Bank

By: _Robert J Mrofka_

One of its attorneys

Robert J. Mrofka, Esq. (Attorney No.: 6192038)
Thomas J. Cisar, Esq. (Attorney No.: 0447935)
Cisar & Mrofka, Ltd.
1550 Spring Rd., Suite 210
Oak Brook, IL 60523
630-530-0000

# NORTH MICHIGAN

THE AFFIANT, Global Real Estate Investors, being duly sworn on oath deposes and says that he/she is the ("Owner/Beneficiary of Trust No. 99-2200 being held by North Star Trust which is the Owner) of the following described premises in Cook County, Illinois, to wit:

North Michigan, Chicago, Illinois

that for the purposes of this affidavit, the following persons and no others have been contracted with or have furnished, or will furnish services, labor, or material for the said improvements. That this is a true and correct statement of all such persons, the amount of their contracts, the amounts paid them and the amount due them and all hard and soft costs in connection with said improvements.

Sworn Statement For Owner
June 11, 2001

## Sworn Statement For Owner

| | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amount Of This Payment (Draw I) | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| GREI | 333 W. North Ave, Chicago, Il | Land | $17,260,000 | | $17,260,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Building Permits | $400,000 | | $199,000 | $115,000 | $86,000 |
| GREI | 333 W. North Ave, Chicago, Il | Appraiser | $7,600 | | $7,600 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | EPA Phase I | $5,000 | | $5,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Engineering Conditions Report | $7,500 | | $7,500 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Phase II Asbestos Ass | $16,500 | | $16,500 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Architectural Design | $35,750 | | $35,750 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Architectual Zoning Design | $5,000 | | $5,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Architectual Evaluation | $3,500 | | $3,500 | | $0 |
| Destefano & Partners | 446 East Illinois, Chicago, Il | Architectual (New Architect) | $850,000 | | $795,500 | $38,500 | $16,000 |
| CSI | 47 West Division, Chicago, Il | MEP Engineering | $87,000 | | $87,000 | | $0 |
| | 47 West Division, Chicago, Il | Structural Engineering | $55,000 | | $41,750 | $13,250 | $0 |
| | 333 W. North Ave, Chicago, Il | MEP Engineering | $98,000 | | $98,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Structural Engineering | $40,000 | | $40,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Marketing Research | $3,750 | | $3,750 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Legal/City Planning Review | $16,800 | | $16,800 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Legal/Mich. Avn. Planning | $5,400 | | $5,400 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Demographics/Impact Ass. | $3,200 | | $3,200 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Insurance | $120,000 | | $89,000 | $16,450 | $15,550 |
| SI | 47 West Division, Chicago, Il | Insurance | $120,000 | | $120,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Interest Reserve | $3,360,000 | | $1,212,683 | $545,000 | $1,594,317 |
| GREI | 333 W. North Ave, Chicago, Il | Brokerage Fee | $360,000 | | $360,000 | | $0 |
| B Bank | 333 N. Quadrangle, Bolingbrook, Il | Financing /Construction Fee | $45,000 | | $45,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Financing /Construction Fee | $365,000 | | $111,400 | $250,000 | $3,600 |

Exhibit 1

No. 9774   P. 3/5

Sworn Statement For Owner
June 11, 2001
Page: 2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ra Nelson | 19 S. LaSalle, Chicago, Il | Legal Fees/Borrowers | $15,000 | | | $75,000 | $0 |
| (E) | 333 W. North Ave, Chicago, Il | Legal Fees/Borrowers | $52,000 | | | $12,500 | $12,500 | $21,920 |
| (w)Bride Baker & Coles | 500 West Madison, Chicago, Il | Legal Fees/Lender | $25,000 | | | $25,000 | $0 |
| Ticor Title | 233 North Lasalle, Chicago, Il | Title Charges | $45,000 | | | $18,605 | $15,000 | $11,395 |
| (E) | 333 W. North Ave, Chicago, Il | Closing & Title | $165,000 | | | $311,488 | $53,512 |
| (E) | 333 W. North Ave, Chicago, Il | Marketing & Sales | $940,000 | | | $444,330 | $395,000 | $100,670 |
| (E) | 333 W. North Ave, Chicago, Il | CONSTRUCTION | $25,429,438 | | | $6,077,182 | $1,535,460 | $17,816,796 |
| | | | $49,931,438 | | | $27,271,438 | $2,940,240 | $19,719,760 |

GLOBAL REAL ESTATE INVESTORS

Date   6/20/01

Subscribed and sworn to before me this _____ day of _____

Notary

Taxes   118,500.86

3,055,340.88

# NORTH MICHIGAN

5. AFFIANT, Global Real Estate Investors, being duly sworn on oath deposes and says that he/she is the ("Owner/Beneficiary of Trust No. 99-2206) being held by North Star Trust which is the Owner) of the following described premises in Cook County, Illinois, to wit:

North Michigan, Chicago, Illinois

labor, or material for the said improvements. That this is true and correct statement of all such persons, the amount of their contracts, amounts paid them and the amount due them and all hard and soft costs in connection with said improvements.

## Sworn Statement For Owner

| Name | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amount Of This Payment / Draw | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| | 333 W. North Ave, Chicago, Il. | Land | $17,260,000 | | $17,260,000 | | $0 |
| 3RFI | 47 West Division, Chicago, Il. | Building Permits | $400,000 | | $314,000 | $55,000 | $31,000 |
| 3RFI | 333 W. North Ave, Chicago, Il. | Appraisal | $7,600 | | $7,600 | | $0 |
| 3RFI | 333 W. North Ave, Chicago, Il. | EPA Phase I | $5,000 | | $5,000 | | $0 |
| 3RFI | 333 W. North Ave, Chicago, Il. | Engineering Conditions Report | $7,500 | | $7,500 | | $0 |
| 3RFI | 333 W. North Ave, Chicago, Il. | Phase II Asbestos Ass. | $16,500 | | $16,500 | | $0 |
| 3RFI | 333 W. North Ave, Chicago, Il. | Architectural Design | $35,750 | | $35,750 | | $0 |
| 3RFI | 333 W. North Ave, Chicago, Il. | Architectural Zoning Design | $5,000 | | $5,000 | | $0 |
| 3FFI | 333 W. North Ave, Chicago, Il. | Architectural Evaluation | $3,500 | | $3,500 | | $0 |
| Destefano & Partners | 445 East Illinois, Chicago, Il. | Architectural (New Architect) | $850,000 | | $834,000 | $16,000 | $0 |
| 3RFI | 47 West Division, Chicago, Il. | MEP Engineering | $87,000 | | $87,000 | | $0 |
| 3RFI | 47 West Division, Chicago, Il. | Structural Engineering | $55,000 | | $55,000 | | $0 |
| 3RFI | 333 W. North Ave, Chicago, Il. | MEP Engineering | $98,000 | | $98,000 | | $0 |
| 3RFI | 333 W. North Ave, Chicago, Il. | Structural Engineering | $40,000 | | $40,000 | | $0 |
| RSFI | 333 W. North Ave, Chicago, Il. | Marketing Research | $3,750 | | $3,750 | | $0 |
| RFI | 333 W. North Ave, Chicago, Il. | Legal/City Planning Review | $16,800 | | $16,800 | | $0 |
| REI | 333 W. North Ave, Chicago, Il. | Legal/Mich. Avn. Planning | $5,400 | | $5,400 | | $0 |
| RFI | 333 W. North Ave, Chicago, Il. | Demographics/Impact Ass. | $3,200 | | $3,200 | | $0 |
| RFI | 333 W. North Ave, Chicago, Il. | Insurance | $151,211 | | $151,211 | | $0 |
| REI | 47 West Division, Chicago, Il. | Insurance | $120,000 | | $89,000 | $28,020 | $2,980 |
| IB Bank | 333 W. North Ave, Chicago, Il. | Interest Reserve | $3,350,000 | | $1,754,663 | | $1,595,337 |
| REI | 333 W. North Ave, Chicago, Il. | Brokerage Fee | $360,000 | | $360,000 | | $0 |
| REI | 333 N. Quadrangle, Bolingbrook, Il. | Financing /Construction Fee | $45,000 | | $45,000 | | $0 |
| IB Bank | 333 W. North Ave, Chicago, Il. | Financing /Construction Fee | $365,000 | | $358,000 | | $7,000 |

Exhibit 2

Sworn Statement For Owner
August 28, 2001
Page 2

| | | | | | | |
|---|---|---|---|---|---|---|
| aka Nelson | 19 S. LaSalle, Chicago, Il | Legal Fees/Borrowers | $15,000 | $15,000 | | $0 |
| REI | 333 W. North Ave, Chicago, Il | Legal Contingency | $37,000 | $12,500 | | $24,500 |
| ncBride Baker & Coles | 500 West Madison, Chicago, Il | Legal Fees/Lender | $40,000 | $40,000 | | $0 |
| icor Title | 233 North Lasalle, Chicago, Il | Title Charges | $45,000 | $37,205 | | $7,795 |
| REI | 333 W. North Ave, Chicago, Il | Closing & Title | $165,000 | $111,488 | | $53,512 |
| SI | 47 West Division, Chicago, Il | Marketing & Sales | $940,000 | $839,330 | | $34,870 |
| SI | 47 West Division, Chicago, Il | | | $65,800 | | $34,870 |
| SI | 47 West Division, Chicago, Il | CONSTRUCTION | $25,429,438 | $7,612,642 | $2,464,085 | $15,352,711 |
| | | | | | | |
| | | | $49,962,649 | $30,224,039 | $2,628,805 | $17,109,705 |

GLOBAL REAL ESTATE INVESTORS

Date 9/7/01

Subscribed and sworn to before me this 7th day of Sept 2001

Notary

OFFICIAL SEAL
CHARLENE POPERNIK
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/23/12

# NORTH MICHIGAN

## Sworn Statement For Owner

OF AFFIANT, Global Real Estate Investors, being duly sworn on oath deposes and says that he/she is the ("Owner/Beneficiary of ...st No. 99-2200 being held by North Star Trust which is the Owner) of the following described premises in Cook County, Illinois,

...ibit: 6 North Michigan, Chicago, Illinois

...at for the purposes of this affidavit, the following persons and no others have been contracted with or have furnished,
...rnish services labor, or material for the said improvements. That this is true and correct statement of all such persons,
...mount of their contracts the amounts paid them and the amount due them and all hard and soft costs in connection with said
...rovements.

| | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amount Of This Payment (Draw) | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | 333 W. North Ave, Chicago, Il. | Land | $17,260,000 | | $17,260,000 | | $0 |
| | 47 West Division, Chicago, Il. | Building Permits | $400,000 | | $369,000 | $ 12,650.00 | $18,350 |
| GREI | 333 W. North Ave, Chicago, Il. | Appraisel | $7,600 | | $7,600 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | EPA Phase I | $5,000 | | $5,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Engineering Conditions Report | $7,500 | | $7,500 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Phase II Asbestos Ass. | $16,500 | | $16,500 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Architectural Design | $35,750 | | $35,750 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Architectual Zoning Design | $5,000 | | $5,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Architectual Evaluation | $3,500 | | $3,500 | | $0 |
| GREI | 445 East Illinois, Chicago, Il. | Architectual (New Architect) | $850,000 | | $850,000 | | $0 |
| GREI | 47 West Division, Chicago, Il. | MEP Engineering | $67,000 | | $67,000 | | $0 |
| GREI | 47 West Division, Chicago, Il. | Structural Engineering | $55,000 | | $55,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | MEP Engineering | $98,000 | | $98,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Structural Engineering | $40,000 | | $40,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Marketing Research | $3,750 | | $3,750 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Legal City Planning Review | $16,800 | | $16,800 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Legal, Mich, Ann. Planning | $5,400 | | $5,400 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Demographics/Impact Ass. | $3,200 | | $3,200 | | $0 |
| REI | 333 W. North Ave, Chicago, Il. | Insurance | $151,211 | | $151,211 | | $0 |
| REI | 47 West Division, Chicago, Il. | Insurance | $120,000 | | $117,020 | | $2,980 |
| B Bank | 333 W. North Ave, Chicago, Il. | Interest Reserve | $3,350,000 | | $1,754,663 | | $1,595,337 |
| B Bank | 333 W. North Ave, Chicago, Il. | Brokerage Fee | $360,000 | | $360,000 | | $0 |
| REI | 333 N. Quadrangle, Bolingbrook, Il. | Financing /Construction Fee | $45,000 | | $45,000 | | $0 |
| LB Bank | 333 W. North Ave, Chicago, Il. | Financing /Construction Fee | $365,000 | | $358,000 | | $7,000 |

| | Exhibit |
|---|---|
| | 3 |

Sworn Statement For Owner
December 18, 2001
Page: 2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| a Nelson | 19 S. LaSalle, Chicago, Il | Legal Fees/Borrowers | $15,000 | | $15,000 | | $0 |
| EI | 333 W. North Ave, Chicago, Il | Legal Contingency | $37,000 | | $12,500 | | $24,500 |
| Bkto Baker & Coles | 500 West Madison, Chicago, Il | Legal Fees/Lender | $40,000 | | $40,000 | | $0 |
| or Title | 233 North Lasalle, Chicago, Il | Title Charges | $45,000 | | $37,205 | | $7,795 |
| EI | 333 W. North Ave, Chicago, Il | Closing & Title | $165,000 | | $111,488 | | $53,512 |
| | 47 West Division, Chicago, Il | Marketing & Sales | $940,000 | | $905,130 | | $34,870 |
| | 47 West Division, Chicago, Il | CONSTRUCTION | $29,345,508 | | $10,076,727 | | $16,798,390 |
| | | | | | | | |
| | | | $83,878,719 | | $32,852,944 | $ 2,483,040.76 | $ 2,470,390.76 | $18,542,734 |

GLOBAL REAL ESTATE INVESTORS

Date 12/18/01

Subscribed and sworn to before me this _____ day of _____

Notary _____

# NORTH MICHIGAN

IE AFFIANT, Global Real Estate Investors, being duly sworn on oath deposes and says that he/she is the ("Owner/Beneficiary of Trust No. 99-2200 being held by North Star Trust which is the Owner) of the following described premises in Cook County, Illinois, to wit: 6 North Michigan, Chicago, Illinois

that for the purposes of this affidavit, the following persons and no others have been contracted with or have furnished, furnish services labor, or material for the said improvements. That this is true and correct statement of all such persons, amount of their contracts the amounts paid them and the amount due them and all hard and soft costs in connection with said improvements.

## Sworn Statement For Owner

| | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amount Of This Payment (Draw 1) | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| GREI | 333 N. North Ave, Chicago, Il | Land | $17,260,000 | | $17,280,000 | | $0 |
| CSI | 47 West Division, Chicago, Il | Building Permits | $400,000 | | $382,650 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Appraisel | $7,600 | | $7,600 | | $17,350 |
| GREI | 333 W. North Ave, Chicago, Il | EPA Phase I | $5,000 | | $5,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Engineering Conditions Report | $7,500 | | $7,500 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Phase II Asbestos Ass. | $16,500 | | $16,500 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Architectural Design | $35,750 | | $35,750 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Architectural Zoning Design | $5,000 | | $5,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Architectural Evaluation | $3,500 | | $3,500 | | $0 |
| Vestebano & Partners | 445 East Illinois, Chicago, Il | Architectural (New Architect) | $1,363,226 | | $1,015,836 | $ 172,780.23 | $194,810 |
| Alexander & Associates | 950 Skokie Blvd, Northbrook, Il | Engineer | $40,000 | | | $ 32,884.69 | $7,115 |
| GREI | 47 West Division, Chicago, Il | MEP Engineering | $87,000 | | $87,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Structural Engineering | $55,000 | | $55,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | MEP Engineering | $98,000 | | $98,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Structural Engineering | $40,000 | | $40,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Marketing Research | $3,750 | | $3,750 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Legal/City Planning Review | $16,800 | | $16,800 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Legal/Mich. Avn. Planning | $5,400 | | $5,400 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Demographics/Impact Ass. | $3,200 | | $3,200 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Insurance | $151,211 | | $151,211 | | $0 |
| 3 Bank | 47 West Division, Chicago, Il | Insurance | $120,000 | | $117,020 | | $2,980 |
| 3 Bank | 333 W. North Ave, Chicago, Il | Interest Reserve | $3,350,000 | | $1,754,663 | $ 475,000.00 | $1,120,337 |
| 3 Bank | 333 N. North Ave, Chicago, Il | Brokerage Fee | $360,000 | | $360,000 | | $0 |
| a Bank | 333 N. Quadrangle, Bolingbrook, Il | Financing /Construction Fee | $45,000 | | $45,000 | | $0 |
| 3 Bank | 333 W. North Ave, Chicago, Il | Financing /Construction Fee | $365,000 | | $358,000 | | $7,000 |

Exhibit 4

Sworn Statement For Owner
March 25, 2002
Page: 2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| a Nelson | 19 S. LaSalle, Chicago, Il | Legal Fees/Borrowers | $15,000 | | $15,000 | | $0 |
| :El | 333 W. North Ave, Chicago, Il. | Legal Contingency | $37,000 | | $12,500 | | $24,500 |
| Bilde Baker & Coles | 500 West Madison, Chicago, Il. | Legal Fees/Lender | $40,000 | | $40,000 | | $0 |
| Ticor Title | 233 North Lasalle, Chicago, Il | Title Charges | $45,000 | | $37,205 | | $7,795 |
| :El | 333 W. North Ave, Chicago, Il. | Closing & Title | $165,000 | | $111,488 | | $53,512 |
| :El | 47 West Division, Chicago, Il. | Marketing & Sales | $1,150,000 | | $905,130 | $ 234,500.00 | $10,370 |
| i | 47 West Division, Chicago, Il. | CONSTRUCTION | $30,285,015 | | $12,547,117 | $ 1,632,469.10 | $16,085,429 |
| | | | $55,581,452 | | $35,502,820 | $ 2,547,634.02 | $17,530,998 |

GLOBAL REAL ESTATE INVESTORS

Date   3/25/02

Subscribed and sworn to before me this _____ day of _____

Notary

# NORTH MICHIGAN

**THE AFFIANT**, Global Real Estate Investors, being duly sworn on oath deposes and says that she/he is the ("Owner/Beneficiary of Trust No. 99-2200 being held by North Star Trust which is the Owner) of the following described premises in Cook County, Illinois, to wit: 5 North Michigan, Chicago, Illinois

that for the purposes of this affidavit, the following persons and no others have been contracted with or have furnished, or furnish services labor, or material for the said improvements. That this is true and correct statement of all hard and soft costs in connection with said improvements, amount of their contracts the amounts paid them and the amount due them and all

## Sworn Statement For Owner

| Name | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amount Of This Payment Draw 7 | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| | 333 W. North Ave, Chicago, Il | Land | $17,260,000 | | $17,260,000 | | $0 |
| | 47 West Division, Chicago, Il | Building Permits | $650,000 | | $382,650 $ | | $0 |
| | 333 W. North Ave, Chicago, Il | Appraisal | $7,600 | | $7,600 $ | 26,450.00 | $238,900 |
| | 333 W. North Ave, Chicago, Il | EPA Phase I | $5,000 | | $5,000 | | $0 |
| | 333 W. North Ave, Chicago, Il | Engineering Conditions Report | $7,500 | | $7,500 | | $0 |
| | 333 W. North Ave, Chicago, Il | Phase II Asbestos Ass. | $16,500 | | $16,500 | | $0 |
| | 333 W. North Ave, Chicago, Il | Architectural Design | $35,750 | | $35,750 | | $0 |
| | 333 W. North Ave, Chicago, Il | Architectural/Zoning Design | $5,000 | | $35,750 | | $0 |
| 445 East Illinois, Chicago, Il | | Architectural Evaluation | $2,500 | | $5,000 | | $0 |
| 960 Skokie Blvd, Northbrook, Il | | Architectural (New Architect) | $3,500 | | $3,500 | | $0 |
| stefano & Partners | 47 West Division, Chicago, Il | Engineer | $1,383,226 | | $1,188,616 $ | 65,431.81 | $129,178 |
| | 47 West Division, Chicago, Il | MEP Engineering | $40,000 | | $32,885 | | $7,115 |
| | 333 W. North Ave, Chicago, Il | Structural Engineering | $67,000 | | $67,000 | | $0 |
| | 333 W. North Ave, Chicago, Il | MEP Engineering | $55,000 | | $55,000 | | $0 |
| | 333 W. North Ave, Chicago, Il | Structural Engineering | $98,000 | | $98,000 | | $0 |
| | 333 W. North Ave, Chicago, Il | Marketing Research | $40,000 | | $40,000 | | $0 |
| | 333 W. North Ave, Chicago, Il | Legal/Mich. Ann. Planning | $3,750 | | $3,750 | | $0 |
| | 333 W. North Ave, Chicago, Il | Legal/City Planning Review | $16,800 | | $16,800 | | $0 |
| | 333 W. North Ave, Chicago, Il | Demographics/Impact Ass. | $5,400 | | $5,400 | | $0 |
| | 333 W. North Ave, Chicago, Il | Insurance | $3,200 | | $3,200 | | $0 |
| | 47 West Division, Chicago, Il | Insurance | $250,000 | | $151,211 $ | 73,500.00 | $25,289 |
| | 333 W. North Ave, Chicago, Il | Interest Reserve | $120,000 | | $117,020 | | $2,980 |
| | 333 N. Quadrangle, Bolingbrook, Il | Brokerage Fee | $3,350,000 | | $2,229,663 $ | 276,000.00 | $844,537 |
| | 333 N. Quadrangle, Bolingbrook, Il | Financing /Construction Fee | $360,000 | | $360,000 | | $0 |
| | 333 W. North Ave, Chicago, Il | Financing /Construction Fee | $45,000 | | $45,000 | | $0 |
| | 333 W. North Ave, Chicago, Il | Financing /Construction Fee | $385,000 | | $356,000 | | $0 |
| | | | | | | | $7,600 |

Exhibit 5

[No. 50] 5

P. 5/5

| | | | | | | |
|---|---|---|---|---|---|---|
| a Nelson | 19 S. LaSalle, Chicago, Il | Legal Fees/Borrowers | $15,000 | | $15,000 | |
| EI | 333 W. North Ave, Chicago, Il. | Legal Contingency | $37,000 | | $12,500 | |
| McBride Baker & Coles | 500 West Madison, Chicago, Il | Legal Fees/Lender | $40,000 | | $40,000 | $24,500 |
| ...r Title | 233 North Lasalle Chicago, Il. | Title Charges | $45,000 | | $40,000 | $0 |
| | 333 W. North Ave. Chicago, Il. | Closing & Title | $165,000 | | $37,205 | $7,796 |
| | 47 West Division, Chicago, Il. | Marketing & Sales | $1,350,000 | | $111,488 | $53,512 |
| | 47 West Division, Chicago, Il | CONSTRUCTION | $30,285,015 | | $14,179,586 | $62,370 |
| | | | | | $1,139,630 | $148,000.00 |
| | | | | | $1,464,233.90 | $14,621,195 |
| | | | $56,130,241 | | $30,050,454 | $2,055,615.71 |
| | | | | | | $16,024,171 |

GLOBAL REAL ESTATE INVESTORS

5/1/02

Date

scribed and sworn to before me this _____ day of _____

Notary

# NORTH MICHIGAN

## Sworn Statement For Owner

THE AFFIANT, Global Real Estate Investors, being duly sworn on oath deposes and says that he/she is the ("Owner/Beneficiary of Trust No. 99-2200 being held by North Star Trust which is the Owner) of the following described premises in Cook County, Illinois, with 6 North Michigan, Chicago, Illinois,

...ator the purposes of this affidavit, the following persons and no others have been contracted with or have furnished, ...rnish services labor, or material for the said improvements. That this is true and correct statement of all such persons, ...mount of their contracts the amounts paid them and the amount due them and all hard and soft costs in connection with said ...provements.

| Name | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amnt Of This Payment / Draw 8 | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| REI | 333 W. North Ave. Chicago, Il. | Land | $17,260,000 | | $17,260,000 | | $0 |
| 3I | 47 West Division, Chicago, Il. | Building Permits | $650,000 | | $411,100 $ | 48,670.00 | $190,230 |
| REI | 333 W. North Ave. Chicago, Il. | Appraisal | $7,600 | | $7,600 | | $0 |
| REI | 333 W. North Ave. Chicago, Il. | EPA Phase I | $5,000 | | $5,000 | | $0 |
| REI | 333 W. North Ave. Chicago, Il. | Engineering Conditions Report | $7,500 | | $7,500 | | $0 |
| REI | 333 W. North Ave. Chicago, Il. | Phase II Asbestos Ass. | $16,500 | | $16,500 | | $0 |
| REI | 333 W. North Ave. Chicago, Il. | Architectural Design | $35,750 | | $35,750 | | $0 |
| REI | 333 W. North Ave. Chicago, Il. | Architectural Zoning Design | $5,000 | | $5,000 | | $0 |
| REI | 333 W. North Ave. Chicago, Il. | Architectural Evaluation | $3,500 | | $3,500 | | $0 |
| sielson & Partners | 445 East Illinois, Chicago, Il. | Architectural (New Architect) | $1,383,226 | | $1,254,048 | | $129,178 |
| exander Associates | 950 Skokia Blvd, Northbrook, Il. | Engineer | $40,000 | | $32,885 | | $7,115 |
| i | 47 West Division, Chicago, Il. | MEP Engineering | $87,000 | | $87,000 | | $0 |
| i | 47 West Division, Chicago, Il. | Structural Engineering | $55,000 | | $55,000 | | $0 |
| EI | 333 W. North Ave. Chicago, Il. | MEP Engineering | $98,000 | | $98,000 | | $0 |
| EI | 333 W. North Ave. Chicago, Il. | Structural Engineering | $40,000 | | $40,000 | | $0 |
| EI | 333 W. North Ave. Chicago, Il. | Marketing Research | $3,750 | | $3,750 | | $0 |
| EI | 333 W. North Ave. Chicago, Il. | Legal/City Planning Review | $16,800 | | $16,800 | | $0 |
| EI | 333 W. North Ave. Chicago, Il. | Legal/Mich. Avn. Planning | $5,400 | | $5,400 | | $0 |
| EI | 333 W. North Ave. Chicago, Il. | Demographics/Impact Ass. | $3,200 | | $3,200 | | $0 |
| EI | 47 West Division, Chicago, Il. | Insurance | $250,000 | | $224,711 | | $25,269 |
| Bank | 333 W. North Ave. Chicago, Il. | Interest Reserve | $120,000 | | $117,020 | | $2,980 |
| EI | 333 W. North Ave. Chicago, Il. | Brokerage Fee | $3,350,000 | | $2,505,663 $ | 234,286.21 | $610,051 |
| Bank | 333 N. Quadrangle, Bolingbrook, Il. | Financing /Construction Fee | $360,000 | | $360,000 | | $0 |
| Bank | 333 W. North Ave. Chicago, Il. | Financing /Construction Fee | $45,000 | | $45,000 | | $0 |
| Bank | 333 W. North Ave. Chicago, Il. | Financing /Construction Fee | $365,000 | | $358,000 | | $7,000 |



Exhibit
6

| | | | | |
|---|---|---|---|---|
| 19 S. LaSalle, Chicago, Il | Legal Fees/Borrowers | $15,000 | $15,000 | $0 |
| 333 W. North Ave, Chicago, Il. | Legal Contingency | $37,000 | $12,500 | $24,500 |
| 500 West Madison, Chicago, Il. | Legal Fees/Lender | $40,000 | $40,000 | $0 |
| 233 North Laselle, Chicago, Il. | Title Charges | $45,000 | $37,205 | $7,795 |
| 333 W. North Ave, Chicago, Il. | Closing & Title | $165,000 | $111,488 | $53,512 |
| 47 West Division, Chicago, Il | Marketing & Sales | $1,350,000 | $1,287,690 | $24,500.00 | $37,870 |
| 47 West Division, Chicago, Il. | CONSTRUCTION | $42,527,429 | $16,643,819 | $2,565,422.00 | $24,318,166 |
| | | $68,392,655 | $40,106,088 | $2,872,878.21 | $25,413,708 |

19 ¿a Nelson
REI
:Brds Baker & Coles
Ticor Title
REI

GLOBAL REAL ESTATE INVESTORS

Date 6/25/02

scribed and sworn to before me this _____ day of _____

Notary

# 6 NORTH MICHIGAN

THE AFFIANT, Global Real Estate Investors, being duly sworn on oath deposes and says that he/she is the ("Owner/Beneficiary of Trust No. 99-2200 being held by North Star Trust which is the Owner) of the following described premises in Cook County, Illinois, to wit: 6 North Michigan, Chicago, Illinois

That for the purposes of this affidavit, the following persons and no others have been contracted with or have furnished, furnish services labor, or material for the said improvements. That this is true and correct statement of all hard and soft costs in connection with said improvements.

## Sworn Statement For Owner

| Name | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amount Of This Payment (Draw 7) | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| GREI | 333 W. North Ave, Chicago, Il | Land | $17,260,000 | | $17,260,000 | | $0 |
| CSI | 47 West Division, Chicago, Il | Building Permits | $650,000 | | $459,770 $ | 38,365.00 | $151,865 |
| GREI | 333 W. North Ave, Chicago, Il | Appraisel | $7,500 | | $7,500 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | EPA Phase I | $5,000 | | $5,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Engineering Conditions Report | $7,500 | | $7,500 | | $0 |
| GREI | 333 W. North Ave, Chicago, It | Phase II Asbestos Ass. | $16,500 | | $16,500 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Architectural Design | $35,750 | | $35,750 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Architectual Zoning Design | $5,000 | | $5,000 | | $0 |
| GREI | 338 W. North Ave, Chicago, Il | Architectural Evaluation | $3,500 | | $3,500 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Architectural (New Architect) | $1,383,226 | | $1,254,048 $ | 53,784.94 | $75,393 |
| Destefano & Partners | 445 East Illinois, Chicago, Il | Engineer | $40,000 | | $32,885 | | $7,115 |
| Alexander & Associates | 950 Skokie Blvd, Northbrook, Il | Engineer | $97,000 | | $97,000 | | $0 |
| CSI | 47 West Division, Chicago, Il | MEP Engineering | $55,000 | | $55,000 | | $0 |
| CSI | 47 West Division, Chicago, Il | Structural Engineering | $98,000 | | $98,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Al | MEP Engineering | $40,000 | | $40,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Structural Engineering | $3,750 | | $3,750 | | $0 |
| GREI | 333 W. North Ave, Chicago, It | Marketing Research | $16,800 | | $16,800 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Legal/City Planning Review | $5,400 | | $5,400 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Legal/Mech. Avn. Planning | $3,200 | | $3,200 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Demographical/Impact Ass. | $250,000 | | $224,711 | | $25,289 |
| GREI | 333 W. North Ave, Chicago, Il | Insurance | $120,000 | | $117,020 | | $2,980 |
| CSI | 47 West Division, Chicago, Il | Interest Reserve | $3,350,000 | | $2,709,949 $ | 179,337.57 | $431,713 |
| CIB Bank | 333 W. North Ave, Chicago, Il | Brokerage Fee | $360,000 | | $360,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il | Financing /Construction Fee | $45,000 | | $45,000 | | $0 |
| CIB Bank | 333 N. Quadrangle, Bolingbrook, Il | | | | | | $0 |

Exhibit

| | | | | | | |
|---|---|---|---|---|---|---|
| ka Nelson | 19 S. LaSalle, Chicago, Il | Legal Fees/Borrowers | $15,000 | | $15,000 | $0 |
| iREI | 333 W. North Ave, Chicago, Il | Legal Contingency | $37,000 | | $12,500 | $24,500 |
| icBride Baker & Coles | 500 West Madison, Chicago, Il | Legal Fees/Lender | $40,000 | | $40,000 | $0 |
| iour Title | 233 North Lasalle, Chicago, Il | Title Charges | $45,000 | | $37,205 | $7,795 |
| IREI | 333 W. North Ave, Chicago, Il | Closing & Title | $165,000 | | $111,488 | $53,512 |
| SI | 47 West Division, Chicago, Il | Marketing & Sales | $1,350,000 | | $1,312,130 | $31,124 |
| SI | 47 West Division, Chicago, Il | CONSTRUCTION | $42,527,429 | | $18,209,241 | $22,552,897 |
| | | | $68,392,855 | | $42,976,947 $ 2,042,524.61 | $23,371,184 |

1,775,261.61

GLOBAL REAL ESTATE INVESTORS

Date 8/8/02

$ 2,052,524.51

August Doran

Subscribed and sworn to before me this _____ day of _____ Notary

# 6 NORTH MICHIGAN

BE AFFIANT, Global Real Estate Investors, being duly sworn on oath deposes and says that he/she is the ("Owner/Beneficiary of rust No. 99-2200 being held by North Star Trust which is the Owner) of the following described premises in Cook County, Illinois, wit: 6 North Michigan, Chicago, Illinois,

hat for the purposes of this affidavit, the following persons and no others have been contracted with or have furnished, urnish services labor, or material for the said improvements. That this is true and correct statement of all such persons, mount of their contracts the amounts paid them and the amount due them and all hard and soft costs in connection with said reement.

## Sworn Statement For Owner

| Name | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amount Of This Payment (Draw 7) | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| | 333 W. North Ave, Chicago, Il. | Land | $17,260,000 | | $17,260,000 | | $0 |
| | 47 West Division, Chicago, Il. | Building Permits | $650,000 | | $491,135 $ | 22,340.00 | $136,525 |
| | 333 W. North Ave, Chicago, Il. | Appraisel | $7,600 | | $7,600 | | $0 |
| | 333 W. North Ave, Chicago, Il. | EPA Phase I | $5,000 | | $5,000 | | $0 |
| | 333 W. North Ave, Chicago, Il. | Engineering Conditions Report | $7,500 | | $7,500 | | $0 |
| | 333 W. North Ave, Chicago, Il. | Phase II Asbestos Ass. | $16,500 | | $16,500 | | $0 |
| | 333 W. North Ave, Chicago, Il. | Architectual Design | $35,750 | | $35,750 | | $0 |
| | 333 W. North Ave, Chicago, Il. | Architectual Zoning Design | $5,000 | | $5,000 | | $0 |
| | 333 W. North Ave, Chicago, Il. | Architectual Evaluation | $3,500 | | $3,500 | | $0 |
| ..tano & Partners | 445 East Illinois, Chicago, Il. | Architectual (New Architect) | $1,483,226 | | $1,315,158 $ | 130,439.40 | $37,629 |
| ..ger & Associates | 950 Skokie Blvd, Northbrook, Il | Engineer | $40,000 | | $32,885 | | $7,115 |
| | 47 West Division, Chicago, Il. | MEP Engineering | $87,000 | | $87,000 | | $0 |
| | 47 West Division, Chicago, Il. | Sructural Engineering | $55,000 | | $55,000 | | $0 |
| | 333 W. North Ave, Chicago, Il. | MEP Engineering | $98,000 | | $98,000 | | $0 |
| | 333 W. North Ave, Chicago, Il. | Structural Engineering | $40,000 | | $40,000 | | $0 |
| | 333 W. North Ave, Chicago, Il. | Marketing Research | $3,750 | | $3,750 | | $0 |
| | 333 W. North Ave, Chicago, Il. | Legal/City Planning Review | $16,800 | | $16,800 | | $0 |
| | 333 W. North Ave, Chicago, Il. | Legal/Mich. Avn. Planning | $5,400 | | $5,400 | | $0 |
| | 333 W. North Ave, Chicago, Il. | Demographics/Impact Ass. | $3,200 | | $3,200 | | $0 |
| | 333 W. North Ave, Chicago, Il. | Insurance | $250,000 | | $224,711 | | $25,289 |
| | 47 West Division, Chicago, Il. | Insurance | $120,000 | | $117,020 | | $2,980 |
| | 333 W. North Ave, Chicago, Il. | Interest Reserve | $3,350,000 | | $2,918,287 $ | 194,333.06 | $237,380 |
| | 333 W. North Ave, Chicago, Il. | Brokerage Fee | $360,000 | | $360,000 | | $0 |
| | 333 N. Quadrangle, Bolingbrook, Il | Financing /Construction Fee | $45,000 | | $45,000 | | $0 |
| ..ank | 333 W. North Ave, Chicago, Il. | Financing /Constuction Fee | $365,000 | | $358,000 | | $7,000 |

Exhibit



| Nielson | 19 S. LaSalle, Chicago, Il | Legal Fees/Borrowers | $15,000 | | $15,000 | | |
| | 333 W. North Ave, Chicago, Il | Legal Contingency | $37,000 | | $12,500 | | $24,500 |
| | 500 West Madison, Chicago, Il | Legal Fees/Lender | $40,000 | | $40,000 | | $0 |
| ...ide Baker & Coles | 233 North Lasalle, Chicago, Il | Title Charges | $45,000 | | $37,205 | | $7,795 |
| Title | | Closing & Title | $165,000 | | $111,488 | | $53,512 |
| | 333 W. North Ave, Chicago, Il | | $1,350,000 | | $1,318,876 | | $31,124 |
| | 47 West Division, Chicago, Il | Marketing & Sales | | $20,021,989 $ | | | $20,462,110 |
| | 47 West Division, Chicago, Il | CONSTRUCTION | $42,527,429 | | 2,043,330.00 | | |
| | | | $63,492,655 | | $45,069,263 $ | 2,390,742.48 | $21,632,599 |

GLOBAL REAL ESTATE INVESTORS

Date  9/30/02

Subscribed and sworn to before me this _____ day of _____

Notary

# NORTH MICHIGAN

## Sworn Statement For Owner

E AFFIANT, Global Real Estate Investors, being duly sworn on oath deposes and says that he/she is the ("Owner/Beneficiary of 1st No. 99-2200 being held by North Star Trust which is the Owner) of the following described premises in Cook County, Illinois, with 6 North Michigan, Chicago, Illinois

at for the purposes of this affidavit, the following persons and no others have been contracted with or have furnished, mish services labor, or material for the said improvements. That this is true and correct statement of all such persons, out of their contracts the amounts paid them and the amount due them and all hard and soft costs in connection with said

| | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amount Of This Payment | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| | | | | | | Draw 7 | |
| | 333 W. North Ave, Chicago, Il | Land | $17,260,000 | | $17,260,000 | | $0 |
| | 47 West Division, Chicago, Il | Building Permits | $650,000 | | $520,475 | | $129,525 |
| | 333 W. North Ave, Chicago, Il | Appraisal | $7,600 | | $7,600 | | $0 |
| | 333 W. North Ave, Chicago, Il | EPA Phase I | $5,000 | | $5,000 | | $0 |
| | 333 W. North Ave, Chicago, Il | Engineering Conditions Report | $7,500 | | $7,500 | | $0 |
| | 333 W. North Ave, Chicago, Il | Phase II Asbestos Ass. | $16,500 | | $16,500 | | $0 |
| | 333 W. North Ave, Chicago, Il | Architectural Design | $35,750 | | $35,750 | | $0 |
| | 333 W. North Ave, Chicago, Il | Architectural Zoning Design | $5,000 | | $5,000 | | $0 |
| | 333 W. North Ave, Chicago, Il | Architectural Evaluation | $3,500 | | $3,500 | | $0 |
| | 445 East Illinois, Chicago, Il | Architectural (New Architect) | $1,483,226 | | $1,445,597 | | $37,629 |
| | 950 Skokie Blvd, Northbrook, Il | Engineer | $40,000 | | $32,885 | | $7,115 |
| | 47 West Division, Chicago, Il | MEP Engineering | $87,000 | | $87,000 | | $0 |
| | 47 West Division, Chicago, Il | Structural Engineering | $55,000 | | $55,000 | | $0 |
| | 333 W. North Ave, Chicago, Il | MEP Engineering | $98,000 | | $98,000 | | $0 |
| | 333 W. North Ave, Chicago, Il | Structural Engineering | $40,000 | | $40,000 | | $0 |
| | 333 W. North Ave, Chicago, Il | Marketing Research | $3,750 | | $3,750 | | $0 |
| | 333 W. North Ave, Chicago, Il | Legal City Planning Review | $16,800 | | $16,800 | | $0 |
| | 333 W. North Ave, Chicago, Il | Legal Mich. Ave. Planning | $5,400 | | $5,400 | | $0 |
| | 333 W. North Ave, Chicago, Il | Demographics/Impact Ass. | $3,200 | | $3,200 | | $0 |
| | 333 W. North Ave, Chicago, Il | Insurance | $250,000 | | $224,711 | | $25,289 |
| | 47 West Division, Chicago, Il | Insurance | $120,000 | | $117,020 | | $2,980 |
| | 333 W. North Ave, Chicago, Il | Interest Reserve | $3,350,000 | | $3,112,620 | | $237,380 |
| | 333 W. North Ave, Chicago, Il | Brokerage Fee | $360,000 | | $360,000 | | $0 |
| | 333 N. Quadrangle, Bolingbrook, Il | Financing /Construction Fee | $45,000 | | $45,000 | | $0 |
| | 333 W. North Ave, Chicago, Il | Financing /Construction Fee | $365,000 | | $358,000 | | $7,000 |

Exhibit 9

Oct. 28. 2002 10:43AM    No.8134   P. 4/5

| Address | Category | | | | |
|---|---|---|---|---|---|
| 19 S. LaSalle, Chicago, Il | Legal Fees/Borrowers | $15,000 | | $55,000 | $0 |
| 333 W. North Ave. Chicago, Il | Legal Contingency | $37,000 | | $12,500 | $24,500 |
| 500 West Madison, Chicago, Il | Legal Fees/Lender | $40,000 | | $0 | $0 |
| 233 North Lasalle, Chicago, Il | Title Charges | $45,000 | | $37,205 | $7,785 |
| 333 W. North Ave. Chicago, Il | Closing & Title | $765,000 | | $11,488 | $53,512 |
| 47 West Division, Chicago, Il | Marketing & Sales | $1,350,000 | | $31,124 | $31,124 |
| 47 West Division, Chicago, Il | CONSTRUCTION | $42,527,425 | | $22,065,319 | $19,896,540 |
| | | $68,492,855 | $47,465,696 | 573,570.00 | $20,450,389 |

Nelson
EI
Erida Baker & Coles
r Title
EI

GLOBAL REAL ESTATE INVESTORS

Date  10/24/02

bed and sworn to before me this _____ day of _____ Notary.

Exhibit

# Sworn Statement For Owner

THE AFFIANT, Global Real Estate Investors, being duly sworn on oath deposes and says that he/she is the ("Owner/Beneficiary of Trust No. 99-2200 being held by North Star Trust which is the Owner) of the following described premises in Cook County, Illinois, to wit: 8 North Michigan, Chicago, Illinois

That for the purposes of this affidavit, the following persons and no others have been contracted with or have furnished, furnish services labor, or material for the said improvements. That this is true and correct statement of all such persons, amount of their contracts the amounts paid them and the amount due them and all hard and soft costs in connection with said improvements.

| Name | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amount Of This Payment Draw 9 | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| GREI | 333 W. North Ave, Chicago, Il. | Land | $17,280,000 | | $17,280,000 | | $0 |
| CSI | 47 West Division, Chicago, Il. | Building Permits | $650,000 | | $520,475 | 31,450.00 | $98,075 |
| CSI | 333 W. North Ave, Chicago, Il. | Appraisal | $7,600 | | $7,600 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | EPA Phase I | $5,000 | | $5,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Engineering Conditions Report | $7,500 | | $7,500 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Phase II Asbestos Ass. | $16,500 | | $16,500 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Architectural Design | $35,750 | | $35,750 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Architectural Zoning Design | $5,000 | | $5,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Architectural Evaluation | $3,500 | | $3,500 | | $0 |
| Viano & Partners | 445 East Illinois, Chicago, Il. | Architectural (New Architect) | $1,483,226 | | $1,445,597 | | $37,629 |
| Xander & Associates | 950 Skokie Blvd, Northbrook, Il. | Engineer | $35,000 | | $32,885 | | $2,115 |
| CSI | 47 West Division, Chicago, Il. | MEP Engineering | $87,000 | | $87,000 | | $0 |
| CSI | 47 West Division, Chicago, Il. | Structural Engineering | $55,000 | | $55,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | MEP Engineering | $98,000 | | $98,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Structural Engineering | $40,000 | | $40,000 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Marketing Research | $3,750 | | $3,750 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Legal-City Planning Review | $16,800 | | $16,800 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Legal-Mich. Avn. Planning | $5,400 | | $5,400 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Demographics/Impact Ass. | $3,200 | | $3,200 | | $0 |
| GREI | 333 W. North Ave, Chicago, Il. | Insurance | $250,000 | | $224,711 | 25,269.00 | $0 |
| S1 | 47 West Division, Chicago, Il. | Insurance | $120,000 | | $117,020 | | $2,980 |
| B Bank | 333 W. North Ave, Chicago, Il. | Interest Reserve | $4,500,000 | | $3,112,620 | 380,000.00 | $1,007,380 |
| YEI | 333 W. North Ave, Chicago, Il. | Brokerage Fee | $360,000 | | $360,000 | | $0 |
| 3 Bank | 333 N. Quadrangle, Bolingbrook, Il. | Financing /Construction Fee | $45,000 | | $45,000 | | $0 |

Exhibit 10

,02  5:24PM

No.9085

| | | | | | | |
|---|---|---|---|---|---|---|
| B Bank | 333 W. North Ave, Chicago, Il. | Financing /Construction Fee | $365,000 | | | |
| Ika Nelson | 19 S. LaSalle, Chicago, Il | Legal Fees/Borrowers | $15,000 | | | |
| REI | 333 W. North Ave, Chicago, Il. | Legal Contingency | $37,000 | | | |
| McBride Baker & Coles | 500 West Madison, Chicago, Il. | Legal Fees/Lender | $40,000 | | | |
| REI | 333 W. North Ave, Chicago, Il. | TAXES | $140,000 | $0 | $138,362.00 | |
| tcor Title | 233 North Lasalle, Chicago, Il. | Title Charges | $45,000 | $37,205 | | |
| REI | 333 W. North Ave, Chicago, Il. | Closing & Title | $165,000 | $111,488 | | |
| SI | 47 West Division, Chicago, Il. | Marketing & Sales | $1,365,000 | $1,318,876 | 17,600.00 | |
| CSI | 47 West Division, Chicago, Il. | CONSTRUCTION | $42,527,429 | $22,640,888 | 2,906,299.00 | $16,9 |
| | | | $69,782,655 | $48,042,265 | 3,500,000.00 | $16,24 |

bscribed and sworn to before me this _____ day of _____ Notary

GLOBAL REAL ESTATE INVESTORS

Date 12/13/02

# 6 NORTH MICHIGAN

## Sworn Statement For Contractor and Subcontractor to Owner

State Of Illinois County Of Cook:

THE AFFIANT, being first duly sworn, on oath deposes and says that is of CSI, Inc. that has a contract with Global Real Estate Investors,
Owner for, the following described premises in said County, to wit: 6 North Michigan, Chicago, Illinois,

That for the purposes of this contract, the following persons have been contracted with, and have furnished,
the amounts set opposite their names for materials or labor as stated. That this statement is a full, true and
complete statement of all such persons, the amounts paid and the amounts due or to become due to each.

| Contractor | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amnt Of This Payment Draw 1 | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| CSI | 47 W. Division, Chicago, Il | Construction Cost Of 131 Units | $8,225,096 | | | | $8,225,096 |
| CSI | 47 W. Division, Chicago, Il | Construction Cost Of 3 Units | $450,000 | | $340,000 | $110,000 | $0 |
| CSI | 47 W. Division, Chicago, Il | Infrastructure | $1,346,000 | | | $335,000 | $1,011,000 |
| CSI | 47 W. Division, Chicago, Il | Exterior Masonry Cleaning | $780,000 | | $780,000 | | $0 |
| CSI | 47 W. Division, Chicago, Il | Masonry Repair/Replacement | $950,000 | | $423,000 | | $527,000 |
| CSI | 47 W. Division, Chicago, Il | Exterior Stone Restoration | $575,000 | | $288,982 | | $286,018 |
| CSI | 47 W. Division, Chicago, Il | Scaffolding For Madison/Michigan | $275,000 | | $275,000 | | $0 |
| CSI | 47 W. Division, Chicago, Il | Window Replacement | $1,265,780 | | | | $1,265,780 |
| CSI | 47 W. Division, Chicago, Il | Basement and Parking Structure | $1,544,685 | | | $217,500 | $1,377,165 |
| CSI | 47 W. Division, Chicago, Il | Retail Space (7,700 sq. ft.) | $340,000 | | | | $340,000 |
| CSI | 47 W. Division, Chicago, Il | Lobby | $125,000 | | | | $125,000 |
| CSI | 47 W. Division, Chicago, Il | Party/Exercise Room | $115,000 | | | | $115,000 |
| SI | 47 W. Division, Chicago, Il | Building Elevators | $786,000 | | | | $786,000 |
| SI | 47 W. Division, Chicago, Il | Interior Demolition | $1,776,000 | | $1,454,750 | $321,250 | $0 |
| SI | 47 W. Division, Chicago, Il | Sprinkler System | $650,000 | | | | $650,000 |
| SI | 47 W. Division, Chicago, Il | Construction Contingency | $998,021 | | | $79,000 | $917,021 |
| CSI | 47 W. Division, Chicago, Il | Asbestos Abatement Basement | $2,190,000 | | $1,940,000 | $250,000 | $0 |
| MDI | 145 S. Wacker, Chicago, Il | Asbestos Abatement Floors 1-20 | | | | | |
| CSI | 47 W. Division, Chicago, Il | Construction Manager Fee | $1,088,324 | | $165,000 | $97,750 | $825,574 |
| CSI | 47 W. Division, Chicago, Il | General Conditions | $1,400,000 | | $235,450 | $82,960 | $1,081,590 |
| CSI | 47 W. Division, Chicago, Il | Project Manager Fee | $551,562 | | $175,000 | $42,000 | $334,562 |
| | | | $25,429,438 | | $6,077,182 | $1,535,460 | $17,816,786 |

Exhibit

11

No.9774    P. 5/5

CONSTRUCTION SERVICES INTERNATIONAL

6/20/01

Date

Subscribed and sworn to before me this _____ day of _____ Notary

# 6 NORTH MICHIGAN

## Sworn Statement For Contractor and Subcontractor to Owner

State Of Illinois County Of Cook:

THE AFFIANT, being first duly sworn, on oath deposes and says that is of CSI, Inc. that has a contract with Global Real Estate Investors, Owner for, the following described premises in said County, to wit: 6 North Michigan, Chicago, Illinois.

That for the purposes of this contract, the following persons have been contracted with, and have furnished, or are furnishing materials or labor as stated. That this statement is a full, true and complete statement of all such persons, the amounts paid and the amounts due or to become due to each.

| Contractor | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amount Of This Payment | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| 07/26/04 | 47 W. Division, Chicago, Il | Construction Cost Of 104 Units | $6,725,096 | | | $ 457,000.00 | $6,268,096 |
| Jupiter Electric | 582 Territorial Drive, Bolingbrook, Il | Electrical | $275,000 | | | $ 165,000.00 | $110,000 |
| CSI | 47 W. Division, Chicago, Il | Constuction Cost Of 3 Units | $450,000 | | $450,000 | | $0 |
| CSI | 47 W. Division, Chicago, Il | Infrastructure | $1,221,000 | | $335,000 | | $886,000 |
| National Construction | 303 S. Washington, Lagrange, Il | Structural | $875,000 | | $ | $ 620,000.00 | $255,000 |
| Danny's Construction Co., Inc. | 1056 West Third Ave., Shakopee, Mn. | Steel | $350,000 | | $ | $ 265,000.00 | $95,000 |
| Zethon Concrete | P O Box 7070, Deerfield, Il | Concrete | $125,000 | | $ | $ 67,000.00 | $58,000 |
| Spectrum Stone | 333 W. Washington, Lagrange, Il | Exterior Masonry Cleaning | $780,000 | | $760,000 | | $0 |
| Spectrum Stone | 333 W. Washington, Lagrange, Il | Masonry Repair/Replacement | $523,000 | | $423,000 | | $100,000 |
| Platinum Stone | 333 W. Washington, Lagrange, Il | Masonry Repair/Replacement | $427,000 | | | $ 78,000.00 | $349,000 |
| Spectrum Stone | 333 W. Washington, Lagrange, Il | Exterior Stone Restoration | $575,000 | | $286,982 | | $286,018 |
| Spectrum Stone | 333 W. Washington, Lagrange, Il | Scaffolding For Madison/Michigan | $275,000 | | $275,000 | | $0 |
| CSI | 47 W. Division, Chicago, Il | Window Replacement | $1,265,780 | | | $ 226,335.00 | $1,039,445 |
| CSI | 47 W. Division, Chicago, Il | Basement and Parking Structure | $1,544,655 | | $217,500 | $ 184,500.00 | $1,142,655 |
| CSI | 47 W. Division, Chicago, Il | Retail Space (7,700 sq. ft.) | $340,000 | | | | $340,000 |
| CSI | 47 W. Division, Chicago, Il | Lobby | $125,000 | | | | $125,000 |
| OBS | 4405 West Lawrence, Chicago, Il | Party/Exercise Room | $115,000 | | | | $115,000 |
| O&S Elevator | 651 W. Washington, Chicago, Il | Building Elevators | $786,000 | | | | $786,000 |
| Paisco, Inc. | | Interior Demolition | $1,776,000 | | $1,776,000 | | $0 |
| US Fire Protection | 26427 N. Ballard, Unit H, Lake Forest, Il | Sprinkler System | $650,000 | | | | $650,000 |

Exhibit

12

| | | | | | | |
|---|---|---|---|---|---|---|
| CSI | 47 W. Division, Chicago, Il. | Construction Contingency | $965,021 | $79,000 | $28,750.00 | $868,271 |
| Parco, Inc. | 47 W. Division, Chicago, Il. | Asbestos Abatement Basement | $2,190,000 | $2,190,000 | | $0 |
| | | Asbestos Abatement Floors 1-20 | | | | |
| MDI | 145 S. Wacker, Chicago, Il. | Construction Manager Fee | $1,088,324 | $262,750 | $64,500.00 | $761,074 |
| CSI | 47 W. Division, Chicago, Il. | General Conditions | $1,400,000 | $318,410 | 245,500.00 | $835,990 |
| CSI | 47 W. Division, Chicago, Il. | Project Manager Fee | $551,552 | $217,000 | 62,400.00 | $272,152 |
| | | | | $0 | | $0 |
| | | | | $0 | | $0 |
| | | | | $0 | | $0 |
| | | | | $0 | | $0 |
| | | | $25,429,438 | $7,812,642 | $ 2,464,095.00 | $16,352,711 |

OFFICIAL SEAL
CHARLENE POPERNIK
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/23/02

CONSTRUCTION SERVICES INTERNATIONAL

Subscribed and sworn to before me this ___ day of Sept. 2001

Notary.

Date

Page: 2

# 6 NORTH MICHIGAN

State Of Illinois County Of Cook:

THE AFFIANT, being first duly sworn, on oath deposes and says that is of CSI, Inc; that has a contract with Global Real Estate Investors, Owner for, the following described premises in said County, to wit: 6 North Michigan, Chicago, Illinois.

That for the purposes of this contract, the following persons have been contracted with, and have furnished, the amounts set opposite their names for materials or labor as stated. That this statement is a full, true and complete statement of all such persons, the amounts paid and the amounts due or to become due to each.

## Sworn Statement For Contractor and Subcontractor to Owner

| Contractor | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amunt Of This Payment Draw 4 | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| CSI | 47 W. Division, Chicago, Il. | Construction Cost Of 104 Units | $2,780,096 | | $146,500 | $133,760.00 | $2,780,096 |
| CSI | 47 W. Division, Chicago, Il. | Electrical/Units | $825,000 | | $106,360 | $118,450.00 | $544,740 |
| CSI | 47 W. Division, Chicago, Il. | Plumbing/Units | $944,000 | | $139,910 | $82,322.00 | $717,190 |
| CSI | 47 W. Division, Chicago, Il. | Mechanical/Units | $1,025,000 | | $62,230 | | $902,788 |
| CSI | 47 W. Division, Chicago, Il. | Flooring/Units | $148,000 | | | | $85,770 |
| Jupiter Electric | 582 Territorial Drive, Bolingbrook, Il | Electrical/Service | $2,690,000 | | $165,000 | $231,450.00 | $2,293,550 |
| CSI | 47 W. Division, Chicago, Il. | Construction Cost Of 3 Units | $450,000 | | $450,000 | | $0 |
| CSI | 47 W. Division, Chicago, Il. | Infrastructure | $1,221,000 | | $335,000 | | $616,130 |
| National Construction | 303 S. Washington, Lagrange, Il | Structural | $1,030,070 | | $620,000 | $177,290.00 | $232,780 |
| ...y's Construction Inc. | 1066 West Third Ave., Shakopee, Mn. | Steel | $2,680,000 | | $265,000 | $193,354.00 | $2,222,646 |
| ...on Concrete | P.O. Box 7070, Deerfield, Il. | Concrete | $125,000 | | $57,000 | $46,720.00 | $11,280 |
| Spectrum Stone | 333 W. Washington, Lagrange, Il | Exterior Masonry Cleaning | $760,000 | | $760,000 | | $0 |
| Spectrum Stone | 333 W. Washington, Lagrange, Il | Masonry Repair/Replacement | $523,000 | | $423,000 | | $100,000 |
| Spectrum Stone | 47 W. Division, Chicago, Il. | Masonry Repair/Replacement | $427,000 | | $78,000 | | $349,000 |
| Spectrum Stone | 333 W. Washington, Lagrange, Il. | Exterior Stone Restoration | $575,000 | | $266,982 | | $288,016 |
| Spectrum Stone | 333 W. Washington, Lagrange, Il. | Scaffolding For Madison/Michigan | $275,000 | | $275,000 | | $0 |
| CSI | 47 W. Division, Chicago, Il. | Window Replacement | $1,265,780 | | $226,335 | $117,980.00 | $921,465 |
| CSI | 47 W. Division, Chicago, Il. | Basement and Parking Structure | $1,544,655 | | $402,000 | $296,325.00 | $846,330 |
| CSI | 47 W. Division, Chicago, Il. | Retail Space (7,700 sq. ft.) | $340,000 | | $0 | | $340,000 |
| CSI | 47 W. Division, Chicago, Il. | Lobby | $125,000 | | $0 | | $125,000 |

Exhibit
13

| | | Party/Exercise | | | |
|---|---|---|---|---|---|
| CSI | 47 W. Division, Chicago, Il | Party/Exercise Room | $115,000 | $0 | $115,000 |
| Otis Elevator | 651 W. Washington, Chicago, Il | Building Elevators | $735,000 | $0 $ 210,217.00 | $524,783 |
| Parco, Inc. | 4405 West Lawrence, Chicago, Il | Interior Demolition | $1,776,000 | $1,776,000 | $0 |
| US Fire Protection | 28427 N. Ballard, Unit H, Lake Forest, Il | Sprinkler System | $720,000 | $0 $ 28,350.00 | $691,650 |
| CSI | 47 W. Division, Chicago, Il | Construction Contingency | $999,021 | $107,750 $ 116,450.00 | $771,821 |
| Parco, Inc. | 47 W. Division, Chicago, Il | Asbestos Abatement Basement | $2,190,000 | $2,190,000 | $0 |
| Parco, Inc. | 47 W. Division, Chicago, Il | Asbestos Abatement Floors 1-20 | | $0 | $0 |
| CMEC (MDI) | 145 S. Wacker, Chicago, Il | Construction Manager Fee | $1,088,324 | $327,250 $ 179,177.76 | $581,896 |
| CSI | 47 W. Division, Chicago, Il | General Conditions | $1,400,000 | $564,010 $ 202,325.00 | $633,665 |
| CSI | 47 W. Division, Chicago, Il | Project Manager Fee | $551,562 | $279,400 $ 67,350.00 | $204,812 |
| | | | | $0 | $0 |
| | | | | $0 | $0 |
| | | | | $0 | $0 |
| | | | $29,345,608 | $10,076,727 $ 2,470,390.76 | $16,798,390 |

Subscribed and sworn to before me this _____ day of _____

Notary

CONSTRUCTION SERVICES INTERNATIONAL

12/18/01

Date

# 6 NORTH MICHIGAN

ate Of Illinois County Of Cook:

HE AFFIANT, being first duly sworn, on oath deposes and says that is of CSI, Inc. that has a contract with Global Real Estate Investors, wner for, the following described premises in said County, to wit: 6 North Michigan, Chicago, Illinois.

hat for the purposes of this contract, the following persons have been contracted with, and have furnished, the amounts set opposite their names for materials or labor as stated. That this statement is a full, true and complete statement of all such persons, the amounts paid and the amounts due or to become due to each.

## Sworn Statement For Contractor and Subcontractor to Owner

| Contractor | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amount Of This Payment Draw 5 | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| CSI | 47 W. Division, Chicago, Il. | Construction Cost Of 104 Units | $2,780,096 | | | | $2,780,096 |
| CSI | 47 W. Division, Chicago, Il. | Electrical/Units | $825,000 | | $260,260 | $ 79,800.00 | $484,940 |
| CSI | 47 W. Division, Chicago, Il. | Plumbing/Units | $944,000 | | $226,810 | $ 89,000.00 | $628,190 |
| CSI | 47 W. Division, Chicago, Il. | Mechanical/Units | $1,025,000 | | $222,232 | | $802,768 |
| CSI | 47 W. Division, Chicago, Il. | Flooring/Units | $148,000 | | $62,230 | | $85,770 |
| Jupiter Electric | 582 Territorial Drive, Bolingbrook, Il | Electrical/Service | $2,690,000 | | $396,450 | $ 372,625.00 | $1,920,925 |
| CSI | 47 W. Division, Chicago, Il. | Constuction Cost Of 3 Units | $450,000 | | $450,000 | | $0 |
| CSI | 47 W. Division, Chicago, Il. | Infrastructure | $1,221,000 | | $604,870 | | $616,130 |
| CMS | 3836 S. Western, Chicago, Il | Excavation | $345,000 | | | $ 195,000.00 | $150,000 |
| Professional Associates | 7100 N. Tripp, Lincolnwood, Il | Surveyor | $35,000 | | | $ 14,800.00 | $20,200 |
| HOIST | 820 N. Wolcott, Chicago, Il. | Elevator Hoist | $185,762 | | | $ 104,560.00 | $81,202 |
| Phoenix Mechanical | 702 N. Desplaines, Plainfield | Mechanical Units | $10,450 | | | $ 5,466.98 | $4,983 |
| National Construction | 303 S. Washington, Lagrange, Il | Structural | $1,154,928 | | $797,290 | $ 98,094.13 | $259,543 |
| Danny's Construction Inc. | 1066 West Third Ave., Shakopee, Mn. | Steel | $2,680,000 | | $457,354 | $ 58,400.00 | $2,164,246 |
| non Concrete | P.O. Box 7070, Deerfield, Il | Concrete | $125,000 | | $113,720 | | $11,280 |
| ectrum Stone | 333 W. Washington, Lagrange, Il. | Exterior Masonry Cleaning | $780,000 | | $700,000 | | $80,000 |
| ectrum Stone | 333 W. Washington, Lagrange, Il | Masonry Repair/Replacement | $523,000 | | $423,000 | | $100,000 |
| ectrum Stone | 47 W. Division, Chicago, Il. | Masonry Repair/Replacement  b. | $427,000 | | $70,000 | $ 72,345.00 | $276,655 |
| ectrum Stone | 333 W. Washington, Lagrange, Il | Exterior Stone Restoration | $575,900 | | $288,982 | $ 32,356.00 | $253,560 |
| for Mareyski Construction | 111 W. Webster Ave. | Terra Cotta Removal | $20,000 | | $0 | $ 16,200.00 | $3,800 |
| ectrum Stone | 333 W. Washington, Lagrange, Il. | Scaffolding For Madison/Michigan | $275,000 | | $275,000 | $0 | $0 |

Exhibit 14

Mar. 27. 2002 10:23AM

| Vendor | Address | Description | | | | |
|---|---|---|---|---|---|---|
| CSI | 47 W. Division, Chicago, Il. | Window Replacement | $1,285,780 | $344,315 | | $921,465 |
| CSI | 47 W. Division, Chicago, Il. | Basement and Parking Structure | $1,544,655 | $698,325 | | $846,330 |
| CSI | 47 W. Division, Chicago, Il. | Retail Space (7,700 sq. ft.) | $340,000 | $0 | | $340,000 |
| CSI | 47 W. Division, Chicago, Il. | Lobby | $125,000 | $0 | | $125,000 |
| CSI | 47 W. Division, Chicago, Il. | Party/Exercise Room | $115,000 | $0 | | $115,000 |
| s Elevator | 651 W. Washington, Chicago, Il | Building Elevators | $735,000 | $210,217 | $65,780.00 | $459,003 |
| rco, Inc. | 4405 West Lawerence, Chicago, Il. | Interior Demolition | $1,776,000 | $1,776,000 | | $0 |
| Fire Protection | 28427 N. Ballard, Unit H, Lake Forest, Il | Sprinkler System | $720,000 | $28,350 | | $691,650 |
| CSI | 47 W. Division, Chicago, Il. | Construction Contingency | $996,021 | $224,200 | $67,000.00 | $704,021 |
| Parco, Inc. | 47 W. Division, Chicago, Il. | Asbestos Abatement Basement | $2,190,000 | $2,190,000 | | $0 |
| | | Asbestos Abatement Floors 1-20 | | | | |
| 2C (MDI) | 145 S. Wacker, Chicago, Il. | Construction Manager Fee | $1,088,324 | $508,428 | $213,792.00 | $368,104 |
| CSI | 47 W. Division, Chicago, Il. | General Conditions | $1,400,000 | $766,335 | $58,450.00 | $575,215 |
| CSI | 47 W. Division, Chicago, Il. | Project Manager Fee | $750,000 | $346,750 | $88,000.00 | $315,250 |
| | | | | $0 | | $0 |
| | | | | $0 | | $0 |
| | | | | $0 | | $0 |
| | | | | $0 | | $0 |
| | | | $30,265,015 | $12,547,118 | 1,632,469.11 | $16,085,428 |

CONSTRUCTION SERVICES INTERNATIONAL

Subscribed and sworn to before me this _____ day of _____

Notary

_____ 3/25/0_
Date

P. 2/5

No. 5015

# 6 NORTH MICHIGAN

State Of Illinois County Of Cook:

THE AFFIANT, being first duly sworn, on oath deposes and says that is of CSI, Inc. that has a contract with Global Real Estate Investors, owner for, the following described premises in said County, to wit: 6 North Michigan, Chicago, Illinois.

That for the purposes of this contract, the amounts set opposite their names for materials or labor as stated. the amounts set opposite their names for materials or labor as stated. That this statement is a full, true and complete statement of all such persons, the amounts paid and the amounts due or to become due to each.

## Sworn Statement For Contractor and Subcontractor to Owner

| Contractor | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amount Of This Payment Draw 7 | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| CSI | 47 W. Division, Chicago, Il. | Construction Cost Of 104 Units | $2,580,580 | | | | $2,580,580 |
| CSI | 47 W. Division, Chicago, Il. | Electrical/Units | $825,000 | | $380,080 | 127,000.00 | |
| CSI | 47 W. Division, Chicago, Il. | Plumbing/Units | $344,000 | | $315,040 | | $337,940 |
| CSI | 47 W. Division, Chicago, Il. | Mechanical/Units | $475,000 | | $272,232 | 39,450.00 | $598,740 |
| CSI | 47 W. Division, Chicago, Il. | Framing/Units | $148,000 | | $82,239 | 22,020.00 | $230,768 |
| Jupiter Electric | 582 Territorial Drive, Bolingbrook, Il | Electrical/Service | $2,690,000 | | $788,125 | | $65,770 |
| CSI | 47 W. Division, Chicago, Il. | Construction Cost Of 3 Units | $450,000 | | $450,000 | | $1,900,875 |
| JMSBUILDERS | 3658 S. Western, Chicago, Il. | Infrastructure | $1,121,000 | | $604,870 | 89,000.00 | $427,130 |
| Professional Associates | 7100 N. Tripp, Lincolnwood, Il | Excavation | $585,000 | | $195,000 | 109,561.00 | $80 |
| USA HOIST | 620 N. Wolcott, Chicago, Il. | Surveyor | $35,000 | | $14,800 | | $290,439 |
| Interstate Scaffolding | 17315 Ashland Ave., Flazel Cest, Il. | Elevator Hoist | $185,762 | | $104,560 | | $431,200 |
| Mechanical | 2080 N. Desplaines, Plainfield | Scaffolding | $130,000 | | | 64,000.00 | $81,202 |
| Novaleoat Mechanical | 700 N. Desplaines, Plainfield | Mechanical Units | $40,450 | | $0 | 30,713.90 | $565,000 |
| Broadband Services | 307 N. Michigan | HVAC | $2,525,000 | | $5,467 | | |
| Chicago Construction Services | 303 S. Carbroy, Mt. Prospect | Low Voltage | $40 | | $0 | | $4,293 |
| city's Construction Inc. | 411 N. Second Avenue | Structural | $350,000 | | $0 | 63,934.00 | $2,459,066 |
| non Concrete | 1096 West Third Ave., Shakopee, Mn | Structural Demolition | $974,928 | | $981,841 | 35,000.00 | $315,005 |
| eenum Stone | P.O. Box 7070, Deerfield, Il. | Steel | $180,000 | | $0 | 170,000.00 | $25,065 |
| Spectrum Stone | 333 W. Washington, LaGrange, Il. | Concrete | $2,680,000 | | $0 | | $10,000 |
| Pertum Stone | 47 W. Division, LaGrange, Il. | Exterior Masonry Cleaning | $125,000 | | $515,754 | | $2,164,245 |
| Pertum Stone | 47 W. Division, Chicago, Il. | Masonry Repair/Replacement | $780,000 | | $61,636 | | $75,364 |
| | 333 W. Washington, LaGrange, Il. | Masonry Repair/Replacement | $525,000 | | $780,000 | | $0 |
| ter Manevski Construction | 47 W. Washington, LaGrange, Il | Exterior Stone Restoration | $427,000 | | $423,000 | | $100,000 |
| Manevski Construction | 47 W. Division, Chicago, Il | Exterior Stone Restoration | $290,982 | | $150,345 | | $276,654 |
| | 1111 W. Webster Ave | Terra Cotta Removal | $16,200 | | $268,962 | | $2,000 |
| | | | | | $32,355 | | $251,863 |
| | | | | | $16,200 | | $0 |

Exhibit 15

| | Address | Description | | | | |
|---|---|---|---|---|---|---|
| ISP | 333 W Washington, Lagrange, Il. | Scaffolding For Madison/Michigan | $275,000 | $275,000 | $ | $0 |
| | 8820 Ferris Ave, Chicago, Il | Structural Columns | $51,700 | $0 | | $0 |
| CSI | 47 W. Division, Chicago, Il. | Window Replacement | $1,665,780 | $321,478.00 | 61,700.00 | $999,990 |
| | 47 W. Division, Chicago, Il. | Basement and Parking Structure | $1,544,655 | $344,315 | 321,478.00 | $891,660 |
| CSI | 47 W. Division, Chicago, Il | Retail Space (7,700 sq. ft.) | $240,000 | $596,325 | 154,1650.00 | $240,000 |
| | 47 W. Division, Chicago, Il | Lobby | $125,000 | $0 | | $125,000 |
| | 47 W. Division, Chicago, Il | Party/Exercise Room | $115,000 | $0 | | $115,000 |
| Cos Elevator | 655 W Washington, Chicago, Il | Building Elevators | $735,000 | $273,663 | | $461,337 |
| Parco, Inc. | 4405 West Lawrence, Chicago, Il. | Interior Demolition | $1,776,000 | $1,776,000 | $0 | $0 |
| US Fire Protection | 28427 N. Ballard, Unit H, Lake Forest, Il. | Sprinkler System | $720,000 | $35,277 | | $684,723 |
| CSI | 47 W. Division, Chicago, Il | Construction Contingency | $796,110 | $262,000.00 | 63,250.00 | $420,860 |
| | 47 W. Division, Chicago, Il | Asbestos Abatement Basement | $2,180,000 | $2,180,000 | | $0 |
| | 47 W. Division, Chicago, Il | Asbestos Abatement Floors 1-20 | | | | $0 |
| AMEC NDI | 145 S. Wacker, Chicago, Il. | Construction Manager Fee | $1,088,524 | $720,220 | | $386,104 |
| CSI | 47 W. Division, Chicago, Il | General Conditions | $1,140,000 | $624,765 | 32,500.00 | $282,713 |
| CSI | 47 W. Division, Chicago, Il | Project Manager Fee | $753,800 | $434,750 | 48,000.00 | $271,050 |
| | | | | | | $0 |
| | | | | | | $0 |
| | | | | | | $0 |
| | | | | | | $0 |
| | | | $32,572,208 | $14,211,803 | 1,464,233.90 | $16,896,372 |

Subscribed and sworn to before me this _____ day of _____

Notary

CONSTRUCTION SERVICES INTERNATIONAL

5/1/02

Date

Jun. 29, 2002 9:09AM

# 6 NORTH MICHIGAN

## Sworn Statement For Contractor and Subcontractor to Owner

ate Of Illinois County Of Cook:

HE AFFIANT, being first duly sworn, on oath deposes and says that is of CSI, Inc. that has a contract with Global Real Estate Investors, vner for, the following described premises in said County, to wit: 6 North Michigan, Chicago, Illinois.

at for the purposes of this contract, the following persons have been contracted with, and have furnished, te amounts set opposite their names for materials or labor as stated. That this statement is a full, true and complete statement of all such persons, the amounts paid and the amounts due or to become due to each.

| Contractor | Address | Kind of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amnt Of This Payment Draw 8 | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| CSI | 47 W. Division, Chicago, Il | Construction Cost Of 104 Units | $1,580,500 | | $487,000 | 47,600.00 | $1,560,500 |
| CSI | 47 W. Divison, Chicago, Il | Electrical/Units | $326,000 | | $355,290 | 169,000.00 | $290,250 |
| CSI | 47 W. Division, Chicago, Il. | Plumbing/Units | $2,958,000 | | | | $2,411,740 |
| CSI | 47 W. Division, Chicago, Il | Mechanical/Units | $376,000 | | $254,232 | | $120,786 |
| CSI | 47 W. Division, Chicago, Il | Flooring/Units | $148,000 | | $62,230 | | $85,770 |
| Lupfer Electic | 582 Territorial Drive, Bolingbrook, Il | Electrical Service | $2,690,000 | | $789,125 | 45,990.00 | $1,854,885 |
| CSI | 47 W. Division, Chicago, Il | Construction Cost Of 3 Units | $450,000 | | $450,000 | | $0 |
| CSI | 47 W. Division, Chicago, Il | Infrastructure | $1,121,000 | | $693,870 | 192,000.00 | $295,120 |
| CSI | 47 W. Division, Chicago, Il. | Excavation | $319,831 | | $310,000 | | $9,833 |
| M/S/BUILDERS | 3836 S. Western, Chicago, Il. | Excavation/Backfilling | $246,167 | | | | $245,167 |
| Professional Associates | 7100 N. Tripp, Lincolnwood, Il | Surveyor | $35,000 | | $14,800 | | $20,200 |
| USA Hoist | 820 N. Wolcott, Chicago, Il. | Elevator Hoist | $185,762 | | $104,560 | | $81,202 |
| CSI | 47 W. Division, Chicago, Il | Scaffolding | $130,000 | | $64,000 | | $68,000 |
| Phoenix Mechanical | 702 N. Desplaines, Plainfield | Mechanical Units | $40,450 | | $36,181 | | $4,289 |
| Advanced Mechanical | 2080 S. Canby, Mt. Prospect | HVAC | $2,525,000 | | $65,834 | 47,682.00 | $2,411,384 |
| Integrated Broadband Services | 307 N. Michigan | Low Voltage | $350,000 | | $35,000 | | $316,000 |
| National Construction | 303 S. Washington, LaGrange, Il | Structural | $974,928 | | $961,841 | | $13,087 |
| ton Construction Inc. | 1066 West Third Ave, Shakopee, Mn | Steel | $606,000 | | $515,754 | | $14,246 |
| ny'e Construction Inc. | P.O. Box 7070, Deerfield, Il | Miscellaneous Concrete | $125,000 | | $51,636 | | $13,364 |
| ton Concrete | 47 W. Division, Chicago, Il | Structural Concrete | $2,945,000 | | $0 | 325,000.00 | $2,620,000 |
| | 47 W. Division, Chicago, Il | Miscellaneous Iron | $575,000 | | $0 | 78,500.00 | $496,500 |
| | 47 W. Division, Chicago, Il | Structural Steel | $2,950,000 | | $0 | 265,800.00 | $2,684,200 |
| | 47 W. Division, Chicago, Il. | Interior Masonry | $754,000 | | $0 | 215,000.00 | $539,000 |
| than Stone | 333 W. Washington, LaGrange, Il | Exterior Masonry Cleaning | $780,000 | | $780,000 | | $0 |
| than Stone | 333 W. Washington, LaGrange, Il | Masonry Repair/Replacement | $523,000 | | $425,000 | | $100,000 |

Exhibit 16

Sworn Statement For Contractor and Subcontractor To Owner
June, 2002
Page: 2

| Company | Address | Description | | | | | |
|---|---|---|---|---|---|---|---|
| churn Stone | 47 W. Division, Chicago, Il | Masonry Repair/Replacement | $427,000 | $150,345 | | | $276,665 |
| | 333 W. Washington, Lagrange, Il | Exterior Stone Restoration | $290,982 | $289,982 | | | $2,000 |
| churn Stone | 47 W. Division, Chicago, Il | Exterior Stone Restoration | $284,016 | $32,356 | | | $251,662 |
| ar Maleyski Construction | 47 W. Division, Chicago, Il | Dry Wall Carpentry | $3,890,000 | $0 | $ | 108,000.00 | $3,780,000 |
| | 111 W. Webster Ave. | Terra Cotta Removal | $16,200 | $16,200 | | | $0 |
| | 333 W. Washington, Lagrange, Il | Scaffolding For Madison/Michigan | $275,000 | $275,000 | | | $0 |
| Bldg | 8620 Ferris Ave, Chicago, Il | Structural Columns | $61,700 | $61,700 | | | $0 |
| | 47 W. Division, Chicago, Il | Window Replacement | $1,865,000 | $865,975 | $ | 676,000.00 | $524,025 |
| er Elevator | 47 W. Division, Chicago, Il | Basement and Parking Structure | $1,544,665 | $852,975 | $ | 234,000.00 | $457,680 |
| | 47 W. Division, Chicago, Il | Retail Space (2,700 sq. ft ) | $240,000 | $0 | | | $240,000 |
| | 47 W. Division, Chicago, Il | Lobby | $125,000 | $0 | | | $125,000 |
| | 47 W. Division, Chicago, Il | Pony/Exercise Room | $115,000 | $0 | | | $115,000 |
| Erco, Inc. | 651 W. Washington, Chicago, Il | Building Elevators | $735,000 | $273,663 | | | $461,337 |
| Fire Protection | 4405 West Lawrence, Chicago, Il | Interior Demolition | $1,776,000 | $1,776,000 | | | $0 |
| | 28427 N. Ballard, Unit H, Lake Forest, Il | Sprinkler System | $720,000 | $38,277 | $ | 36,810.00 | $644,913 |
| co, Inc. | 47 W. Division, Chicago, Il | Construction Contingency | $796,110 | $375,250 | $ | 67,340.00 | $353,520 |
| | 47 W. Division, Chicago, Il | Asbestos Abatement Basement | $2,190,000 | $2,190,000 | | | $0 |
| MEC (MDI) | | Asbestos Abatement Floors 1-20 | | | | | |
| | 146 S. Wacker, Chicago, Il | Construction Manager Fee | $1,058,324 | $720,220 | | | $368,104 |
| | 47 W. Division, Chicago, Il | General Conditions | $1,140,000 | $857,285 | $ | 43,150.00 | $239,565 |
| | 47 W. Division, Chicago, Il | Project Manager Fee | $753,800 | $482,750 | $ | 62,460.00 | $208,590 |
| | | | | | | | $0 |
| | | | | | | | $0 |
| | | | $42,527,429 | $15,511,461 | $ | 2,595,422.00 | $24,450,546 |

CONSTRUCTION SERVICES INTERNATIONAL

6/25/02
Dad

Subscribed and sworn to before me this _____ day of _____

Notary

# 6 NORTH MICHIGAN

State Of Illinois County Of Cook:

THE AFFIANT, being first duly sworn, on oath deposes and says that is of CSI, Inc. that has a contract with Global Real Estate Investors, Owner for, the following described premises in said County, to wit: 6 North Michigan, Chicago, Illinois.

That for the purposes of this contract, the following persons have been contracted with, and have furnished, the amounts set opposite their names for materials or labor as stated. That this statement is a full, true and complete statement of all such persons, the amounts paid and the amounts due or to become due to each.

## Sworn Statement For Contractor and Subcontractor to Owner

| Contractor | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amount Of This Payment Draw 7 | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| CSI | 47 W. Division, Chicago, Il. | Construction Cost Of 104 Units | $1,580,500 | | | | $1,580,500 |
| CSI | 47 W. Division, Chicago, Il. | Electrical/Units | $825,000 | | $534,690 | | $290,310 |
| CSI | 47 W. Division, Chicago, Il | Plumbing/Units | $2,955,000 | | $544,260 $ | 192,000.00 | $2,218,740 |
| CSI | 47 W. Division, Chicago, Il | Mechanical/Units | $375,000 | | $254,232 | | $120,768 |
| CSI | 47 W. Division, Chicago, Il. | Flooring/Units | $148,000 | | $62,290 | | $85,770 |
| Jupiter Electric | 582 Territorial Drive, Bolingbrook, Il | Electrical/Service | $2,890,000 | | $835,115 | | $1,854,885 |
| CSI | 47 W. Division, Chicago, Il. | Construction Cost Of 3 Units | $450,000 | | $450,000 | | $0 |
| CSI | 47 W. Division, Chicago, Il. | Infrastructure | $1,121,000 | | $995,870 $ | 78,500.00 | $46,630 |
| CSI | 3568 S. Western, Chicago, Il | Excavation | $319,693 | | $310,000 | | $9,693 |
| JMSBUILDERS | 47 W. Division, Chicago, Il. | Excavation/Backfilling | $245,187 | | $0 $ | 148,000.00 | $97,187 |
| Professional Associates | 7100 N. Tripp, Lincolnwood, Il | Surveyor | $35,000 | | $14,800 | | $20,200 |
| JSA HOIST | 820 N. Wolcot, Chicago, Il. | Elevator Hoist | $185,782 | | $104,560 | | $81,202 |
| CSI | 47 W. Division, Chicago, Il. | Scaffolding | $190,000 | | $84,000 $ | 21,375.00 | $44,625 |
| Phoenix Mechanical | 702 N. Desplaines, Plainfield | Mechanical Units | $40,440 | | $36,151 | | $4,289 |
| Advanced Mechanical | 2090 S. Carboy, Mt. Prospect | HVAC | $2,525,000 | | $113,616 | | $2,411,384 |
| Integrated Broadband Services | 307 N. Michigan | Low Voltage | $350,000 | | $35,000 | | $315,000 |
| National Construction | 303 S. Washington, Lagrange, Il | Structural | $974,428 | | $961,341 | | $13,087 |
| Denny's Construction Inc. | 1066 West Third Ave., Shakopee, Mn. | Steel | $600,000 | | $515,754 | | $84,246 |
| Zenon Concrete | P.O. Box 7070, Deerfield Il. | Miscellaneous Concrete | $125,000 | | $51,636 | | $73,364 |
| Zenon Concrete | 47 W. Division, Chicago, Il | Structural Concrete | $2,945,000 | | $326,000 $ | 365,000.00 | $2,254,000 |
| CSI | 47 W. Division, Chicago, Il | Miscellaneous Iron | $575,000 | | $78,500 $ | 99,050.00 | $397,450 |
| CSI | 47 W. Division, Chicago, Il | Structural Steel | $2,950,000 | | $265,800 $ | 428,000.00 | $2,256,200 |
| CSI | 47 W. Division, Chicago, Il | Interior Masonry | $754,000 | | $215,000 | | $539,000 |
| Spectrum Stone | 833 W. Washington, Lagrange, Il | Exterior Masonry Cleaning | $780,000 | | $780,000 | | $0 |

Exhibit
17

Sworn Statement For Contractor and Subcontractor To Owner
August, 2002
Page: 2

| Contractor | Address | Description | Amount | Amount | | Amount |
|---|---|---|---|---|---|---|
| pectrum Stone | 333 W. Washington, Lagrange, Il | Masonry Repair/Replacement | $623,000 | $423,000 | | $100,000 |
| :Sl | 47 W. Division, Chicago, Il | Masonry Repair/Replacement | $427,000 | $150,345 | $ 82,400.00 | $194,255 |
| pectrum Stone | 333 W. Washington, Lagrange, Il. | Exterior Stone Restoration | $290,862 | $288,862 | | $2,000 |
| :Sl | 47 W. Division, Chicago, Il | Exterior Stone Restoration | $284,016 | $32,356 | | $251,662 |
| :Sl | 47 W. Division, Chicago, Il | Dry Wall / Carpentry | $3,060,000 | $100,000 | | $3,760,000 |
| eter Maneski Construction | 111 W. Webster Ave. | Terra Cotta Removal | $16,200 | $16,200 | | $0 |
| pectrum Stone | 333 W. Washington, Lagrange, Il. | Scaffolding For Madison/Michigan | $275,000 | $275,000 | | $0 |
| tehig | 8820 Ferris Ave, Chicago, Il. | Structural Columns | $61,700 | $61,700 | | $0 |
| :Sl | 47 W. Division, Chicago, Il | Window Replacement | $1,865,000 | $1,940,760 | 175,000.00 | $348,210 |
| :Sl | 47 W. Division, Chicago, Il. | Basement and Parking Structure | $1,544,655 | $1,090,875 | 109,566.00 | $348,114 |
| :Sl | 47 W. Division, Chicago, Il | Retail Space (7,700 sq. ft.) | $240,000 | $0 | | $240,000 |
| :Sl | 47 W. Division, Chicago, Il. | Lobby | $125,000 | $0 | | $125,000 |
| :Sl | 47 W. Division, Chicago, Il | Party/Exercise Room | $115,000 | $0 | | $115,000 |
| :Sl | 47 W. Division, Chicago, Il | Building Elevations | $733,000 | $273,669 | | $461,337 |
| ilis Elevator | 651 W. Washington, Chicago, Il | Interior Demolition | $1,776,000 | $1,776,000 | | $0 |
| Parco, Inc. | 4405 West Lawrence, Chicago, Il | Sprinkler System | $720,000 | $375,087 | | $844,813 |
| IS Fire Protection | 2627 N. Ballard, Unit H, Lake Forest, Il | Construction Contingency | $786,110 | $450,337 | | $345,773 |
| :Sl | 47 W. Division, Chicago, Il | Asbestos Abatement Basement | $2,190,000 | $2,190,000 | | $0 |
| :Sl | 47 W. Division, Chicago, Il | Asbestos Abatement Floors 1-20 | | | | |
| Parco, Inc. | 145 S. Wacker, Chicago, Il. | Construction Manager Fee | $1,088,824 | $720,220 | | $368,104 |
| WEC (MDI) | 47 W. Division, Chicago, Il | General Conditions | $1,140,000 | $900,435 $ | 31,500.00 | $208,065 |
| :Sn | 47 W. Division, Chicago, Il | Project Manager Fee | $753,800 | $545,210 $ | 46,000.00 | $162,590 |
| | | | | | | $0 |
| | | | | | | $0 |
| | | | | | | $0 |
| | | | | | | $0 |
| | | | | | | $0 |
| | | | $42,527,429 | $19,334,383 $ | 1,773,291.00 | $22,487,783 |

CONSTRUCTION SERVICES INTERNATIONAL

_____    Date

Subscribed and sworn to before me this

_____ day of _____

Notary

# 6 NORTH MICHIGAN

For Illinois County Of Cook:

AFFIANT, being first duly sworn, on an oath deposes and says that is of CSI, Inc. that has a contract with Global Real Estate Investors, er 89, the following described premises in said County, to wit: 6 North Michigan, Chicago, Illinois.
for the purposes of this contract, the following persons have been contracted with, and have furnished,
amounts set opposite their names for materials or labor as stated. That this statement is a full, true and
ple statement of all such persons, the amounts paid and the amounts due or to become due to each.

## Statement For Contractor and Subcontractor to Owner

| | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amount Of This Payment Draw 7 | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| ration | 47 W. Division, Chicago, Il | Construction Cost Of 104 Units | $1,580,500 | | | | $1,580,500 |
| | 47 W. Division, Chicago, Il | Electrical/Units | $325,000 | | $534,750 | | $290,250 |
| | 47 W. Division, Chicago, Il | Plumbing/Units | $2,956,000 | | $730,260 | 203,280.00 | $2,016,460 |
| | 47 W. Division, Chicago, Il | Mechanical/Units | $375,000 | | $254,232 | | $120,768 |
| | 47 W. Division, Chicago, Il | Flooring/Units | $148,000 | | $62,230 | | $85,770 |
| Electric | 47 W. Division, Chicago, Il | Electrical/Service | $2,680,000 | | $825,115 | | $1,854,885 |
| | 593 Territorial Drive, Bolingbrow, Il | Construction Cost Of 3 Units | $450,000 | | $450,000 | | $0 |
| | 47 W. Division, Chicago, Il | Infrastructure | $1,121,000 | | $1,072,370 | | $48,630 |
| BUILDERS | 47 W. Division, Chicago, Il | Excavation | $310,000 | | $310,000 | | $0 |
| | 3636 S. Western, Chicago, Il | Excavation/Backfilling | $255,000 | | $148,000 | 107,000.00 | $0 |
| | 47 W. Division, Chicago, Il | Surveyor | $35,000 | | $14,800 | 8,000.00 | $20,200 |
| gal Associates | 7100 N. Tripp, Lincolnwood, Il | Elevator Hoist | $104,762 | | $104,580 | | $73,202 |
| DIST | 820 N. Wolcott, Chicago, Il | Scaffolding | $130,000 | | $85,375 | | $44,625 |
| | 702 N. Desplaines, Plainfield | Mechanical Units | $40,450 | | $36,161 | | $4,289 |
| Mechanical | 2000 S. Carboy, Mt. Prospect | HVAC | $2,525,000 | | $113,616 | | $2,411,384 |
| | 307 N. Michigan | Low Voltage | $350,000 | | $35,000 | | $315,000 |
| Broadband Services | 303 S. Washington, Lagrange, Il | Structural | $974,926 | | $891,841 | | $13,087 |
| | 1066 West Third Ave., Shakopee, Mn. | Structural | $600,000 | | $515,754 | | $84,246 |
| Construction Inc | P.O. Box 7070, Deerfield, Il | Steel | $125,000 | | $51,636 | | $73,364 |
| Concrete | 47 W. Division, Chicago, Il | Miscellaneous Concrete | $2,945,000 | | $691,000 | 1,235,000.00 | $1,018,000 |
| | 47 W. Division, Chicago, Il | Structural Concrete | $575,000 | | $177,450 | 115,650.00 | $281,900 |
| | 47 W. Division, Chicago, Il | Miscellaneous Iron | $2,050,000 | | $693,800 | | $2,256,200 |
| | 47 W. Division, Chicago, Il | Structural Steel | $754,000 | | $215,000 | 194,350.00 | $344,650 |
| | 47 W. Division, Chicago, Il | Interior Masonry | $780,000 | | $780,000 | | $0 |
| State | 333 W. Washington, Lagrange, Il | Exterior Masonry Cleaning | $780,000 | | | | $0 |
| n Phone | 333 W. Washington, Lagrange, Il | Masonry Repair/Replacement | $523,000 | | $423,000 | | $100,000 |

Exhibit
18

| | Address | Description | | | | |
|---|---|---|---|---|---|---|
| | 47 W. Division, Chicago, Il | Masonry Repair/Replacement | $427,000 | $232,745 | | $104,255 |
| ectrum Store | 333 W. Washington, Lagrange, Il | Exterior Stone Restoration | $290,642 | $268,962 | | $2,000 |
| | 47 W. Division, Chicago, Il | Exterior Stone Restoration | $284,016 | $32,358 | | $251,662 |
| er Renewal Construction | 47 W. Division, Chicago, Il | Dry Wall / Carpentry | $3,880,000 | $100,000 | | $3,780,000 |
| | 111 W. Webster Ave. | Terra Cotta Removal | $16,200 | $16,200 | | $0 |
| ection Store | 333 W. Washington, Lagrange, Il | Scaffolding For Madison/Michigan | $275,000 | $275,000 | | $0 |
| | 8620 Ferris Ave, Chicago, Il | Structural Columns | $61,700 | $61,700 | | $0 |
| | 47 W. Division, Chicago, Il | Window Replacement | $1,865,000 | $1,515,790 | | $349,210 |
| | 47 W. Division, Chicago, Il | Basement and Parking Structure | $1,544,655 | $1,196,541 $ | 64,000.00 | $284,114 |
| | 47 W. Division, Chicago, Il | Retail Space (7,700 sq. ft.) | $240,000 | $0 | | $240,000 |
| | 47 W. Division, Chicago, Il | Lobby | $125,000 | $0 | | $125,000 |
| | 47 W. Division, Chicago, Il | Party/Exercise Room | $115,000 | $0 | | $115,000 |
| | 651 W. Washington, Chicago, Il | Building Elevators | $735,000 | $273,663 | | $461,337 |
| | 4405 West Lawrence, Chicago, Il | Interior Demolition | $1,776,000 | $1,776,000 | | $0 |
| File Protection | 28427 N Ballard, Unit H, Lake Forest, Il | Spinkler System | $720,000 | $75,087 | | $644,913 |
| | 47 W. Division, Chicago, Il | Construction Contingency | $790,110 | $462,590 $ | 47,660.00 | $325,920 |
| co. | 47 W. Division, Chicago, Il | Asbestos Abatement Basement | $2,190,000 | $2,190,000 | | $0 |
| | | Asbestos Abatement Floors 1-20 | | | | |
| EC.001) | 145 S. Wacker, Chicago, Il | Construction Manager Fee | $1,083,324 | $720,224 | | $363,104 |
| | 47 W. Division, Chicago, Il | General Conditions | $1,140,000 | $931,935 $ | 32,500.00 | $175,565 |
| | 47 W. Division, Chicago, Il | Project Manager Fee | $753,800 | $591,210 $ | 36,000.00 | $126,590 |
| | | | | | | $0 |
| | | | | | | $0 |
| | | | | | | $0 |
| | | | | | | $0 |
| | | | | | | $0 |
| | | | $42,527,428 | $20,021,989 $ | 2,043,330.00 | $20,462,110 |

CONSTRUCTION SERVICES INTERNATIONAL

Date 9/30/02

Subscribed and sworn to before me this _____ day of _____ Notary

# 6 NORTH MICHIGAN

the Illinois County Of Cook.

AFFIANT, being first duly sworn, on oath deposes and says that is of CSI, Inc. that has a contract with Global Real Estate Investors, therefor, the following described premises in said County, to wit: 6 North Michigan, Chicago, Illinois.

t for the purposes of this contract, the following persons have been contracted with, and have furnished, amounts set opposite their names for materials or labor as stated. That this statement is a full, true and plete statement of all such persons, the amounts paid and the amounts due or to become due to each.

## NO., Statement For Contractor and Subcontractor to Owner

| Contractor | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amount Of This Payment Draw 7 | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| | 47 W. Division, Chicago, Il | Construction Cost Of 104 Units | $1,580,506 | | | | $1,580,506 |
| | 47 W. Division, Chicago, Il | Electrical/Units | $625,000 | | $334,750 | | $290,250 |
| | 47 W. Division, Chicago, Il | Plumbing/Units | $2,056,000 | | $939,540 | | $2,016,460 |
| | 47 W. Division, Chicago, Il | Mechanical/Units | $375,000 | | $254,232 | | $120,768 |
| | 47 W. Division, Chicago, Il | Flooring/Units | $148,000 | | $62,230 | | $85,770 |
| | 982 Territorial Drive, Bolingbrook, Il | Electrical/Service | $2,690,000 | | $835,115 | | $1,854,885 |
| | 47 W. Division, Chicago, Il | Constuction Cost Of 3 Units | $450,000 | | $450,000 | | $0 |
| | 47 W. Division, Chicago, Il | Infrastructure | $1,121,000 | | $1,072,370 | | $48,630 |
| | 3838 S. Western, Chicago, Il | Excavation | $310,000 | | $310,000 | | $0 |
| | 47 W. Division, Chicago, Il | Excavation/Backfilling | $255,000 | | $255,000 | | $0 |
| | 7100 N. Tripp, Lincolnwood, Il | Surveyor | $35,000 | | $14,800 | | $20,200 |
| | 820 N. Wolcott, Chicago, Il | Elevator Hoist | $185,762 | | $112,660 | | $73,202 |
| | 47 W. Division, Chicago, Il | Scaffolding | $630,000 | | $85,375 | 17,670.00 | $26,955 |
| | 702 N. Desplaines, Plainfield | Mechanical Units | $40,450 | | $36,181 | | $4,269 |
| | 2080 S. Canton, Mt. Prospect | HVAC | $2,526,000 | | $113,616 | | $2,411,384 |
| | 307 N. Michigan | Low Voltage | $350,000 | | $35,000 | | $315,000 |
| | 303 S. Washington, Lagrange, Il | Structural | $974,920 | | $961,841 | | $13,007 |
| | 1066 West Third Ave., Shakopee, Mn. | Steel | $608,000 | | $515,754 | | $94,246 |
| | P.O. Box 7070, Deerfield, Il | Miscellaneous Concrete | $1,026,000 | | $51,636 | | $73,364 |
| | 47 W. Division, Chicago, Il | Structural Concrete | $2,945,000 | | $1,926,020 $ | 358,450.00 | $630,550 |
| | 47 W. Division, Chicago, Il | Miscellaneous Iron | $575,000 | | $293,100 | | $201,900 |
| | 47 W. Division, Chicago, Il | Structural Steel | $2,950,000 | | $1,093,800 $ | 169,450.00 | $2,086,760 |
| | 47 W. Division, Chicago, Il | Interior Masonry | $754,000 | | $409,350 | | $344,650 |
| | 333 W. Washington, Lagrange, Il | Exterior Masonry Cleaning | $780,000 | | $780,000 | | $0 |
| | 333 W. Washington, Lagrange, Il | Masonry Repair/Replacement | $523,000 | | $423,000 | | $100,000 |

Exhibit 19

| | Address | Description | | | |
|---|---|---|---|---|---|
| Masonry | 47 W. Division, Chicago, Il. | Masonry Repair/Replacement | $427,000 | $232,745 | $194,265 |
| Iron Stone | 333 W. Washington, Lagrange, Il | Exterior Stone Restoration | $290,882 | $288,982 | $2,000 |
| Iron Stone | 47 W. Division, Chicago, Il | Exterior Stone Restoration | $284,018 | $32,356 | $251,662 |
| | 47 W. Division, Chicago, Il | Dry Wall / Carpentry | $3,880,000 | $100,000 | $3,780,000 |
| Madrzyk Construction | 111 W. Webster Ave. | Terra Cotta Removal | $16,200 | $16,200 | $0 |
| | 333 W. Washington, Lagrange, Il | Scaffolding For Madison/Michigan | $275,000 | $275,000 | $0 |
| Iron/Stone | 6520 Ferris Ave, Chicago, Il. | Structural Columns | $81,700 | $81,700 | $0 |
| | 47 W. Division, Chicago, Il. | Window Replacement | $1,865,000 | $1,515,790 | $349,210 |
| | 47 W. Division, Chicago, Il | Basement and Parking Structure | $1,544,685 | $1,260,541 | $284,144 |
| | 47 W. Division, Chicago, Il | Retail Space (7,700 sq. ft.) | $240,000 | $0 | $240,000 |
| | 47 W. Division, Chicago, Il | Lobby | $125,000 | $0 | $125,000 |
| | 47 W. Division, Chicago, Il | Party/Exercise Room | $115,000 | $0 | $115,000 |
| Elevator | 651 W. Washington, Chicago, Il | Building Elevators | $735,000 | $273,663 | $461,337 |
| | 4405 West Lawrence, Chicago, Il. | Interior Demolition | $1,776,000 | $1,776,000 | $0 |
| | 29427 N. Ballard, Unit H, Lake Forest, Il | Sprinkler System | $720,000 | $75,087 | $644,913 |
| | 47 W. Division, Chicago, Il. | Construction Contingency | $796,110 | $490,140 | $305,970 |
| | 47 W. Division, Chicago, Il. | Asbestos Abatement Basement | $2,190,000 | $2,190,000 | $0 |
| | | Asbestos Abatement Floors 1-20 | | | |
| | 145 S. Wacker, Chicago, Il | Construction Manager Fee | $1,088,324 | $720,220 | $368,104 |
| | 47 W. Division, Chicago, Il | General Conditions | $1,140,000 | $964,435 | $175,565 |
| | 47 W. Division, Chicago, Il | Project Manager Fee | $753,800 | $627,210 | $126,590 |
| | | | | | $0 |
| | | | | | $0 |
| | | | | | $0 |
| | | | | | $0 |
| | | | | | $0 |
| | | Totals | $42,527,429 | $22,065,319 | $19,886,840 |

$75,570.00 | $ 575,570.00

Subscribed and sworn to before me this _____ day of _____ Notary

CONSTRUCTION SERVICES INTERNATIONAL

Date 10/24/02

# 6 NORTH MICHIGAN

## Sworn Statement For Contractor and Subcontractor to Owner

State Of Illinois County Of Cook:

THE AFFIANT, being first duly sworn, on oath deposes and says that is of CSI, Inc. that has a contract with Global Real Estate Investors, Owner for, the following described premises in said County, to wit: 6 North Michigan, Chicago, Illinois.

That for the purposes of this contract, the following persons have been contracted with, and have furnished, the amounts set opposite their names for materials or labor as stated. That this statement is a full, true and complete statement of all such persons, the amounts paid and the amounts due or to become due to each.

| Contractor | Address | Kind Of Work | Contract Amount | Retention | Net Of Previous Payments | Net Amount Of This Payment Draw 10 | Balance To Become Due |
|---|---|---|---|---|---|---|---|
| CSI | 47 W. Division, Chicago, Il | Construction Cost Of Units | $2,516,270 | | $0 | | $2,516,270 |
| CSI | 47 W. Division, Chicago, Il | Electrical/Units | $575,000 | | $534,750 | | $40,250 |
| CSI | 47 W. Division, Chicago, Il | Plumbing/Units | $2,456,000 | | $939,540 | 385,000.00 | $1,151,460 |
| CSI | 47 W. Division, Chicago, Il | Mechanical/Units | $275,000 | | $254,232 | | $20,768 |
| CSI | 47 W. Division, Chicago, Il | Flooring/Units | $62,230 | | $62,230 | | $0 |
| Jupiter Electric | 582 Territorial Drive, Bolingbrook Il | Electrical/Service | $2,680,000 | | $935,115 | 110,478.00 | $1,744,407 |
| CSI | 47 W. Division, Chicago, Il | Construction Cost Of 3 Units | $450,000 | | $450,000 | | $0 |
| CSI | 47 W. Division, Chicago, Il | Infrastructure | $1,121,000 | | $1,072,370 | | $48,630 |
| JMS/BUILDERS | 3638 S. Western, Chicago, Il | Excavation | $310,000 | | $310,000 | | $0 |
| CSI | 47 W. Division, Chicago, Il | Excavation/Backfilling | $255,000 | | $255,000 | | $0 |
| CSI | 47 W. Division, Chicago, Il | Surveys | $20,000 | | $0 | | $20,000 |
| Professional Associates | 7100 N. Tripp, Lincolnwood, Il | Surveys | $15,000 | | $14,800 | | $200 |
| USA HOIST | 820 N. Wolcott, Chicago, Il | Elevator Hoist | $211,042 | | $145,478 | 16,000.00 | $49,564 |
| | 47 W. Division, Chicago, Il | Scaffolding | $130,000 | | $103,045 | 12,587.00 | $14,368 |
| Phoenix Mechanical | 702 N. Desplaines, Plainfield | Mechanical Units | $40,450 | | $36,181 | | $4,269 |
| Advanced Mechanical | 2080 S. Calvary, Mt. Prospect | HVAC | $2,525,000 | | $113,616 | 64,078.00 | $2,347,306 |
| Integrated Broadband Services | 907 N. Michigan | Low Voltage | $350,000 | | $35,000 | 38,500.00 | $276,500 |
| National Construction | 303 S. Washington, LaGrange, Il | Structural | $862,841 | | $861,841 | | $1,000 |
| Denny's Construction Inc. | 1066 West Third Ave., Shakopee, Mn. | Steel | $800,000 | | $915,754 | | $84,246 |
| Zemon Concrete | P.O. Box 7070, Deerfield, Il | Miscellaneous Concrete | $55,000 | | $51,636 | | $3,364 |
| Zemon Concrete | 47 W. Division, Chicago, Il | Structural Concrete | $3,015,000 | | $2,314,450 | 256,724.50 | $443,826 |
| CSI | 47 W. Division, Chicago, Il | Miscellaneous Iron | $575,000 | | $293,100 | | $281,900 |
| CSI | 47 W. Division, Chicago, Il | Structural Steel | $2,950,000 | | $663,250 | 650,650.00 | $1,436,300 |
| CSI | 47 W. Division, Chicago, Il | Interior Masonry | $754,000 | | $409,350 | 146,780.00 | $197,870 |

Exhibit 20

| Contractor | Address | Description | | | | |
|---|---|---|---|---|---|---|
| Spectrum Store | 333 W. Washington, LaGrange, Il | Exterior Masonry Cleaning | $780,000 | $780,000 | | $0 |
| Spectrum Store | 333 W. Washington, LaGrange, Il | Masonry Repair/Replacement | $423,000 | $423,000 | | $0 |
| CSI | 47 W. Division, Chicago, Il | Masonry Repair/Replacement | $477,000 | $202,745 | | $244,255 |
| Spectrum Store | 333 W. Washington, LaGrange, Il | Exterior Stone Restoration | $290,982 | $288,982 | | $2,000 |
| CSI | 47 W. Division, Chicago, Il | Exterior Stone Restoration | $284,918 | $32,358 | 88,760.00 | $152,902 |
| CSI | 47 W. Division, Chicago, Il | Dry Wall / Carpentry | $3,930,000 | $100,000 | 298,000.00 | $3,532,000 |
| Peter Manayski Construction | 111 W. Webster Ave. | Terra Cota Removal | $16,200 | $16,200 | | $0 |
| Spectrum Stone | 333 W. Washington, LaGrange, Il | Scaffolding For Madison/Michigan | $275,000 | $275,000 | | $0 |
| Helvig | 8620 Ferris Ave, Chicago, Il | Structural Columns | $61,700 | $61,700 | | $0 |
| CSI | 47 W. Division, Chicago, Il | Window Replacement | $1,865,000 | $1,515,780 | 78,000.00 | $274,210 |
| CSI | 47 W. Division, Chicago, Il | Basement and Parking Structure | $1,544,855 | $1,260,541 | 145,690.00 | $138,424 |
| CSI | 47 W. Division, Chicago, Il | Retail Space (7,700 sq. ft.) | $240,000 | $0 | | $240,000 |
| CSI | 47 W. Division, Chicago, Il | Lobby | $125,000 | $0 | 25,600.00 | $99,400 |
| CSI | 47 W. Division, Chicago, Il | Party/Exercise Room | $115,000 | $0 | | $115,000 |
| One Elevator | 651 W. Washington, Chicago, Il | Building Elevators | $735,000 | $273,683 | 95,000.00 | $366,337 |
| Pesco, Inc. | 4405 West Lawrence, Chicago, Il | Interior Demolition | $1,776,000 | $1,776,000 | | $0 |
| US Fire Protection | 28427 N. Ballard Unit H, Lake Forest, Il | Sprinkler System | $720,000 | $75,007 | 75,000.00 | $644,915 |
| CSI | 47 W. Division, Chicago, Il | Construction Contingency | $796,110 | $490,140 | | $305,970 |
| Pesco, Inc. | 47 W. Division, Chicago, Il | Asbestos Abatement Basement | $2,190,000 | $2,190,000 | | $0 |
| | | Asbestos Abatement Fixors 1-20 | | | | |
| AMEC (MDI) | 145 S. Wacker, Chicago, Il | Construction Manager Fee | $1,500,000 | $720,220 | 462,171.50 | $297,608 |
| CSI | 47 W. Division, Chicago, Il | General Conditions | $1,152,067 | $964,435 | 25,500.00 | $162,152 |
| CSI | 47 W. Division, Chicago, Il | Project Manager Fee | $753,800 | $627,210 | | $126,580 |
| | | | | | | $0 |
| | | | | | | $0 |
| | | | | | | $0 |
| | | | | | | $0 |
| | | | | | | $0 |
| | | | **$42,964,385** | **$23,673,807** | **2,906,299.00** | **$11,384,279** |

CONSTRUCTION SERVICES INTERNATIONAL

Date 12/13/02

Subscribed and sworn to before me this _____ day of _____

Notary

# GUARANTY
## (Romel Esmail)

THIS GUARANTY (the "Guaranty") made this 25th day of June, 2001 by **Romel Esmail** ("Guarantor") to and for the benefit of **CIB Bank**, an Illinois banking corporation, its successors and assigns ("Lender").

## R E C I T A L S :

A.  **North Star Trust Company, an Illinois corporation,** not individually, but as Trustee under Trust Agreement dated December 2, 1999 and known as **Trust No. L-99-2200** (the "Trust" or the "Trustee") and **Global Real Estate Investors, LLC,** an Illinois limited liability company (the "Global") (hereinafter the Trustee and the Global are collectively referred to as the "Borrower") are executing a certain Mortgage Note (the "Mortgage Note" or "Note") of even date herewith payable to the order of Lender in the principal sum of FORTY FOUR MILLION EIGHT HUNDRED THOUSAND AND NO/100 DOLLARS ($44,800,000.00) which Note is to be held by Lender (the "Loan").

B.  In conjunction with the making of the Loan and in order to secure the Mortgage Note, Borrower is simultaneously executing various loan documents as set forth in that certain Construction Loan Agreement of even date herewith by and between Borrower and Lender (the "Loan Agreement") (all of said loan documents including the Loan Agreement and this Guaranty are collectively referred to herein as the "Loan Documents").

C.  Lender requires as a condition precedent to its making the Loan evidenced by the Note that Guarantor guaranty the Liabilities and Obligations of Borrower and the payment of principal and interest and all other amounts provided for in the Note and the other Loan Documents and the full and faithful performance by Borrower of all of the covenants to be performed and observed pursuant to the provisions thereof, subject to the terms and conditions contained herein.

D.  All capitalized terms used in this Guaranty that are not specifically defined in this document shall have the meanings as set forth in the Loan Agreement.

E.  The Loan will be secured, inter alia, by the Loan Agreement, the Mortgage and Assignment of Leases and Rents and Security Agreement (the "Mortgage") of even date herewith made with respect to the real estate described on attached Exhibit "A" (the "Mortgaged Property"), and any and all other documents, certificates and agreements executed by Borrower, or Guarantor now or hereafter securing the Note, the Loan Agreement or the Liabilities and Obligations defined in the Mortgage, any other obligations of Borrower or Guarantor to Lender.

F.  Guarantor desires to give such guaranty to Lender in order to induce Lender to accept the Note and make the Loan.

/1160691.v 1 05/16/2001

Exhibit
21

G.  Guarantor will be directly benefited by the acceptance of the Note and the disbursement by Lender of the proceeds of the Loan to Borrower or at the direction of Borrower.

NOW, THEREFORE, in consideration of the foregoing premises and for the purpose of inducing Lender to accept the Note and make the Loan, Guarantor hereby agrees as follows:

1.  <u>Guaranty of Payment</u>.  Guarantor unconditionally, absolutely and irrevocably guarantees, for the benefit of Lender and each and every present and future holder or holders of the Note or assignee or assignees of the Loan Documents, the due, punctual and full payment of the Note, the Indebtedness, the Liabilities, the interest thereon and all other monies due of which may become due thereunder or under the Loan Documents, whether according to the present terms thereof or at any earlier or accelerated date or dates as provided therein, or pursuant to any extensions of time or to any change or changes in the terms, covenants or conditions thereof or at any time hereafter made or granted.

2.  <u>Guaranty of Performance</u>.  Guarantor unconditionally, absolutely and irrevocably undertakes and guarantees, for the benefit of Lender and each and every present and future holder or holders of the Note or assignee or assignees of the Loan Documents the due, punctual and full performance and observance by Borrower of the Obligations and all other terms, covenants and conditions of the Note and all of the other Loan Documents, whether according to the present terms thereof or at any earlier or accelerated date or dates as provided therein, or pursuant to any extension of time or to any change or changes in the terms, covenants or conditions thereof now or at any time hereafter made or granted.

3.  <u>Representations and Warranties</u>.  The following shall constitute representations and warranties of Guarantor and Guarantor hereby acknowledges that Lender intends to make the Loan in reliance thereon:

(a)  Guarantor is not in default, and no event has occurred which with the passage of time and/or the giving of notice will constitute a default, under any agreement to which any Guarantor is a party, the effect of which will impair performance by any Guarantor of his respective obligations pursuant to and as contemplated by the terms of this Guaranty, and neither the execution and delivery of this Guaranty nor compliance with the terms and provisions hereof will violate any applicable law, rule, regulation, judgment, decree or order, or will conflict or will be inconsistent with, or will result in any breach of, any of the terms, covenants, conditions or provisions of, or constitute a default under, any indenture, mortgage, security agreement, instrument, document, agreement or contract of any kind that creates, represents, evidences or provides for any lien, charge or encumbrance upon any of the property or assets of any Guarantor, or any other indenture, mortgage, security agreement, instrument, document, agreement or contract of any kind to which any Guarantor is a party or by which any Guarantor or the property of any Guarantor may be subject, or in the event of any such conflict, the required consent or waiver of the other party or parties thereto has been validly granted, is in full force and effect, is valid and sufficient therefor and has been approved by Lender;

(b)     There is not any litigation, arbitration, governmental or administrative proceedings, actions, examinations, claims or demands pending or threatened that will adversely affect performance by Guarantor of his respective obligations pursuant to and as contemplated by the terms and provisions of this Guaranty; and

(c)     Neither this Guaranty nor any statement or certification as to facts heretofore furnished or required herein to be furnished to Lender by Guarantor contains any inaccuracy or untruth in any representation, covenant or warranty or omits to state a fact material to this Guaranty.

4.      Covenants. Guarantor hereby agrees and covenants that:

(a)     If any mechanics' lien claims are filed or otherwise asserted against the Mortgaged Property or against any funds due any contractor or subcontractor, Guarantor shall, to the extent Borrower fails to do so when required under any of the Loan Documents, cause the immediate removal of such liens, or shall, to the extent that Borrower fails to do so when required under the other Loan Documents, provide Lender with the security or indemnity required by the terms of any of the Loan Documents;

(b)     Any indebtedness of Borrower now or hereafter owing, together with any interest thereon, to Guarantor, is hereby subordinated to the indebtedness of Borrower to Lender under the Note and all of the Loan Documents, and such indebtedness of Borrower to Guarantor upon the occurrence of an Event of Default shall be collected, enforced and received by Guarantor in trust for the benefit of Lender, and shall be paid over to Lender on account of the indebtedness of Borrower to Lender, but without impairing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty. So long as no Event of Default exists under the Loan Agreement or under any of the Loan Documents and no default has occurred hereunder, Guarantor may apply to his own account payments made, to the Guarantor, by Borrower on Borrower's indebtedness held by or due to Guarantor;

(c)     Until the Note, all Liabilities and all indebtedness due from Borrower to Lender are repaid in full, no payment by the Guarantor under any provision of this Guaranty shall entitle the Guarantor by subrogation to the rights of Lender or otherwise, to (i) any payment by Borrower or out of its respective property or (ii) any payment from or rights in any applicable bonds, title insurance certifications, commitments or indemnities or other security held by or for the benefit of Lender in connection with the Mortgaged Property, if such subrogation prejudices Lender's interests;

(d)     The liability of the Guarantor hereunder shall in no way be affected, diminished or released by any extension of time or forbearance that may be granted by Lender to Borrower or to Guarantor or any waiver by lender under the Note or any of the Loan Documents or by reason of any change or modification in any of said instruments or by the acceptance by Lender of additional security or any increase, substitution or changes

therein, or by the release by Lender of any security or any withdrawal thereof or decrease therein or by the failure or election not to pursue any remedies it may have against Borrower;

(e)     Lender, in its sole discretion, may at any time enter into agreements with Borrower to amend and modify any one or more of the Loan Documents and may waive or release any provision or provisions of any one or more thereof and, with reference thereto, may make and enter into any such agreement or agreements as Lender, and Borrower may deem proper or desirable, without any notice to or assent from the Guarantor and without in any manner, impairing or affecting this Guaranty or any of Lender's rights hereunder;

(f)     Lender may enforce this Guaranty without the necessity at any time of first resorting to or exhausting any other remedy or any other security or collateral and without the necessity at any time of first having recourse to the Note, or any property covered by the Mortgage through foreclosure proceedings or otherwise; provided, however, that nothing herein contained shall prevent Lender from suing on the Note or from foreclosing the Mortgage or from exercising or enforcing its rights under the other Loan Documents, and if such foreclosure or other remedy is availed of only the net proceeds therefrom, after deduction of all charges and expenses of every kind and nature relating to collection of the indebtedness evidenced by the Note, shall be applied in reduction of the amount due on the Note and the other Loan Documents and Lender shall not be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof. At any sale of the security or collateral for the indebtedness evidenced by the Note, or any part thereof, whether by foreclosure or otherwise, Lender may at its discretion purchase all or any part of such collateral offered for sale, for its own account, and may apply against the amount bid therefor the balance due it pursuant to the terms of the Note and the other Loan Documents;

(g)     This Guaranty shall remain and continue in full force and effect notwithstanding the institution by or against Borrower or Guarantor of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the rejection of the Loan Documents in any such proceedings, or otherwise. In the event any payment by or on behalf of Borrower to Lender is held to constitute a preference under the bankruptcy laws, or if for any other reason Lender is required to refund such payment or pay the amount thereof to any other party, such payment by or on behalf of Borrower to Lender shall not constitute a release of Guarantor from any liability hereunder, but Guarantor agrees to pay such amount to Lender upon demand; and

(h)     This Guaranty shall be a continuing, absolute and unconditional Guaranty, and shall not be discharged, impaired or affected by the following, whether or not of the Guarantor has notice or knowledge of, or consent or agree thereto: (i) the existence or continuance of any obligation on the part of Borrower on or with respect to the Note or under the Loan Documents; (ii) the release or agreement not to sue without reservation of rights of anyone liable in any way for repayment of the indebtedness evidenced by the Note or any of the other covenants or conditions required to be performed under the Loan

Documents for any reason whatsoever; (iii) the power or authority or lack of power or authority of Borrower to execute, acknowledge or deliver the Note or the Loan Documents; (iv) the validity or invalidity of the Note and/or the Loan Documents; (v) any defenses whatsoever that Borrower or anyone else, including, but not limited to, a bankruptcy trustee, may or might have to the performance or observance of any of the covenants or conditions contained in the Note or the Loan Documents; (vi) the transfer by Borrower of all or any part of any interest in all or any part of the real estate described in the Mortgage or any property or rights described in any of the other Loan Documents; (vii) the existence or non-existence of any or either Borrower as a legal entity; (viii) any sale, pledge, surrender, indulgence, alteration, substitution, exchange, modification, release or other disposition of any of the indebtedness hereby guaranteed or security therefor, all of which Lender is expressly authorized to make and do from time to time; (ix) any right or claim whatsoever which the Guarantor may have against Borrower; (x) any defense that the Guarantor may or might have as to his undertakings, liabilities and obligations hereunder, each and every such defense being hereby expressly waived by Guarantor; (xi) the acceptance by Lender of any, all or part of the indebtedness evidenced by the Note, or any failure, neglect or omission on the part of Lender to realize on or protect any of the indebtedness evidenced by the Note or any real estate personal property, collateral or Mortgage or lien security given as security therefor, or to exercise any lien upon or right of appropriation of any monies, credits or property of Borrower toward liquidation of the indebtedness hereby guaranteed; or (xii) the failure by Lender or anyone acting by or on behalf of Lender to perfect any lien or security interest upon any collateral given at any time to secure the repayment of the Note.

5.    <u>Waivers</u>. (a) Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payments, notice of acceptance of this Guaranty, nonpayment at maturity and indulgences and notices of every kind with respect to the Note and all of the other Loan Documents.  Guarantor further consents to any and all forbearances and extensions of the time of payment of the Note, including any extension of the maturity dates of the Note, to any and all changes in the terms, covenants and conditions of the Note and the Loan Documents, hereafter made or granted, and to any and all substitutions, exchanges or release of all or any part of the collateral for the Note, it being the intention hereof that the Guarantor remains liable as principal to and until the unpaid principal amount of the Note, together with interest hereon and all other sums due or to become due thereon or under the other Loan Documents shall have been fully repaid to Lender and the terms, covenants and conditions thereof shall have been fully performed and observed by Borrower, notwithstanding any act, omission or thing which might otherwise operate as a legal or equitable discharge of the Guarantor.

(b)    Guarantor waives any claim or other right which the undersigned may now have or hereafter acquire against Borrower, or any other person that is primarily or contingently liable on the Note or any of the Loan Documents that arises from existence of the performance of the Guarantor's obligations under this Guaranty, including, without limitation, any right of subrogation, reimbursement, exoneration, contribution, indemnification, any right to participate in any claim or remedy of the Lender against the Borrower, or any collateral security for the Loan, which the Lender now has or hereafter acquires; whether or not such claim, remedy or right arises in equity, or other contract, statute or common law.

6. <u>Grant of Security Interest.</u> To secure all obligations of the undersigned hereunder, the Guarantor hereby grants to Lender a lien upon and security interest in (and may, without demand or notice of any kind, when any amount shall be due and payable by the undersigned hereunder, appropriate and apply toward the payment of such amount, in such order of application as Lender may elect) any and all balances, credits, deposits, accounts or monies of or in the name of Guarantor now or hereinafter in the possession of Lender and any and all property of every kind or description of or in the name of Guarantor now or hereafter, for any reason or purpose whatsoever, in the possession or control of, or in transit to, Lender or any agent or bailee for Lender. Lender shall have the rights and remedies of a secured party under the Uniform Commercial Code of the State of Illinois in respect to such property, including, without limitation, the right to sell or otherwise dispose of any or all of such property.

7. <u>Effect of Lender's Delay or Action.</u> No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Lender of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy. No action of Lender permitted hereunder shall in any way affect or impair the rights of Lender and the obligation of Guarantor.

8. <u>Costs of Collection.</u> Guarantor agrees that in addition to all of their other obligations under this Guaranty, Guarantor shall be liable to pay to Lender or the holder or holders from time to time of the Note, on demand, all costs and expenses, including attorneys' fees (based upon services rendered at hourly rates) and court costs, incurred by Lender or such holder in enforcing the obligations of Borrower under the Note and the Loan Documents and of the Guarantor under this Guaranty.

9 <u>Business Loan.</u> Guarantor hereby represents and warrants to Lender that the proceeds of the Note will be used solely for business purposes and not for personal, consumer, family or household purposes.

10. <u>Financial Statements.</u>

(a) Guarantor agrees that upon written request by Lender he shall deliver to Lender not later than fifteen (15) days from the date of each request financial statements of each Guarantor, on Lender's standard form or on such other form as Lender shall approve, setting forth the information therein required certified by each respective Guarantor as being true, complete and correct.

(b) Guarantor agrees that he shall deliver to the Lender, whether or not he receives a request from Lender, the following: (1) a financial statement annually within thirty (30) days after calendar year end, certified by Guarantor as being true, complete and correct and (2) a certified copy of his filed federal income tax return within no more than 30 days of filing.

11. <u>Previous Guaranties.</u> This Guaranty shall not be deemed to supersede or terminate any previous guaranty, if any, of Guarantor to Lender, but shall be construed as an additional or

supplemental guaranty unless otherwise expressly provided herein; and in the event that Guarantor has given to the Lender a previous guaranty or guarantees, this Guaranty shall be construed to be an additional or supplemental Guaranty and not to be in lieu thereof or to terminate such previous guaranty or guarantees unless expressly so provided herein.

12.    <u>Miscellaneous</u>.  Guarantor agrees that this Guaranty shall inure to the benefit of and may be enforced by Lender and any subsequent holders of the Note, and their respective successors and assigns, and shall be binding upon and enforceable against Guarantor and his administrators, personal representatives, heirs, legatees, successors and assigns.  Guarantor agrees that this Guaranty shall be governed by and construed in accordance with the laws of the State of Illinois. This Guaranty may not be modified, amended, revised, revoked, terminated, changed or varied in any way whatsoever except by the expressed terms of a writing signed by the party or parties sought to be bound thereby.  In the event one or more of the provisions contained in this Guaranty shall for any reason be held to be invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, Guarantor agrees that such invalidity, illegality or unenforceability shall not affect any other provision of this Guaranty, and this Guaranty shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.  Time is of the essence of this Guaranty.  Guarantor agrees that this Guaranty may be executed in any number of counterparts and all such counterparts when taken together shall constitute one and the same Guaranty.

13.    <u>Notice</u>.  All notices, communications and waivers under this Guaranty shall be in writing and shall be (i) delivered in person or (ii) mailed, postage prepaid, either by registered or certified mail, return receipt requested, or (iii) by overnight express carrier, addressed in each case as follows:

| | |
|---|---|
| To Lender: | CIB Bank<br>20527 LaGrange Road<br>Frankfort, Illinois 60423<br>Attn:  Kevin Lietz, Vice President |
| With copy to: | McBride, Baker & Coles<br>500 West Madison Street<br>40th Floor<br>Chicago, Illinois 60661-2511<br>Attn:  Francis L. Keldermans |
| Guarantor: | Romel Esmail |

Copy to:          Elka Nelson
                  19 S. LaSalle Street
                  Suite 602
                  Chicago, Illinois 60603

or to any other address as to any of the parties hereto, as such party shall designate in a written notice to the other party hereto. All notices sent pursuant to the terms of this Section shall be deemed received (i) if personally delivered, then on the date of delivery, (ii) if sent by overnight, express carrier, then on the next federal banking date immediately following the day sent, or (iii) if sent by registered or certified mail, then on the earlier of the fifth (5th) day following the day sent or when actually received.

14.    Collateral Protection Act. Pursuant to the requirements of the Illinois Collateral Protection Act, Guarantor is hereby notified as follows:

Unless the Borrower provides the Lender with evidence of the insurance coverage required by the Mortgage, the Loan Agreement or any of the other Loan Documents, Lender may purchase insurance at Borrower's expense to protect Lender's interest in the Mortgaged property or any other collateral for the Indebtedness or Obligations. This Insurance may, but need not protect Borrower's interests. The coverage the Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the Mortgaged Property or any other collateral for the Indebtedness or Obligations. Borrower may later cancel any insurance purchased by Lender but only after providing Lender with evidence that Borrower has obtained insurance as required by this Mortgage, the Loan Agreement or any of the other Loan Documents. If Lender purchases insurance for the Mortgaged Property or any other collateral for the indebtedness or obligations, Borrower will be responsible for the costs of that insurance, including interest in any other charges that Lender may lawfully impose in connect with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to the total outstanding indebtedness. The costs of the insurance may be more than the cost of insurance that Borrower may be able to obtain on its own.

15.    JURISDICTION AND VENUE. GUARANTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INITIATED BY ANY GUARANTOR AND ARISING DIRECTLY OR INDIRECTLY OF THIS GUARANTY OR THE OTHER LOAN DOCUMENTS SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITES STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS OR, IF LENDER INITIATES SUCH ACTION, ANY COURT IN WHICH LENDER SHALL INITIATE SUCH ACTION AND WHICH HAS JURISDICTION. GUARANTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY LENDER IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO EACH GUARANTOR AT THE

ADDRESSES TO WHICH NOTICES ARE TO BE SENT PURSUANT TO THIS GUARANTY. GUARANTOR WAIVES ANY CLAIM THAT COOK COUNTY ILLINOIS OR THE FEDERAL DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION IS AN INCONVENIENT FORUM OR AN IMPROPER FORUM BASED ON LACK OF VENUE. SHOULD ANY GUARANTOR, AFTER BEING SO SERVED, FAIL TO APPEAR OR ANSWER TO ANY SUMMONS, COMPLAINT, PROCESS OR PAPERS SO SERVED WITHIN THE NUMBER OF DAYS PRESCRIBED BY LAW AFTER THE MAILING THEREOF, EACH SUCH GUARANTOR SHALL BE DEEMED IN DEFAULT AND AN ORDER AN/OR JUDGMENT MAY BE ENTERED BY THE COURT AGAINST EACH SUCH GUARANTOR AS DEMANDED OR PRAYED FOR IN SUCH SUMMONS, COMPLAINT, PROCESS OR PAPERS. THE EXCLUSIVE CHOICE OF FORUM FOR GUARANTORS SET FORTH IN THIS SECTION SHALL NOT BE DEEMED TO PRECLUDE THE ENFORCEMENT, BY LENDER, OF ANY JUDGMENT OBTAINED IN ANY OTHER FORUM OR THE TAKING, BY LENDER OF ANY ACTION TO ENFORCE THE SAME IN ANY OTHER APPROPRIATE JURISDICTION, AND GUARANTOR HEREBY WAIVES THE RIGHT, IF ANY, TO COLLATERALLY ATTACH ANY SUCH JUDGMENT OR ACTION.

16.    WAIVER OF RIGHT TO JURY TRIAL.    LENDER AND GUARANTOR ACKNOWLEDGE AND AGREE THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS GUARANTY OR THE OTHER LOAN DOCUMENTS OR WITH RESPECT TO THE TRANSACTIONS CONTEMPLATED HEREIN AND THEREIN WOULD BE BASED UPON DIFFICULT AND COMPLEX ISSUES AND THEREFORE, THE PARTIES AGREE THAT ANY COURT PROCEEDING ARISING OUT OF ANY SUCH CONTROVERSY WILL BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Guarantor has executed this instrument as of the day and year first above written.

Romel Esmail, Individually

## ACKNOWLEDGMENTS

STATE OF ILLINOIS   )
         ) SS.
COUNTY OF COOK   )

On June 25, 2001 before me, the undersigned, a Notary Public in and for the county and state aforesaid, personally appeared **Romel Esmail**, personally known to me to be the person who executed the within Guaranty and acknowledged to me that the execution of the Guaranty was his free and voluntary act and deed for the uses and purposes therein mentioned.

   WITNESS my hand and official seal.
(SEAL)            *Nancy H. Lewis*

               Notary Public in and for the
               State of Illinois
               My commission expires:_____

```
"OFFICIAL SEAL"
NANCY H. LEWIS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4/24/2002
```

## EXHIBIT A
## LEGAL DESCRIPTION

LOT 6 AND 7 IN BLOCK 15 ON FORT DEARBORN ADDITION TO CHICAGO THE WHOLE SOUTHWEST FRACTIONAL ¼ OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

PERMANENT INDEX NO:        17-10-312-008-0000

COMMONLY KNOWN AS:        6 N. Michigan Avenue
                          Chicago, Illinois

## GUARANTY
### (Bassam Haj Yousif)

THIS GUARANTY (the "Guaranty") made this *25* day of June, 2001 by **Bassam Haj Yousif** ("Guarantor") to and for the benefit of **CIB Bank**, an Illinois banking corporation, its successors and assigns ("Lender").

## R E C I T A L S :

A.     **North Star Trust Company, an Illinois corporation**, not individually, but as Trustee under Trust Agreement dated December 2, 1999 and known as **Trust No. L-99-2200** (the "Trust" or the "Trustee") and **Global Real Estate Investors, LLC**, an Illinois limited liability company (the "Global") (hereinafter the Trustee and the Global are collectively referred to as the "Borrower") are executing a certain Mortgage Note (the "Mortgage Note" or "Note") of even date herewith payable to the order of Lender in the principal sum of FORTY FOUR MILLION EIGHT HUNDRED THOUSAND AND NO/100 DOLLARS ($44,800,000.00) which Note is to be held by Lender (the "Loan").

B.     In conjunction with the making of the Loan and in order to secure the Mortgage Note, Borrower is simultaneously executing various loan documents as set forth in that certain Construction Loan Agreement of even date herewith by and between Borrower and Lender (the "Loan Agreement") (all of said loan documents including the Loan Agreement and this Guaranty are collectively referred to herein as the "Loan Documents").

C.     Lender requires as a condition precedent to its making the Loan evidenced by the Note that Guarantor guaranty the Liabilities and Obligations of Borrower and the payment of principal and interest and all other amounts provided for in the Note and the other Loan Documents and the full and faithful performance by Borrower of all of the covenants to be performed and observed pursuant to the provisions thereof, subject to the terms and conditions contained herein.

D.     All capitalized terms used in this Guaranty that are not specifically defined in this document shall have the meanings as set forth in the Loan Agreement.

E.     The Loan will be secured, inter alia, by the Loan Agreement, the Mortgage and Assignment of Leases and Rents and Security Agreement (the "Mortgage") of even date herewith made with respect to the real estate described on attached Exhibit "A" (the "Mortgaged Property"), and any and all other documents, certificates and agreements executed by Borrower, or Guarantor now or hereafter securing the Note, the Loan Agreement or the Liabilities and Obligations defined in the Mortgage, any other obligations of Borrower or Guarantor to Lender.

F.     Guarantor desires to give such guaranty to Lender in order to induce Lender to accept the Note and make the Loan.

1161212

Exhibit
22

G.     Guarantor will be directly benefited by the acceptance of the Note and the disbursement by Lender of the proceeds of the Loan to Borrower or at the direction of Borrower.

NOW, THEREFORE, in consideration of the foregoing premises and for the purpose of inducing Lender to accept the Note and make the Loan, Guarantor hereby agrees as follows:

1.     <u>Guaranty of Payment</u>.  Guarantor unconditionally, absolutely and irrevocably guarantees, for the benefit of Lender and each and every present and future holder or holders of the Note or assignee or assignees of the Loan Documents, the due, punctual and full payment of the Note, the Indebtedness, the Liabilities, the interest thereon and all other monies due of which may become due thereunder or under the Loan Documents, whether according to the present terms thereof or at any earlier or accelerated date or dates as provided therein, or pursuant to any extensions of time or to any change or changes in the terms, covenants or conditions thereof or at any time hereafter made or granted.

2.     <u>Guaranty of Performance</u>.  Guarantor unconditionally, absolutely and irrevocably undertakes and guarantees, for the benefit of Lender and each and every present and future holder or holders of the Note or assignee or assignees of the Loan Documents the due, punctual and full performance and observance by Borrower of the Obligations and all other terms, covenants and conditions of the Note and all of the other Loan Documents, whether according to the present terms thereof or at any earlier or accelerated date or dates as provided therein, or pursuant to any extension of time or to any change or changes in the terms, covenants or conditions thereof now or at any time hereafter made or granted.

3.     <u>Representations and Warranties</u>.  The following shall constitute representations and warranties of Guarantor and Guarantor hereby acknowledges that Lender intends to make the Loan in reliance thereon:

(a)     Guarantor is not in default, and no event has occurred which with the passage of time and/or the giving of notice will constitute a default, under any agreement to which any Guarantor is a party, the effect of which will impair performance by any Guarantor of his respective obligations pursuant to and as contemplated by the terms of this Guaranty, and neither the execution and delivery of this Guaranty nor compliance with the terms and provisions hereof will violate any applicable law, rule, regulation, judgment, decree or order, or will conflict or will be inconsistent with, or will result in any breach of, any of the terms, covenants, conditions or provisions of, or constitute a default under, any indenture, mortgage, security agreement, instrument, document, agreement or contract of any kind that creates, represents, evidences or provides for any lien, charge or encumbrance upon any of the property or assets of any Guarantor, or any other indenture, mortgage, security agreement, instrument, document, agreement or contract of any kind to which any Guarantor is a party or by which any Guarantor or the property of any Guarantor may be subject, or in the event of any such conflict, the required consent or waiver of the other party or parties thereto has been validly granted, is in full force and effect, is valid and sufficient therefor and has been approved by Lender;

(b)     There is not any litigation, arbitration, governmental or administrative proceedings, actions, examinations, claims or demands pending or threatened that will adversely affect performance by Guarantor of his respective obligations pursuant to and as contemplated by the terms and provisions of this Guaranty; and

(c)     Neither this Guaranty nor any statement or certification as to facts heretofore furnished or required herein to be furnished to Lender by Guarantor contains any inaccuracy or untruth in any representation, covenant or warranty or omits to state a fact material to this Guaranty.

4.     <u>Covenants</u>.  Guarantor hereby agrees and covenants that:

(a)     If any mechanics' lien claims are filed or otherwise asserted against the Mortgaged Property or against any funds due any contractor or subcontractor, Guarantor shall, to the extent Borrower fails to do so when required under any of the Loan Documents, cause the immediate removal of such liens, or shall, to the extent that Borrower fails to do so when required under the other Loan Documents, provide Lender with the security or indemnity required by the terms of any of the Loan Documents;

(b)     Any indebtedness of Borrower now or hereafter owing, together with any interest thereon, to Guarantor, is hereby subordinated to the indebtedness of Borrower to Lender under the Note and all of the Loan Documents, and such indebtedness of Borrower to Guarantor upon the occurrence of an Event of Default shall be collected, enforced and received by Guarantor in trust for the benefit of Lender, and shall be paid over to Lender on account of the indebtedness of Borrower to Lender, but without impairing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.  So long as no Event of Default exists under the Loan Agreement or under any of the Loan Documents and no default has occurred hereunder, Guarantor may apply to his own account payments made, to the Guarantor, by Borrower on Borrower's indebtedness held by or due to Guarantor;

(c)     Until the Note, all Liabilities and all indebtedness due from Borrower to Lender are repaid in full, no payment by the Guarantor under any provision of this Guaranty shall entitle the Guarantor by subrogation to the rights of Lender or otherwise, to (i) any payment by Borrower or out of its respective property or (ii) any payment from or rights in any applicable bonds, title insurance certifications, commitments or indemnities or other security held by or for the benefit of Lender in connection with the Mortgaged Property, if such subrogation prejudices Lender's interests;

(d)     The liability of the Guarantor hereunder shall in no way be affected, diminished or released by any extension of time or forbearance that may be granted by Lender to Borrower or to Guarantor or any waiver by lender under the Note or any of the Loan Documents or by reason of any change or modification in any of said instruments or by the acceptance by Lender of additional security or any increase, substitution or changes

therein, or by the release by Lender of any security or any withdrawal thereof or decrease therein or by the failure or election not to pursue any remedies it may have against Borrower;

(e)     Lender, in its sole discretion, may at any time enter into agreements with Borrower to amend and modify any one or more of the Loan Documents and may waive or release any provision or provisions of any one or more thereof and, with reference thereto, may make and enter into any such agreement or agreements as Lender, and Borrower may deem proper or desirable, without any notice to or assent from the Guarantor and without in any manner, impairing or affecting this Guaranty or any of Lender's rights hereunder;

(f)     Lender may enforce this Guaranty without the necessity at any time of first resorting to or exhausting any other remedy or any other security or collateral and without the necessity at any time of first having recourse to the Note, or any property covered by the Mortgage through foreclosure proceedings or otherwise; provided, however, that nothing herein contained shall prevent Lender from suing on the Note or from foreclosing the Mortgage or from exercising or enforcing its rights under the other Loan Documents, and if such foreclosure or other remedy is availed of only the net proceeds therefrom, after deduction of all charges and expenses of every kind and nature relating to collection of the indebtedness evidenced by the Note, shall be applied in reduction of the amount due on the Note and the other Loan Documents and Lender shall not be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof. At any sale of the security or collateral for the indebtedness evidenced by the Note, or any part thereof, whether by foreclosure or otherwise, Lender may at its discretion purchase all or any part of such collateral offered for sale, for its own account, and may apply against the amount bid therefor the balance due it pursuant to the terms of the Note and the other Loan Documents;

(g)     This Guaranty shall remain and continue in full force and effect notwithstanding the institution by or against Borrower or Guarantor of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the rejection of the Loan Documents in any such proceedings, or otherwise. In the event any payment by or on behalf of Borrower to Lender is held to constitute a preference under the bankruptcy laws, or if for any other reason Lender is required to refund such payment or pay the amount thereof to any other party, such payment by or on behalf of Borrower to Lender shall not constitute a release of Guarantor from any liability hereunder, but Guarantor agrees to pay such amount to Lender upon demand; and

(h)     This Guaranty shall be a continuing, absolute and unconditional Guaranty, and shall not be discharged, impaired or affected by the following, whether or not of the Guarantor has notice or knowledge of, or consent or agree thereto:  (i) the existence or continuance of any obligation on the part of Borrower on or with respect to the Note or under the Loan Documents; (ii) the release or agreement not to sue without reservation of rights of anyone liable in any way for repayment of the indebtedness evidenced by the Note or any of the other covenants or conditions required to be performed under the Loan

Documents for any reason whatsoever; (iii) the power or authority or lack of power or authority of Borrower to execute, acknowledge or deliver the Note or the Loan Documents; (iv) the validity or invalidity of the Note and/or the Loan Documents; (v) any defenses whatsoever that Borrower or anyone else, including, but not limited to, a bankruptcy trustee, may or might have to the performance or observance of any of the covenants or conditions contained in the Note or the Loan Documents; (vi) the transfer by Borrower of all or any part of any interest in all or any part of the real estate described in the Mortgage or any property or rights described in any of the other Loan Documents; (vii) the existence or non-existence of any or either Borrower as a legal entity; (viii) any sale, pledge, surrender, indulgence, alteration, substitution, exchange, modification, release or other disposition of any of the indebtedness hereby guaranteed or security therefor, all of which Lender is expressly authorized to make and do from time to time; (ix) any right or claim whatsoever which the Guarantor may have against Borrower; (x) any defense that the Guarantor may or might have as to his undertakings, liabilities and obligations hereunder, each and every such defense being hereby expressly waived by Guarantor; (xi) the acceptance by Lender of any, all or part of the indebtedness evidenced by the Note, or any failure, neglect or omission on the part of Lender to realize on or protect any of the indebtedness evidenced by the Note or any real estate personal property, collateral or Mortgage or lien security given as security therefor, or to exercise any lien upon or right of appropriation of any monies, credits or property of Borrower toward liquidation of the indebtedness hereby guaranteed; or (xii) the failure by Lender or anyone acting by or on behalf of Lender to perfect any lien or security interest upon any collateral given at any time to secure the repayment of the Note.

    5.    __Waivers__. (a) Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payments, notice of acceptance of this Guaranty, nonpayment at maturity and indulgences and notices of every kind with respect to the Note and all of the other Loan Documents. Guarantor further consents to any and all forbearances and extensions of the time of payment of the Note, including any extension of the maturity dates of the Note, to any and all changes in the terms, covenants and conditions of the Note and the Loan Documents, hereafter made or granted, and to any and all substitutions, exchanges or release of all or any part of the collateral for the Note, it being the intention hereof that the Guarantor remains liable as principal to and until the unpaid principal amount of the Note, together with interest hereon and all other sums due or to become due thereon or under the other Loan Documents shall have been fully repaid to Lender and the terms, covenants and conditions thereof shall have been fully performed and observed by Borrower, notwithstanding any act, omission or thing which might otherwise operate as a legal or equitable discharge of the Guarantor.

    (b)    Guarantor waives any claim or other right which the undersigned may now have or hereafter acquire against Borrower, or any other person that is primarily or contingently liable on the Note or any of the Loan Documents that arises from existence of the performance of the Guarantor's obligations under this Guaranty, including, without limitation, any right of subrogation, reimbursement, exoneration, contribution, indemnification, any right to participate in any claim or remedy of the Lender against the Borrower, or any collateral security for the Loan, which the Lender now has or hereafter acquires; whether or not such claim, remedy or right arises in equity, or other contract, statute or common law.

1161212                    -5-                  Bassam Haj Yousif Guaranty

6. <u>Grant of Security Interest.</u> To secure all obligations of the undersigned hereunder, the Guarantor hereby grants to Lender a lien upon and security interest in (and may, without demand or notice of any kind, when any amount shall be due and payable by the undersigned hereunder, appropriate and apply toward the payment of such amount, in such order of application as Lender may elect) any and all balances, credits, deposits, accounts or monies of or in the name of Guarantor now or hereinafter in the possession of Lender and any and all property of every kind or description of or in the name of Guarantor now or hereafter, for any reason or purpose whatsoever, in the possession or control of, or in transit to, Lender or any agent or bailee for Lender. Lender shall have the rights and remedies of a secured party under the Uniform Commercial Code of the State of Illinois in respect to such property, including, without limitation, the right to sell or otherwise dispose of any or all of such property.

7. <u>Effect of Lender's Delay or Action.</u> No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Lender of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy. No action of Lender permitted hereunder shall in any way affect or impair the rights of Lender and the obligation of Guarantor.

8. <u>Costs of Collection.</u> Guarantor agrees that in addition to all of their other obligations under this Guaranty, Guarantor shall be liable to pay to Lender or the holder or holders from time to time of the Note, on demand, all costs and expenses, including attorneys' fees (based upon services rendered at hourly rates) and court costs, incurred by Lender or such holder in enforcing the obligations of Borrower under the Note and the Loan Documents and of the Guarantor under this Guaranty.

9 <u>Business Loan.</u> Guarantor hereby represents and warrants to Lender that the proceeds of the Note will be used solely for business purposes and not for personal, consumer, family or household purposes.

10. <u>Financial Statements.</u>

    (a) Guarantor agrees that upon written request by Lender he shall deliver to Lender not later than fifteen (15) days from the date of each request financial statements of each Guarantor, on Lender's standard form or on such other form as Lender shall approve, setting forth the information therein required certified by each respective Guarantor as being true, complete and correct.

    (b) Guarantor agrees that he shall deliver to the Lender, whether or not he receives a request from Lender, the following: (1) a financial statement annually within thirty (30) days after calendar year end, certified by Guarantor as being true, complete and correct and (2) a certified copy of his filed federal income tax return within no more than 30 days of filing.

11. <u>Previous Guaranties.</u> This Guaranty shall not be deemed to supersede or terminate any previous guaranty, if any, of Guarantor to Lender, but shall be construed as an additional or

supplemental guaranty unless otherwise expressly provided herein; and in the event that Guarantor has given to the Lender a previous guaranty or guarantees, this Guaranty shall be construed to be an additional or supplemental Guaranty and not to be in lieu thereof or to terminate such previous guaranty or guarantees unless expressly so provided herein.

12.    Miscellaneous.  Guarantor agrees that this Guaranty shall inure to the benefit of and may be enforced by Lender and any subsequent holders of the Note, and their respective successors and assigns, and shall be binding upon and enforceable against Guarantor and his administrators, personal representatives, heirs, legatees, successors and assigns.  Guarantor agrees that this Guaranty shall be governed by and construed in accordance with the laws of the State of Illinois. This Guaranty may not be modified, amended, revised, revoked, terminated, changed or varied in any way whatsoever except by the expressed terms of a writing signed by the party or parties sought to be bound thereby.  In the event one or more of the provisions contained in this Guaranty shall for any reason be held to be invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, Guarantor agrees that such invalidity, illegality or unenforceability shall not affect any other provision of this Guaranty, and this Guaranty shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.  Time is of the essence of this Guaranty.  Guarantor agrees that this Guaranty may be executed in any number of counterparts and all such counterparts when taken together shall constitute one and the same Guaranty.

13.    Notice.  All notices, communications and waivers under this Guaranty shall be in writing and shall be (i) delivered in person or (ii) mailed, postage prepaid, either by registered or certified mail, return receipt requested, or (iii) by overnight express carrier, addressed in each case as follows:

| | |
|---|---|
| To Lender: | CIB Bank<br>20527 LaGrange Road<br>Frankfort, Illinois 60423<br>Attn: Kevin Lietz, Vice President |
| With copy to: | McBride, Baker & Coles<br>500 West Madison Street<br>40th Floor<br>Chicago, Illinois 60661-2511<br>Attn: Francis L. Keldermans |
| Guarantor: | Bassam Haj Yousif<br>*858 West Armitage, Suite 263*<br>*Chicago, Il. 60614* |

Copy to:             Elka Nelson
19 S. LaSalle Street
Suite 602
Chicago, Illinois 60603

or to any other address as to any of the parties hereto, as such party shall designate in a written notice to the other party hereto. All notices sent pursuant to the terms of this Section shall be deemed received (i) if personally delivered, then on the date of delivery, (ii) if sent by overnight, express carrier, then on the next federal banking date immediately following the day sent, or (iii) if sent by registered or certified mail, then on the earlier of the fifth (5th) day following the day sent or when actually received.

14.    <u>Collateral Protection Act</u>. Pursuant to the requirements of the Illinois Collateral Protection Act, Guarantor is hereby notified as follows:

Unless the Borrower provides the Lender with evidence of the insurance coverage required by the Mortgage, the Loan Agreement or any of the other Loan Documents, Lender may purchase insurance at Borrower's expense to protect Lender's interest in the Mortgaged property or any other collateral for the Indebtedness or Obligations. This Insurance may, but need not protect Borrower's interests. The coverage the Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the Mortgaged Property or any other collateral for the Indebtedness or Obligations. Borrower may later cancel any insurance purchased by Lender but only after providing Lender with evidence that Borrower has obtained insurance as required by this Mortgage, the Loan Agreement or any of the other Loan Documents. If Lender purchases insurance for the Mortgaged Property or any other collateral for the indebtedness or obligations, Borrower will be responsible for the costs of that insurance, including interest in any other charges that Lender may lawfully impose in connect with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to the total outstanding indebtedness. The costs of the insurance may be more than the cost of insurance that Borrower may be able to obtain on its own.

15.    <u>JURISDICTION AND VENUE</u>. GUARANTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INITIATED BY ANY GUARANTOR AND ARISING DIRECTLY OR INDIRECTLY OF THIS GUARANTY OR THE OTHER LOAN DOCUMENTS SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITES STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS OR, IF LENDER INITIATES SUCH ACTION, ANY COURT IN WHICH LENDER SHALL INITIATE SUCH ACTION AND WHICH HAS JURISDICTION. GUARANTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY LENDER IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO EACH GUARANTOR AT THE

ADDRESSES TO WHICH NOTICES ARE TO BE SENT PURSUANT TO THIS GUARANTY. GUARANTOR WAIVES ANY CLAIM THAT COOK COUNTY ILLINOIS OR THE FEDERAL DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION IS AN INCONVENIENT FORUM OR AN IMPROPER FORUM BASED ON LACK OF VENUE.  SHOULD ANY GUARANTOR, AFTER BEING SO SERVED, FAIL TO APPEAR OR ANSWER TO ANY SUMMONS, COMPLAINT, PROCESS OR PAPERS SO SERVED WITHIN THE NUMBER OF DAYS PRESCRIBED BY LAW AFTER THE MAILING THEREOF, EACH SUCH GUARANTOR SHALL BE DEEMED IN DEFAULT AND AN ORDER AN/OR JUDGMENT MAY BE ENTERED BY THE COURT AGAINST EACH SUCH GUARANTOR AS DEMANDED OR PRAYED FOR IN SUCH SUMMONS, COMPLAINT, PROCESS OR PAPERS. THE EXCLUSIVE CHOICE OF FORUM FOR GUARANTORS SET FORTH IN THIS SECTION SHALL NOT BE DEEMED TO PRECLUDE THE ENFORCEMENT, BY LENDER, OF ANY JUDGMENT OBTAINED IN ANY OTHER FORUM OR THE TAKING, BY LENDER OF ANY ACTION TO ENFORCE THE SAME IN ANY OTHER APPROPRIATE JURISDICTION, AND GUARANTOR HEREBY WAIVES THE RIGHT, IF ANY, TO COLLATERALLY ATTACH ANY SUCH JUDGMENT OR ACTION.

16.    WAIVER OF RIGHT TO JURY TRIAL.  LENDER AND GUARANTOR ACKNOWLEDGE AND AGREE THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS GUARANTY OR THE OTHER LOAN DOCUMENTS OR WITH RESPECT TO THE TRANSACTIONS CONTEMPLATED HEREIN AND THEREIN WOULD BE BASED UPON DIFFICULT AND COMPLEX ISSUES AND THEREFORE, THE PARTIES AGREE THAT ANY COURT PROCEEDING ARISING OUT OF ANY SUCH CONTROVERSY WILL BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Guarantor has executed this instrument as of the day and year first above written.

_____
Bassam Haj Yousif, Individually

## ACKNOWLEDGMENTS

STATE OF ILLINOIS      )
                                   ) SS.

COUNTY OF COOK      )

      On June 25th, 2001 before me, the undersigned, a Notary Public in and for the county and state aforesaid, personally appeared **Bassam Haj Yousif**, personally known to me to be the person who executed the within Guaranty and acknowledged to me that the execution of the Guaranty was his free and voluntary act and deed for the uses and purposes therein mentioned.

      WITNESS my hand and official seal.

(SEAL)

                          _Nancy H. Lewis_

                          Notary Public in and for the
                          State of Illinois

                          My commission expires:_____

```
"OFFICIAL SEAL"
NANCY H. LEWIS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4/24/2002
```

1161212                           -11-                       Bassam Haj Yousif Guaranty

# EXHIBIT A
## LEGAL DESCRIPTION

LOT 6 AND 7 IN BLOCK 15 ON FORT DEARBORN ADDITION TO CHICAGO THE WHOLE SOUTHWEST FRACTIONAL ¼ OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

PERMANENT INDEX NO:          17-10-312-008-0000

COMMONLY KNOWN AS:          6 N. Michigan Avenue
                            Chicago, Illinois

**DOCKETED**

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**
CIB BANK

**DEFENDANTS**
ROMEL ESMAIL, a/k/a ROMEL KOPTEH, et al.

**(b)** County of Residence of First Listed Plaintiff _Cook County, IL_
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _Cook County, IL_
(IN U.S. PLAINTIFF CASES ONLY)
IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

JUDGE ASPEN

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Robert J. Mrofka, Thomas J. Cisar
Cisar & Mrofka, Ltd., 1550 Spring Rd., Ste. 210
Oak Brook, IL 60523

Attorneys (If Known)

MAGISTRATE JUDGE ASHMAN

04C 4870

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Inj. | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | **FEDERAL TAX SUITS** |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | |

**PERSONAL INJURY**
- ☐ 362 Personal Injury — Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. Sec. 1331 and 18 U.S.C. Sec. 1964(A) Civil RICO

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. This case
☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case _____, previously dismissed by Judge _____

DATE
7/23/04
7/26/04

SIGNATURE OF ATTORNEY OF RECORD
_Robert J Mrofka_

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

DOCKETED

JUL 27 2004

In the Matter of

CIB BANK, an Illinois Banking Corporation,

v.

ROMEL ESMAIL, a/k/a ROMEL KOPTEH,
an Illinois resident, et al.

**04C 4870**

Case Number:

### APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

CIB Bank

JUDGE ASPEN

MAGISTRATE JUDGE ASHMAN

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Robert J. Mrofka | NAME Thomas J. Cisar |
| FIRM Cisar & Mrofka, Ltd. | FIRM Cisar & Mrofka, Ltd. |
| STREET ADDRESS 1550 Spring Road, Suite 210 | STREET ADDRESS 1550 Spring Road, Suite 210 |
| CITY/STATE/ZIP Oak Brook, IL 60523 | CITY/STATE/ZIP Oak Brook, IL 60523 |
| TELEPHONE NUMBER 630-530-0000 / FAX NUMBER 630-530-0043 | TELEPHONE NUMBER 630-530-0000 / FAX NUMBER 630-530-0043 |
| E-MAIL ADDRESS rmrofka@cismrof.com | E-MAIL ADDRESS tcisar@cismrof.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6192038 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 0447935 |
| MEMBER OF TRIAL BAR? YES [X] NO [ ] | MEMBER OF TRIAL BAR? YES [X] NO [ ] |
| TRIAL ATTORNEY? YES [X] NO [ ] | TRIAL ATTORNEY? YES [X] NO [ ] |
| | DESIGNATED AS LOCAL COUNSEL? YES [X] NO [ ] |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER / FAX NUMBER | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES [ ] NO [ ] | MEMBER OF TRIAL BAR? YES [ ] NO [ ] |
| TRIAL ATTORNEY? YES [ ] NO [ ] | TRIAL ATTORNEY? YES [ ] NO [ ] |
| DESIGNATED AS LOCAL COUNSEL? YES [ ] NO [ ] | DESIGNATED AS LOCAL COUNSEL? YES [ ] NO [ ] |

FILED FOR DOCKETING ED-17
04 JUL 26 AM 10:51
CLERK U.S. DISTRICT COURT