Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 4870 | DATE | 12/22/2004 |
| CASE TITLE | CIB Bank vs. Romel Esmail, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendants motions to dismiss (15-1, 17-1 & 20-1) are granted. CIB's RICO claims (Counts I and II) are dismissed with prejudice. We also decline to exercise supplemental jurisdiction over the remaining state claims (Counts III, IV, V, and VI) and dismiss them without prejudice for refiling in the state court. The status hearing set for 12/30/04 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | DEC 28 2004 | 30 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | JXM | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 12/22/2004 | |
| | | date mailed notice | |
| GL | courtroom deputy's initials | GL | |
| | | mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CIB BANK, an Illinois Banking Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 4870 |
| | ) | |
| ROMEL ESMAIL, A/K/A ROMEL KOPTEH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**
**DEC 2 8 2004**

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff CIB Bank ("CIB") has filed a six-count complaint against twelve defendants alleging violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 161, *et seq.*, RICO conspiracy, and state law claims for fraud, conversion, and payment on guaranty agreements. Various defendants have filed motions to dismiss the claims pursuant to the Federal Rules of Civil Procedure. For the reasons stated below, we grant the motions.[1]

## *BACKGROUND*[2]

On or before December 29, 1999, Defendants Romel Esmail and Bassam Yousif negotiated with Plaintiff CIB for a loan to purchase the property at 6 North Michigan Avenue in Chicago, IL, for approximately $13.4 million. CIB issued a loan in favor of Defendants Global Real Estate Investors,

---

[1] Romel Esmail is the only defendant who has not moved to dismiss or joined in the motions. CIB has stated that Esmail cannot be found and is presumably evading service. For the reasons stated in this opinion, the complaint is dismissed as to Esmail as well. *See Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003); 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1357 (2004).

[2] The following facts are adopted from CIB's complaint and are assumed to be true for the purposes of this motion. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000).

Inc. ("Global") and Trust No.: 99-2200 (the "Trust") for the requested amount to purchase the 6 North Michigan property, and Esmail and Yousif personally guaranteed the loan. Subsequently, Esmail and Yousif approached CIB requesting additional loans to fund the renovation and conversion of 6 North Michigan into luxury condominiums. Between December 1999 and December 2002, Esmail and Yousif sought and obtained loans in favor of Global and the Trust from CIB for a total credit facility of $48.3 million. Esmail and Yousif personally guaranteed $44.8 million of the loan. During 2000 and 2001, CIB negotiated with prospective affiliate and non-affiliate banks to participate in these loans. On or before June 25, 2001, CIB contracted with eight other banks to participate with CIB in loans to Global and the Trust. Esmail, Yousif, and Global represented to CIB that these loans would be used to cover construction costs for the 6 North Michigan property. The loan monies were disbursed to Global through an escrow account held by Ticor Title Insurance Company upon Global's submission of owner draw requests that indicated specific construction costs to be paid.

Between June 20, 2001 and December 13, 2002, Global submitted to CIB ten owner draw requests totaling approximately $24 million for payment out of the Ticor escrow account. The owner draw requests sought payment for Global and Defendant Construction Services International, Inc. ("CSI") for materials and labor expended on the 6 North Michigan property. After receiving CIB's funds, Global and CSI allegedly did not pay the persons and entities that in fact provided the materials and labor. Rather, Yousif and Esmail, on behalf of Global and CSI, deposited the funds into the companies' checking accounts at Fifth Third Bank in Chicago, Illinois. Of these funds, $15 million were then deposited into the accounts of nine of the Defendants. Defendants then improperly used these funds for purposes other than construction at the 6 North Michigan property. Specifically, Defendants are alleged to have used these funds to purchase tax certificates, real properties, and stock in a CIB affiliate. As a result of the failure of Yousif, Esmail, Global, and CSI to pay the persons and entities that provided

2

the materials and labor for construction at 6 North Michigan, these persons and entities filed mechanics' liens for more than $10 million on 6 North Michigan. CIB demanded payment on its loan and the guaranties from Global, Esmail, and Yousif, but they failed to pay.

On July 26, 2004, CIB filed a six-count complaint against Esmail, Yousif, Global, CSI, North Star Trust as Trustee of Trust No.: 99-2200, and the seven entities that allegedly received CIB funds from the Ticor escrow, for claims arising out of the ten fraudulent owner draw requests. Counts I and II allege violations of RICO and RICO conspiracy against all Defendants. Counts III and IV allege common law fraud and conversion against Esmail, Yousif, Global, and CSI. Finally, Count V seeks payment on Esmail's guaranty, and Count VI seeks payment on Yousif's guaranty.

Defendant Millennium Investment Enterprises, Inc., along with six other defendants ("Millennium et al."),[3] have now moved to dismiss the RICO claims asserted against them under Federal Rules 12(b)(6) and 9(b). Defendant Global Real Estate Investors, LLC, along with two other defendants ("Global et al."),[4] have moved to dismiss the RICO and state fraud and conversion claims asserted against them under Federal Rule 12(b)(6). Defendant North Star Trust Company, as Trustee u/t/a Dated 2 December 1999, a/k/a Trust No. 99-2200, has moved to dismiss all claims asserted against it, adopting the motions filed by Millennium et al. and Global et al.

## *STANDARD OF REVIEW*

The purpose of a motion to dismiss under Rule 12(b)(6) is to decide the adequacy of the complaint, not the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, we must accept all well-pled allegations in the complaint as true and

---

[3] These other defendants are Universal Land Company, IMG Enterprises, Inc., Real Estate Consultants, Inc., Woosh-Woosh, Inc., Credit Suisse of Chicago, LLC, and Land Acquisitions LLC.

[4] These other defendants are Construction Services International and Bassam Yousif, who subsequently joined in Global's motion.

draw all reasonable inferences in the plaintiff's favor. *See MCM Partners, Inc. v. Andrews-Barlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995). Therefore, a complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. at 45-46 (1957). However, a complaint alleging RICO must allege facts sufficiently setting forth the essential elements of a RICO action or it is worthy of dismissal. *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 600-01 (7th Cir. 2001).

Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." With regard to a RICO claim based upon predicate acts of fraud, a complaint must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990).

## *ANALYSIS*

### I. RICO (Count I) and RICO Conspiracy (Count II)

To survive a 12(b)(6) motion to dismiss on a RICO claim, a plaintiff must plead (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). A pattern of racketeering activity includes at least two predicate RICO acts committed within a ten-year period. 18 U.S.C. § 1961(5). Defendants argue that CIB's RICO claims should be dismissed because it has failed to plead its RICO predicate acts with particularity as required by Federal Rule of Civil Procedure 9(b) and because it has not alleged a pattern of racketeering activity.

### A. The Rule 9(b) Particularity Requirement

Because CIB's RICO claims are premised upon predicate acts of mail and wire fraud, the particularity requirements of Rule 9(b) apply to its complaint. *See Goren*, 156 F.3d at 726. To state a

4

claim for fraud under RICO, a plaintiff must allege the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method of communication. *Sears*, 912 F.2d at 893. In the RICO context, courts adhere closely to the Rule 9(b) standard, requiring a plaintiff who relies upon acts of mail and wire fraud to "do more than outline a scheme and make loose references to mailings and telephone calls; rather, the plaintiff must be careful to allege such particulars as who initiated the communication, when the communication took place, the contents of the communication, and how that communication furthered the scheme to defraud." *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1516 (N.D. Ill. 1990).

CIB has alleged ten instances of bank fraud and ten instances of wire fraud based upon the transmission of sworn statements for draw requests by Esmail and/or Yousif as officers of Global and CSI. In paragraphs 56 to 75 of its complaint, CIB has provided the ten dates of the alleged misrepresentations. CIB has also indicated the contents of the misrepresentations by describing the draw requests, as well as attaching copies of them as exhibits to the complaint. Additionally, CIB has alleged that the method of communication was by facsimile, and the place from which the facsimiles were sent was Chicago, Illinois.

Finally, CIB has indicated who initiated the communications, namely Esmail and/or Yousif. The fact that CIB has not specifically alleged whether Esmail or Yousif made the misrepresentations does not preclude an appropriately pleading of the 'who' requirement. Although it is generally insufficient to lump all defendants together in a fraud claim, less detail may be required where a plaintiff is alleging fraud against a third party because the plaintiff may not have access to all the facts necessary to detail its claim. *See Sears*, 912 F.2d at 893; *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). By identifying that the misrepresentation was made by one or both of these two Defendants out of the twelve named in the complaint, CIB has given sufficient particularity to the identity of those

making the misrepresentations at this stage. Thus, we hold that CIB has met the particularity requirements of Rule 9(b) in alleging the predicate acts of mail and wire fraud for its RICO claims.

However, it is not enough for a plaintiff alleging a RICO violation to sufficiently plead its predicate RICO acts. To survive a motion to dismiss, the plaintiff who alleges a RICO violation must also sufficiently allege a "pattern" of racketeering activity.

## B. RICO Pattern

The "pattern" requirement seeks to prevent RICO from becoming a surrogate for actions that involve "garden-variety" fraud, routine commercial business disputes, or sporadic criminal activities that properly belong in state court. *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period. 18 U.S.C. § 1961(5). The Supreme Court has expounded upon that definition by requiring that the plaintiff allege "continuity plus relationship," by showing "that the racketeering predicates are related, and that they amount to, or pose a threat of, continued criminal activity." *H.J. Inc.*, 492 U.S. at 239. Continuity may be established as a closed-ended or open-ended concept. *Id.* at 241.

### 1. Open-Ended Continuity

Open-ended continuity is that which establishes a pattern by showing past conduct that "by its nature projects into the future with a threat of repetition." *Id.* Such a threat of continuity exists when a plaintiff shows (1) a specific threat of repetition; (2) that the predicate acts or offenses are part of an ongoing entity's regular way of doing business; or (3) that the defendant operates a long-term association that exists for criminal purposes. *Midwest Grinding Co.*, 976 F.2d at 1023. In its response, CIB admits that open-ended continuity "is probably not the case here," and that "there is no reason to believe" that the predicate acts of mail and wire fraud are a regular way of conducting the Defendant's ongoing

6

business. (Pl.'s Resp. at 5.) However, CIB also directs us to its allegation that Defendants are continuing to traffic in tax certificates, distressed property, and other property. Although CIB does not explain why this allegation is significant, it is seemingly put forth to argue that there is a specific threat of repetition under the first method and/or that the Defendants operate a long-term criminal association under the third method. These arguments are without merit.

First, continuing to traffic in tax certificates and real property does not support a specific threat of repetition of criminal activity. The relevant acts for the threat of repetition analysis are the alleged illegal acts of mail and wire fraud, not the subsequent legal purchases of tax certificates and real property. Continuing *legal* activity does not create a specific threat of repetition of *illegal* activity. The last predicate act of illegal activity alleged in CIB's complaint is a fraudulent draw request that occurred more than a year and a half ago. *See* Compl. ¶ 75. This does not support a specific threat of repetition under the first method of showing open-ended continuity.

CIB has also failed to specifically allege that the Defendants are engaged in a long-term criminal association under the third method. There is no relationship between continuing to traffic in tax certificates and real property and a long-term criminal association because that activity *is not*, by itself, criminal. CIB's ten alleged criminal acts of fraud, without more, are insufficient to support the existence of a long-term criminal association. CIB has not sufficiently alleged a RICO pattern under open-ended continuity, and thus its RICO allegations must support closed-ended continuity to survive dismissal.

### 2. Closed-Ended Continuity

To demonstrate closed-ended continuity, a plaintiff must show a "series of related predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 242. In *Morgan v. Bank of Waukegan*, the Seventh Circuit set forth four factors to evaluate in determining whether a RICO "pattern" has been sufficiently alleged under a closed-ended concept: (1) the number and variety of

7

predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries. 804 F.2d 970, 975 (7th Cir. 1986). No one factor is necessarily determinative; rather, we evaluate these factors as a whole in light of the particular case. *Id.* at 976. Applying these *Morgan* factors to CIB's complaint, we find that CIB has failed to sufficiently plead a closed-ended pattern of racketeering activity to support its RICO claims.

### i. Number and Variety of Predicate Acts and Length of Time

In enacting the RICO statute, Congress sought to address the problem of "long-term criminal conduct." *H.J., Inc.*, 492 U.S. at 242. Thus, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct" do not establish a pattern of racketeering activity. *Id.* In the present case, CIB has alleged ten instances of bank fraud and ten instances of wire fraud over a period of eighteen months. Arguably, a time period of eighteen months is sufficiently long to support a pattern. *See Venzor v. Gonzalez*, 936 F. Supp. 445, 451 (N.D. Ill. 1996) (holding that a scheme over an eighteen-month period is sufficiently long to support closed-ended continuity); *see also Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 780 (7th Cir. 1994) (reviewing cases in which durations of thirteen months and less did not satisfy the duration requirement). However, the period of time over which the predicate acts occur is not our only consideration. We must also look at the number and variety of predicate acts.

Where a plaintiff alleges a multiplicity of predicate acts, multiple instances of the same criminal act of a single scheme usually do not meet the "pattern of racketeering activity" requirement under RICO. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 663 (7th Cir. 1992) (multiple acts of mail fraud occurring in a single scheme to defraud do not constitute a RICO pattern); *Olive Can Co., Inc. v. Martin*, 906 F.2d 1147, 1151 (7th Cir. 1990) (no pattern where a single scheme involved multiple acts of mail fraud). Although CIB alleges twenty predicate acts, it alleges only one *type* of fraudulent act that is repeated ten times: the alleged transmission of false contractors' and owners' statements to CIB to

fraudulently obtain loan monies. CIB has attempted to distinguish the acts of bank fraud from the acts of wire fraud, but its allegations make clear that these derive from the same ten fraudulent draw requests. The Seventh Circuit and courts in this district have held that the repetition of a single act of fraud over a substantial period of time is insufficient to establish continuity. *See Midwest Grinding Co.*, 976 F.2d at 1024 (holding that the multiplicity of mail and wire fraud allegations "may be no indication of the requisite continuity of the underlying fraudulent activity"); *Meyer Material Co. v. Mooshol*, 188 F. Supp. 2d 936, 942 (N. D. Ill. 2002) (holding that no variety in seventy-two predicate acts of mail fraud weighed against the plaintiff under first *Morgan* factor); *LaSalle Bank Northbrook v. Baker*, No 94 C 3827, 1994 WL 630705, at *4 (N. D. Ill. Nov. 9, 1994) (holding that identical predicate acts repeated twenty-six times were insufficient to show continuity). Based upon these precedents, we find that ten alleged fraudulent draw requests, each conducted the same way over a period of eighteen months, is insufficient to show a variety of criminal acts over a sufficient length of time.

### ii. Number of Victims

CIB argues that it has alleged multiple victims because it identifies nine victims of the Defendants' fraud: itself and eight participating banks. It also notes that the federal government may be considered as a potential victim because of the potential losses if any of the banks failed. It is clear from the complaint, however, that the harm to the participating banks is derivative of the harm to CIB. If CIB is unable to recover losses from the loans to Global, it will call upon the participating banks to share in its loss. The federal government is only a potential victim that may be harmed if CIB or the participating banks fail. CIB fails to cite any case law, and we have found none, which indicates that indirect injuries of this sort can satisfy the "victim" requirement. CIB's argument is remarkably similar to the argument posed by the plaintiff in *Meyer Material*, which another court in this district rejected. 188 F. Supp. 2d 936, 942 (N.D. Ill. 2002) (Castillo, J.) (rejecting the plaintiff's argument that banks and

9

creditors of the defrauded defendant company are additional victims for the purposes of the second *Morgan* factor). Like the court in *Meyer Material*, we find that CIB has only identified one direct victim of the defendants' alleged RICO scheme, i.e. itself, and thus has not shown a multiplicity of victims under the second *Morgan* factor.

### iii. Presence of Separate Schemes

Although a plaintiff need not prove multiple schemes to show a RICO pattern, the presence or absence of multiple schemes is highly relevant to the court's determination of whether a RICO pattern has been established. *H.J. Inc.*, 492 U.S. at 241 n. 3; *U.S. Textiles v. Anheuser-Busch Cos., Inc.*, 911 F.2d 1261, 1269 (1990). CIB argues that the twenty instances of bank and wire fraud further two schemes: (1) the plan to fraudulently obtain construction draws, and (2) the plan to steal the money by diverting the 6 North Michigan loan proceeds into the enterprise for it to traffic in other projects. However, these two plans, as alleged, are really part of the same single scheme to divert fraudulently obtained loan monies to the purchase of other assets. *See, e.g., Meyer Material*, 188 F. Supp. 2d at 943 (diverting company funds to defendants' Chicago real properties is a single scheme). This single scheme has a single point of completion, namely the exhaustion of the loan funds.

### iv. Occurrence of Distinct Injuries

The inquiry under the fourth *Morgan* factor is "whether each of the injuries was 'distinct' in the sense that it signaled, or by itself constituted, a threat of 'continuing' criminal activity." *U.S. Textiles*, 911 F.2d at 1269. The occurrence of distinct injuries is the occurrence of different *types* of injuries, not multiple instances of the same injury. *Id.* at 1269 (finding that identical economic injuries suffered over the course of two years stemming from a single contract were not the type of injuries Congress intended to compensate under RICO); *Brandon Apparel Group, Inc. v. Quitman Mfg. Co.*, 52 F. Supp. 2d 913, 917 (N.D. Ill. 1999) (finding that multiple instances of fraud led only to one injury of nonpayment for

10

goods). In the present case, CIB alleges ten repeated instances of the same fraudulent act, which, under the above-cited precedents, are properly considered only one distinct injury of improperly used loan funds.

In sum, CIB has alleged ten instances of the same fraudulent conduct toward one closed-ended scheme of fraud with one injury against one victim.[5] Examining the complaint based upon the *Morgan* factors as a whole, CIB has not alleged a set of facts which support a pattern of racketeering activity. Insufficiently pleading the pattern element "rings the death knell" for civil RICO claims. *J.D. Marshall*, 935 F.2d 815, 820 (7th Cir. 1991). Accordingly, CIB's failure to plead a pattern of racketeering activity supports dismissal with prejudice.

## C. RICO Injury and RICO Conspiracy

The moving Defendants also contend that CIB's complaint fails to meet the requirements of a RICO allegation for two additional reasons: 1) failing to allege a RICO injury; and 2) failing to adequately identify against whom the RICO conspiracy claim is directed.

With respect to RICO injury, a plaintiff must allege that an injury that was proximately caused by the defendants' racketeering activity, *see* 18 U.S.C. § 1962(a), and that clear and definite damages resulted, *see Pelfresne v. Vill. of Rosemont*, 22 F. Supp. 2d 756, 765 (N.D. Ill. 1998). Global et al. contend that CIB has no standing to bring its RICO claim and that the claim is unripe because CIB has not alleged direct and definite damages. CIB's alleged RICO injury stems from the default on its $48.3

---

[5]CIB's response cites five opinions from this Circuit, without explanation, to support its contention that its factual allegations do support a RICO pattern. However, four of these cases – *Appley v. West*, 832 F.2d 1021 (7th Cir. 1987); *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir. 1987); *Illinois Dep't of Revenue v. Phillips*, 771 F.2d 312 (7th Cir. 1985); *Ghouth v. Conticommondity Servs., Inc.*, 642 F. Supp. 1325 (N.D. Ill. 1986)) – pre-date *H.J., Inc.*, 429 U.S. 229 (1989), in which the Supreme Court narrowed the RICO requirements, and, thus, are partially abrogated by that decision. We do not find the remaining cited case, *Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*, comparable to the present complaint. 63 F.3d 516 (7th Cir. 1995) (evidence showed at least four separate schemes).

11

million loan and the mechanics' liens on the 6 North Michigan property. However, CIB has not alleged default on its loan. Although CIB states that its interest in the 6 North project has become "worthless and a total loss," it has not alleged this in its complaint. Based upon its allegations, CIB is injured only if its interests under its loan agreements and in the 6 North Michigan property are insufficient to cover the total amount of the allegedly diverted funds. Thus, CIB is, at best, injured indirectly, as a result of certain Defendants' nonpayment to third-party construction providers, and then, only if they are unable to recover from the 6 North Michigan property or from Esmail and Yousif as guarantors. Accordingly, CIB has not alleged a direct and ripe RICO injury.

As to the second issue of RICO conspiracy, a plaintiff must allege that each defendant knew about and agreed to take part in the conspiracy. *Goren*, 156 F.3d at 731. Although CIB's complaint identifies Esmail, Yousif, Global, and CSI as conspirators, it does not specifically identify which of the other Defendants allegedly knew about and agreed to be members of the conspiracy. Rather, it refers to them vaguely as a whole. (Compl. ¶ 91 ("Esmail, Yousif, GREI [Global], and CSI, along with *other members of the enterprise* . . . knowingly conspired . . .").) Furthermore, although these other members are supposedly involved in the conspiracy, the complaint confusingly seeks relief only from Esmail, Yousif, Global, and CSI on the RICO conspiracy claim. (Compl. ¶ 93.) CIB's failure to properly plead RICO injury and RICO conspiracy provide additional grounds for dismissing Counts I and II.

## II. State Law Claims

While district courts have discretion as to whether they will continue to exercise supplemental jurisdiction over the state law claims, it is generally appropriate to dismiss supplemental state law claims, without prejudice, once all federal claims have been eliminated. *Groce v. Eli Lily & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). The pendant state law claims may then be brought and decided in the

state courts. *Wright v. Assoc. Ins. Cos., Inc.*, 29 F.3d 1244, 1252 (7th Cir. 1994).[6] Having dismissed CIB's federal RICO claims for the reasons stated above, we decline to exercise supplemental jurisdiction over CIB's state law claims and dismiss Counts III, IV, V, and VI, without prejudice.

## *CONCLUSION*

For the reasons stated above, CIB's RICO claims (Counts I and II) are dismissed with prejudice. We also decline to exercise supplemental jurisdiction over the remaining state claims (Counts III, IV, V, and VI) and dismiss them without prejudice for refiling in the state court.

It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 12/22/04

---

[6] There are exceptions to this general rule in "unusual cases" only, such as when substantial federal judicial resources have already been committed, or if it is abundantly clear how the state claims should be decided. *Wright*, 29 F.3d at 1251-52. However, given the early stage of this case, these exceptions do not apply.

13